# Hillel I. Parness

(Cell) 646-526-8261 • (Office) 212-447-5299 • (Fax) 646-722-3301
Parness Law Firm, PLLC • www.hiplaw.com • hip@hiplaw.com
136 Madison Avenue, 6th Floor • New York, New York 10016

March 20, 2019                                                                                          **VIA ECF**

Hon. Louis L. Stanton
U.S. District Judge
United States Courthouse
500 Pearl Street
New York, NY 10007

Re:   *Structured Asset Sales, LLC v. Sheeran,* 1:18-cv-05839

Dear Judge Stanton:

I represent Plaintiff Structured Asset Sales, LLC's ("SAS") in the above-referenced matter. I am writing in response to the March 7, 2019 letter of Defendants' counsel (Dkt. 92), and in advance of the conference before the Court on March 29, 2019.

**Consolidation**

In my March 3, 2019 letter to Your Honor, I raised the issue of consolidating for trial the *SAS* matter with *Griffin v. Sheeran*, 17-cv-05221, and I explained some of the efficiencies that we see in consolidation. Since that time, You held a scheduling conference in *Griffin*. At that conference, Mr. Zakarin asked that the *Griffin* trial <u>not</u> commence until the fall of 2019, in order to accommodate Mr. Sheeran's extensive touring schedule, and You responded by setting jury selection for September 10, 2019, and the first day of trial for September 11, 2019. Dkt. 102. That is nearly six months away.

As I explained in my prior letter, SAS requested that it be allowed to intervene in the *Griffin* case, and Judge Sullivan denied that request. Judge Sullivan did so – we believe erroneously – without giving SAS the opportunity to make its intervention motion (he "deemed" it "made") and without allowing SAS oral argument. It is for this reason that SAS took an appeal from that decision, set to be argued before the Second Circuit on April 3, 2019. As we expected, Mr. Zakarin incorrectly paints our request as an attempt to reargue intervention.

Ironically, Mr. Zakarin's arguments against intervention revolved around the speed with which the *Griffin* case had been brought and the need not to have that progress undone or derailed. Now, apparently, he has no problem with six months' delay without any activity whatsoever in the *Griffin* case. Six months is more than enough time for SAS to complete the very limited fact and expert discovery it wishes to conduct, and then join the other parties in a consolidated

Hon. Louis L. Stanton
March 21, 2019

trial. The alternative would be entirely duplicative trials, a substantial waste of judicial and client resources.

Mr. Zakarin also objects on the basis that the jury would not be able to discern the *Griffin* evidence from the *SAS* evidence. This argument does not give the jury system nearly enough credit. Juries, working with the help of damages experts, are more than capable of following instructions as to apportionment of damages between and among two sets of plaintiffs, even if the Court determines (contrary to SAS's position) that the statute of limitations period for the *SAS* plaintiffs is shorter than that applicable to the *Griffin* plaintiffs. It is an easy arithmetic exercise.

As for Mr. Zakarin's argument that the infringement evidence elicited in the two cases should be kept separate, the obvious question is why? As Your Honor wrote in your decision denying the defendants' motion for summary judgment in *Griffin*, the battle lines have already been drawn, and it will be the same battle in both cases:

> Regardless of whether the deposit copy or sound recording of LGO defines the scope of the composition's copyright, material facts are in dispute: whether the harmony and harmonic rhythm were commonplace prior to LGO, and whether numerous musical elements in the two works are substantially similar and so uncommon that an ordinary observer would recognize TOL as having been appropriated from LGO.

*Griffin* Dkt. 93 at 2. Mr. Zakarin suggests that it would not be fair for the jury to hear from multiple plaintiff experts on these subjects, but that could certainly have happened if SAS had been in the case from the beginning. Indeed, each of the *Griffin* plaintiffs could presumably have hired its own experts if they had chosen to. Mr. Zakarin will have the opportunity to cross-examine each expert, and present his own expert <u>or experts</u> in rebuttal. At the end of the day, the jury (or juries) will be deciding the same question in both cases – whether the two works are substantially similar for purposes of copyright infringement.

**Issues Regarding Defendants**

As explained in my opening letter, Plaintiffs added defendants Bucks and BDi to the case with the permission of the Court, and then proceeded to serve them at the location those entities designated in the BMI database, Defendant The Royalty Network. Entirely consistently with that designation, the woman who received the papers from the process server told the server that she was authorized to accept service on behalf of TRNI, Bucks and BDi. We ask the Court to confirm that

Hon. Louis L. Stanton
March 21, 2019

Bucks and BDi have been served, and that there is no question about the Court's jurisdiction over them.

Since the time that we submitted Plaintiff's opening letter, we have received responses from document subpoenas that we served upon ASCAP, BMI, Soundexchange and Harry Fox Agency, four domestic U.S. entities, in which we asked, *inter alia*, for:

> Documents sufficient to show all monies received by any party in connection with the musical composition known as "Thinking Out Loud," written by Edward Sheeran and Amy Wadge (the "Composition"), for the period June 1, 2014 through the present, on at least a calendar-quarterly basis.

Responses to the subpoenas included records reflecting payments by the subpoena recipients to "BETTER BE GOOD MUSIC OBO BDI MUSIC LTD" and "WADGE AMY VICTORIA." We know from the discovery already taken in the *Griffin* case that producer Jake Gosling has worldwide rights to receive payments in connection with "Thinking Out Loud."

We wish to add Amy Wadge (the co-writer) and Jake Gosling (the producer), as the two of them have designated US entities and societies to collect money on their behalf, and have in fact had money collected on their behalf, in connection with the allegedly infringing musical recording. We ask the Court to make a determination as to jurisdiction, at which point we hope that their counsel will cooperate regarding service, rather than trying to force additional delay.

Very truly yours,

Hillel I. Parness