ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 1/15/20

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STRUCTURED ASSET SALES, LLC,

    Plaintiff,

- against -

EDWARD CHRISTOPHER SHEERAN p/k/a ED
SHEERAN, SONY/ATV MUSIC PUBLISHING,
LLC, ATLANTIC RECORDING CORPORATION
d/b/a ATLANTIC RECORDS, BDI MUSIC
LTD., BUCKS MUSIC GROUP LTD., THE
ROYALTY NETWORK, INC., DAVID PLATZ
MUSIC (USA) INC., AMY WADGE, JAKE
GOSLING and DOES 1 THROUGH 10,

    Defendants.

18 Civ. 5839 (LLS)

OPINION & ORDER

    To be decided on this motion to compel document production is whether this Court should compel defendants to produce documents containing financial information about defendant Edward Sheeran's live performances of "Thinking Out Loud" ("TOL") -- including expenses and revenues related to ticket, merchandise sales and endorsements from such performances, and Sheeran's tour schedules and set lists.

    Because SAS plausibly alleges that each of Sheeran's live performances of TOL infringed SAS's copyright in "Let's Get It On" ("LGO"), SAS's motion to compel is granted as to documents containing information about Sheeran's live performances of TOL on or after June 28, 2015.

**BACKGROUND**

On June 28, 2018, SAS brought this action for copyright infringement, alleging that the musical composition TOL infringes its copyright in LGO. SAS asserts that Sheeran has repeatedly performed TOL live without the right to do so. SAS also asserts that defendants profited from those performances in the form of ticket sales, merchandising, and endorsements.

SAS seeks from defendants Sheeran, Sony/ATV Music Publishing, LLC, Atlantic Recording Corporation, and The Royalty Network, Inc. the production of documents containing information about Sheeran's live performances of TOL, including expenses and revenues related to ticket sales and merchandise sold at such performances, as well as Sheeran's tour schedules and set lists. It also seeks documents detailing expenses and revenues related to endorsements and merchandising more distantly related to TOL.

Defendants object that those requests have no causal relationship to the alleged infringement. They also, and more fundamentally, contend that ASCAP and BMI's blanket licenses prevent Sheeran's live performances of TOL from infringing the copyright in LGO.

## DISCUSSION

## Live Performances

### *Sheeran's Asserted Right to Perform TOL*

Defendants argue that "as a matter of law, the public performances of either or both TOL or LGO at any or all of the Sheeran concerts in the United States were licensed performances and were, as a matter of law, non-infringing." Def.'s Mem. Opp'n 9. They support this argument with declarations from the Vice Presidents of both Performing Rights Organizations ASCAP and BMI stating that "each of the concert venues at which Sheeran performed TOL in the United States, or the concert promoters, held valid blanket licenses from the PROs, which authorized the public performance of any or all compositions within the repertories of the PROs." Id. at 8-9; Gonzalez Decl. ¶¶ 4-7; Reimer Decl. ¶¶ 3-7. They state that "It is undisputed that both TOL and LGO are within the repertories of the PROs." Def.'s Mem. Opp'n 9. They also further claim that for that reason

> . . . it is indisputable that, regardless of whether SAS will ultimately be able to prove that TOL infringed LGO – and Defendants submit that they will not be able to do so – the public performances of TOL at Sheeran's concerts in the United States could not, as a matter of law, be infringing.

Id. at 9 n.6.

But the defendants' argument lacks a foundation: there is no "right" to infringe. BMI's and ASCAP's blanket and venue

-3-

licenses could not grant a right to infringe, for there never was one.

Absent inapplicable exceptions,[1] neither the author nor any licensee of an infringing work has the right to perform it publicly. The author cannot assign, to BMI or ASCAP, the ability to include such a right in their blanket licenses, for the author has no right to infringe, and neither BMI nor ASCAP can create one.

Indeed BMI's and ASCAP's forms of licenses recognize that, for their blanket licenses stipulate that what they grant are only rights to perform works of "which BMI [ASCAP] shall have the right to grant public performance licenses [license non-dramatic public performances]." Gonzalez Decl. Ex. 2 (BMI); Reimer Decl. Ex. 2 (ASCAP).

As stated in United States v. BMI, 207 F. Supp. 374, 376 (S.D.N.Y. 2016), under the governing Consent Decree there is always the prospect that BMI "might license performances of a composition without sufficient legal right to do so, or under a worthless or invalid copyright . . . [which] may infringe an author's rights under copyright, contract or other law."

The blanket license can grant no more rights than the PRO is assigned by the author. As the Court of Appeals stated in

---

[1] Such as "fair use," for example. They have no part in this discussion.

United States v. BMI, 720 F. App'x 14, 17 (2d Cir. 2017) (summary order),

> the blanket license itself does not necessarily confer a right of immediate public performance: the license covers all the rights held by the PRO regardless of whether those rights are valid or invalid, exclusive or shared, complete or incomplete.

Any applicant may attack "the validity of the copyright of any of the compositions in defendant's repertory . . . ." Id.

BMI's and ASCAP's blanket licenses conveyed to licensees the authors' rights to perform their songs. They did not convey the consent of any author to play music which infringes his songs. And the licenses do not transform an infringing work into one that "could not, as a matter of law, be infringing."

### *Statute of Limitations*

The Copyright Act states that "No civil action shall be maintained under the provisions of this title unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). A copyright infringement claim accrues when the copyright holder "discovers, or with due diligence should have discovered, the infringement." Psihoyos v. John Wiley & Sons, Inc., 748 F.3d 120, 124-25 (2d Cir. 2014).

Initially, SAS contends that its May 10, 2018 motion to intervene in the Griffin case, Griffin v. Sheeran, 17 Civ. 5221,

put each of these Defendants on notice of SAS's claims, and hence should be treated as the equivalent of filing a complaint.

But even if it were, the

> . . . denial of a motion to intervene is analogous to dismissal of a complaint without prejudice, which does not toll the statutory filing period.

In re Napster, Inc. Copyright Litig., 04 Civ. 3004, 2005 WL 289977, at *4-5 (N.D. Cal. Feb. 3, 2005). As stated in Wilson v. Grumman Ohio Corp., 815 F.2d 26, 27 (6th Cir. 1987),

> It is generally accepted that a dismissal without prejudice leaves the situation the same as if the suit had never been brought, and that in the absence of a statute to the contrary a party cannot deduct from the period of the statute of limitations the time during which the action so dismissed was pending.

Since the denial of SAS's motion to intervene in Griffin left it equally free to litigate its claim (with the Court specifically noting that "SAS also does not identify any prejudice that it would face should the motion be denied"), the limitation statute ran until SAS commenced this action, and the only claims for which it may recover are those that accrued within three years prior to filing its complaint on June 28, 2018. Thus the information to which it is entitled is that concerning those non-time-barred claims.

### Proportionality

To the extent each live performance of TOL was a separate, unauthorized act infringing SAS's copyright interest in LGO, a

schedule of such infringing acts, as well as the revenues and expenses attributable to each, are proportional to the needs of the case. Defendants have unrivaled access to the requested information, it has likely already been categorized and used for defendants' own business purposes, it is germane to profits (if sufficiently causally related to an infringing performance), and the amount in controversy is many millions of dollars. Fed. R. Civ. P. 26(b)(1).

To the extent that defendants have already produced some requested documents,[2] they need not duplicate those efforts.

### Revenue Unrelated to Live Performances

SAS asserts entitlement to "the production of documents relating to Defendants' revenues and expenses associated with merchandise revenue, touring revenue, and endorsement revenue linked to 'Thinking Out Loud,'" Pl.'s Mem 7, claiming that it has "alleged facts sufficient to support an argument for a nexus between Defendants' infringement and their indirect profits," id. at 9, and that

> The most explicit statement of SAS's theory comes in paragraphs 29 and 62 of the TAC:

---

[2] See, e.g., Camp Decl. Ex. 1 (Sheeran's U.S. concerts between 2014 and 2019); Zakarin Decl. ¶2 n.3 ("Assuming that SAS could establish that TOL infringed LGO, it has already been provided with full disclosure from defendants as well as ASCAP and BMI of the performance income paid with respect to all of Sheeran's concerts in the United States.").

> 29. Mr. Sheeran experienced a sharp and sudden rise as an international music star in less than eighteen (18) months as a direct result of the commercial success of the release of 'Thinking Out Loud', the lead single in the United States from Sheeran's debut album, 'X', of which 'Thinking Out Loud' was the hit.
>
> 62. In 2015, 'Thinking Out Loud' was a top-three song as measured by performance income in the world. Revenue derived and/or related to 'Thinking Out Loud,' including but not limited to record sales, performance tour income, merchandising, synchronization and licensing are in the hundreds of millions of dollars.

Id.

What SAS has not done is to allege facts adequate to state a causal relationship between the particular song TOL and those profits. Thus it is not entitled to documents detailing expenses and revenues unrelated to the live performances. In Graham vs. Prince, 265 F. Supp. 3d 366, 388 (S.D.N.Y. 2017), Judge Stein found that the plaintiff

> adequately pled a causal nexus between the alleged infringement and indirect profits by alleging facts—such as the selection of Untitled [the allegedly infringing work] to appear in a catalog for the New Portraits exhibition and in a billboard displaying Prince[the alleged infringer]'s works—from which it can be reasonably inferred that the infringing photograph generated profits beyond those earned from the direct sale of Untitled.

Here, SAS alleges no such facts.

SAS has not identified any non-concert merchandise or any endorsements for which profits are clearly attributable to TOL.

Sheeran's manager, Stuart Camp, stated that "there is no TOL branded merchandise." He also stated that Sheeran has had only two endorsements in the decade he has represented Sheeran: an advertisement for "Beats Headphones" that was synchronized with Sheeran's song "Don't" before TOL's release, and a recent endorsement for Heinz Ketchup that involved no Sheeran music. Camp Decl. ¶¶ 39, 41-43. SAS has not disputed either of these assertions.

SAS's motion to compel production of documents unconnected with the live performances is denied.

## CONCLUSION

Plaintiff SAS's motion to compel document production (Dkt. No. 129) is granted as to Document Requests 15-18 insofar as they request documents reflecting revenues received or earned, and expenses incurred or paid, in connection with live performances and merchandise sold at concerts where TOL was performed on or after June 28, 2015, including revenues received or earned and expenses incurred or paid in connection with multiple musical works; and Requests 27-28 seeking schedules and set lists for performances on or after June 28, 2015.

The motion to compel (Dkt. No. 129) is denied as to Document Requests 15-20, and 27, 28 insofar as they request information about performances prior to June 28, 2015, or merchandise sold before June 28, 2015, or not connected to live performances of TOL on or after June 28, 2015.

So ordered.

Dated:  January 15, 2020
        New York, New York

                                                      *Louis L. Stanton*
                                                  LOUIS L. STANTON
                                                  U.S.D.J.