UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STRUCTURED ASSET SALES, LLC,

                      Plaintiff,

      v.

EDWARD CHRISTOPHER SHEERAN,
*p/k/a* ED SHEERAN, SONY/ATV MUSIC
PUBLISHING, LLC, ATLANTIC
RECORDING CORPORATION *d/b/a*
ATLANTIC RECORDS, BDI MUSIC LTD.,
BUCK MUSIC GROUP LTD., THE
ROYALTY NETWORK, INC., DAVID
PLATZ MUSIC (USA) INC., AMY
WADGE, JAKE GOSLING and DOES 1
THROUGH 10,

                    Defendants.

Case No. 1:18-cv-5839 (LLS)

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

PRYOR CASHMAN LLP
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward*
*Christopher Sheeran, Sony/ATV Music*
*Publishing LLC, Atlantic Recording*
*Corporation, BDi Music Ltd., Bucks Music*
*Group Ltd., The Royalty Network, Inc.,*
*David Platz Music (USA) Inc., Amy Wadge*
*and Jake Gosling*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................... iii

PRELIMINARY STATEMENT .....................................................................................1

ARGUMENT ..................................................................................................................4

I.     SAS'S INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW .........................4

     A.     Legal Standard For Copyright Infringement.........................................................4

     B.     The Deposit Copy Defines The Scope Of Copyright Protection.........................5

     C.     The Court Must Filter Unprotectable Elements From Consideration..................6

     D.     No Actionable Similarities Exist Between LGO And TOL.................................9

          1.     SAS Concedes The I-iii-IV-V Chord Progression Is
               A Commonplace Unprotectable Musical Building Block........................9

          2.     The Chord Progressions Are Objectively Different................................10

          3.     SAS Concedes The Centuries-Old Rhythmic Technique Known
               As "Anticipation" Is An Unprotectable Building Block Of Music.........11

          4.     The Harmonic Rhythms Are Objectively Different.................................12

          5.     The Melodies Are Objectively Different,
               Which Is Obvious From SAS's Own Admissions ...................................13

               i.     The Analyses Of SAS's Experts Prove That
                     The Vocal Melodies Are Objectively Different...............................13

               ii.     The Remainder Of SAS's Melodic Analysis Should Be Rejected ...15

          6.     No Objectively Significant Structural Similarities Exist .........................17

          7.     SAS's "Combination" Claim Fails As A Matter Of Law .......................19

               i.     The Bass-Line Does Not Exist in LGO And Thus Cannot
                     Be Considered As Part Of Any Alleged "Combination".................19

               ii.     The "Combination" Of Two Commonplace Elements Is
                     Not Sufficiently Original To Merit Copyright Protection ...............20

**TABLE OF CONTENTS,** *continued*

iii.   SAS's "Combination" Claim Also Fails Because TOL Does Not
         Replicate The Elements In LGO In A Near Identical Manner .........23

II.   IN THE EVENT THIS ACTION IS NOT DISMISSED, SAS'S CLAIM
      FOR INDIRECT TOURING PROFITS SHOULD BE DISMISSED...........................24

CONCLUSION.........................................................................................................................25

**TABLE OF AUTHORITIES**

**CASES**                                                                                      **PAGE(s)**

*Batiste v. Najm,*
   28 F. Supp. 3d 595 (E.D. La. 2014) ................................................................................. 10

*Beaudin v. Ben & Jerry's Homemade, Inc.,*
   95 F.3d 1 (2d Cir. 1996) ........................................................................................... 23, 24

*Beyond Blond Productions, LLC v. Heldman,*
   479 F. Supp. 3d 874 (C.D. Cal. Aug. 14, 2020) ....................................................... 20

*Boisson v. Banian, Ltd.,*
   273 F.3d 262 (2d Cir. 2001) ........................................................................................ 5

*Celotex Corp. v. Catrett,*
   477 U.S. 317 (1986) .................................................................................................. 25

*Cottrill v. Spears,*
   No. 02-cv-3646 (BMS), 2003 WL 21223846 (E.D. Pa. May 22, 2003),
   *aff'd,* 87 F. App'x 803 (3d Cir. 2004) ...................................................................... 21

*Erickson v. Blake,*
   839 F. Supp. 2d 1132 (D. Or. 2012) ......................................................................... 21

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
   499 U.S. 340 (1991) .................................................................................................. 23

*Gaste v. Kaiserman,*
   863 F.2d 1061 (2d Cir. 1988) ................................................................................... 22

*Gray v. Perry,*
   No. 15-cv-5642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020) ........................... *passim*

*Griffin v. Sheeran,*
   No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908 (S.D.N.Y. Mar. 24, 2020) ............... 5, 6

*Jean v. Bug Music, Inc.,*
   No. 00-cv-4022 (DC), 2002 WL 287786 (S.D.N.Y. Feb. 27, 2002) ......................... 8

*Johannsongs-Publishing Ltd. v. Rolf Lovland,*
   No. 18-cv-100009 (AB), 2020 WL 2315805 (C.D. Cal. Apr. 3, 2020) .................... 20

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.,*
   808 F. Supp. 2d 542 (S.D.N.Y. 2011), *aff'd sub nom.*
   *Jovani Fashion, Ltd. v. Fiesta Fashions,* 500 F. App'x. 42 (2d Cir. 2012) ............ 20

**CASES**                                                                      **PAGE(s)**

*Litchfield v. Spielberg*,
    736 F.2d 1352 (9th Cir. 1984) ............................................... 21

*McDonald v. West*,
    138 F. Supp. 3d 448 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016)................ *passim*

*Merrell v. Tice*,
    104 U.S. 557 (1881)................................................................ 5

*Morrill v. Stefani*,
    338 F. Supp. 3d 1051 (C.D. Cal. 2018) ........................................... 11, 21

*Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*,
    875 F.3d 107 (2d Cir. 2017)....................................................... 25

*Odegard Inc. v. Safavieh Carpets, Inc.*,
    398 F. Supp. 2d 275 (S.D.N.Y. 2005)............................................. 23, 24

*Oravec v. Sunny Isles Luxury Ventures, L.C.*,
    527 F.3d 1218 (11th Cir. 2008) .................................................. 22

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
    602 F.3d 57 (2d Cir. 2010)....................................................... 4, 5, 6, 7

*Peters v. West*,
    776 F. Supp. 2d 742 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) ............... 23

*Rose v. Hewson*,
    No. 17-cv-1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ...................... 23

*Satava v. Lowry*,
    323 F.3d 805 (9th Cir. 2003) .................................................... 20

*Skidmore v. Led Zeppelin*,
    952 F.3d 1051 (9th Cir. 2020) , *cert. denied*, 141 S. Ct. 453 (2020), *reh'g denied*, 141 S. Ct.
    946 (2020)................................................................... *passim*

*Smith v. Weeknd*,
    19-cv-2507 (PA), 2020 WL 4932074 (C.D. Cal. July 22, 2020)............................ 21

*Structured Asset Sales, LLC v. Sheeran*,
    433 F. Supp. 3d 608 (S.D.N.Y. 2020)................................................ 25

**CASES**                                                **PAGE(s)**

*Sweet Gisele, Inc. v. True Rock CEO, LLC*,
No. 17-cv-5170 (FB) (RML), 2018 WL 4863650 (E.D.N.Y. Sept. 4, 2018), *report and recommendation adopted*, 2018 WL 4863586 (E.D.N.Y. Sept. 28, 2018) ........................ 23, 24

*Three Boys Music Corp. v. Bolton*,
212 F.3d 477 (9th Cir. 2000) ................................................................................. 21

*Threeline Imports, Inc. v. Vernikov*,
No. 15-cv-2333(AMD) (RML), 2016 WL 11472749 (E.D.N.Y. Oct. 28, 2016) .................... 20

*Tisi v. Patrick*,
97 F. Supp. 2d 539 (S.D.N.Y. 2000) ........................................................................ 8, 9

*Velez v. Sony Discos*,
No. 05-cv-615 (PKC), 2007 WL 120686 (S.D.N.Y. Jan. 16, 2007) ........................................ 9

*VMG Salsoul, LLC v. Ciccone*,
No. 12-cv-5967 (BRO), 2013 WL 8600435 (C.D. Cal. Nov. 18, 2013), *aff'd in part, vac'd in part on other grounds*, 824 F.3d 871 (9th Cir. 2016) ............................................................... 10

*Washington v. ViacomCBS, Inc.*,
No. 20-cv-0435 (CBM), 2020 WL 5823568 (C.D. Cal. Aug. 20, 2020) ................................. 21

*Williams v. Gaye*,
895 F.3d 1106 (9th Cir. 2018) ................................................................................ 17

*Zalewski v. Cicero Builder Dev., Inc.*,
754 F.3d 95 (2d Cir. 2014) ........................................................................... 5, 6, 7, 23

**STATUTES**

17 U.S.C. § 102(b) ................................................................................................ 12

## PRELIMINARY STATEMENT[1]

SAS has brought two cases claiming that "Thinking Out Loud" ("TOL") infringes the musical composition copyright in "Let's Get It On" ("LGO").  SAS has an 11.11% beneficial interest in LGO attributable to its passive right to be paid royalties generated by LGO.  In this case, it is undisputed that the copyright in LGO is limited to the sheet music deposited with the United States Copyright Office (the "Deposit Copy").  However, SAS improperly relies on elements contained only in Marvin Gaye's sound recording of LGO (the "LGO Recording") and not found in the Deposit Copy.[2]

SAS's infringement claim hinges on what its expert, Dr. Covach, calls a "backing pattern" in LGO.  Dr. Covach defines this "backing pattern" as: (1) the I-iii-IV-V chord progression, which Dr. Covach admits is "very common" and which Dr. Covach admits is different, albeit, supposedly "functionally equivalent" to, the chord progression in TOL; (2) the rhythm at which these different chords are played, *i.e.*, the "anticipation" or "syncopation" of the second and fourth chords, which Dr. Covach admits is commonplace and not identical in each song; <u>and</u> (3) a bass line, which Dr. Covach admits is not included in the Deposit Copy but which he "infers."

Dr. Covach specifically admits that "each of the three elements of the backing pattern that [he] identif[ies], if taken alone, can be considered common."  (Covach Rebuttal ¶ 8).  He admits that "[i]t is likely that prior works could be identified that use all three of these elements individually, and perhaps even two of them together."  (Covach Report ¶ 22).  Forced to concede their ubiquity, Dr. Covach contends that it is the specific <u>combination of all three elements</u> in LGO

---

[1] Undefined capitalized terms have the meanings given to them in the accompanying Rule 56.1 Statement.

[2] The LGO Recording is subject to a separate sound recording copyright in which SAS has no interest and as to which there has not been, and could not be, a claim of infringement because a sound recording copyright only protects against exact duplication of the recording itself, which has not occurred.

that is "distinctive" and "not derived from a prior work," (Covach Report ¶ 19; Covach Rebuttal ¶¶ 2-8), notwithstanding that Dr. Ferrara identified the same three elements in popular songs preceding LGO.  (Ferrara I Report ¶ 107).

The infringement claim advanced by SAS requires all three elements.  Yet Dr. Covach admits (and this Court already has ruled) that one of the three required elements of the supposed "backing pattern" – the bass line – **is not actually expressed in the Deposit Copy**.  In his Rebuttal Report, while admitting that the bass line is "not literally notated in the deposit copy," Dr. Covach nevertheless claims that it is "is empirically and logically derived from it."  (Covach Rebuttal ¶ 2).  But this Court has already ruled that if an element is not expressed in the Deposit Copy, it is not part of the copyrighted work.  Thus, SAS's infringement claim fails because one of its required three elements admittedly is not part of the Deposit Copy.

SAS's experts specifically admit that they ignored this Court and compared TOL to the LGO Recording and not the Deposit Copy because SAS specifically instructed them to do so:

> Structured Asset Sales, LLC disagrees with the legal position of being limited to the sheet music deposit copy.  I further understand that Structured Asset Sales, LLC takes the position that even if it is correct that the scope of protection afforded a musical composition under the Copyright Act is limited to what is reflected in the "deposit copy," the scope of the "Let's Get It On" composition encompasses both the deposit copy sheet music submitted in 1973 and the 1973 sound recording.

(Covach Report ¶ 2).[3]  SAS's claim thus disregards this Court's decision, the express position of the Copyright Office, and the Ninth Circuit's recent decision in *Skidmore v. Led Zeppelin*, 952 F.3d 1051 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 453 (2020), *reh'g denied*, 141 S. Ct. 946 (2020).

---

[3] SAS's claim here improperly relies on the LGO Recording, making its claim identical to the claim it has filed in a second case pending before Judge Abrams ("SAS II"), even relying on the very same expert reports served in this case (attached as exhibits to the SAS II Complaint).

After admitting that one of the three elements SAS's own experts insist are required for SAS's infringement claim (the bass line) does not exist in the Deposit Copy, SAS's experts also admit that the remaining two allegedly similar elements are commonplace.  Dr. Covach admits the chord progression is "very common" and that rhythmic syncopation has been regularly used in popular music of the last 100 years.  Dr. Covach also admits (a) that the chord progressions are different (but claims they are "functionally equivalent") and (b) that to make the harmonic rhythms the same, one must cut in half the value of the notes and chords and ignore several other objective differences.  In other words, Dr. Covach admits the commonplace chord progressions and harmonic rhythms are actually different.[4]  These admissions require dismissal of SAS's claims.

Nor can SAS prevail upon a "combination" or "selection and arrangement" claim.  The two remaining elements in the "backing pattern" are not sufficiently numerous or original to support a viable "combination" claim.  A "thin" copyright infringement claim, based on an alleged combination of unprotectable elements, requires numerous elements whose selection and arrangement must be sufficiently original to warrant protection.  And then, such numerous and original elements must be expressed in an identical or virtually identical manner in both works.  Here, the two unprotectable elements at issue are not sufficiently numerous, and, as Dr. Covach admits, the allegedly similar elements are actually different, requiring Dr. Covach to invent his "functional equivalence" theory.  But his theory is contrary to copyright law, as it would expand protection from what is expressed to include supposedly functionally equivalent elements that are

---

[4] As Dr. Ferrara's Rebuttal Report points out, "acceptance of Dr. Covach's 'functional equivalency' would bestow upon the creators of LGO a monopoly over every 'functionally equivalent' chord progression that could be derived from the I-iii-IV-V chord progression in LGO, massively reducing the availability of the use of chord progressions in music."  (Ferrara Rebuttal Report ¶ 5).

3

nowhere expressed in the allegedly infringed work.  It would accord "thin" copyrights greater protection, not narrower protection, than other copyrighted works.

The remaining alleged "similarities" identified by SAS do not withstand scrutiny.  SAS's expert reports unsuccessfully struggle to manufacture supposed structural similarities between TOL and LGO that do not exist and which are standard building blocks of music (*e.g.*, verses, choruses and the "looping" of chord progressions).  And while SAS purports to identify isolated similarities between TOL's and LGO's vocal melodies – which appear in different sections in each song – a comparison of the melodies conclusively establishes that they are objectively and entirely different and are performed at very different melodic rhythms, a fact that SAS's experts purposely ignore in their Reports.  The Court can hear the marked difference between the melodies in the accompanying audio exhibits.[5]

For these reasons, and those detailed below, Defendants' motion for summary judgment should be granted.

## ARGUMENT

### I.    SAS'S INFRINGEMENT CLAIM FAILS AS A MATTER OF LAW

#### A.    Legal Standard For Copyright Infringement

To succeed on a copyright infringement claim, a plaintiff must establish that "(1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the **protectible elements** of plaintiff's." *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 63 (2d Cir. 2010) (citation & quotation omitted, emphasis added).

---

[5] The Ferrara I Report details the manifest differences between the melodies at paragraphs 127-150.  Unable to refute Dr. Ferrara's deconstruction of his claim of melodic similarities, Dr. Covach's Rebuttal Report abandons any discussion of the melodies and relies solely on his deficient three-element "backing pattern."

As the Second Circuit has cautioned, "copying and wrongful copying … are often confused." *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100 (2d Cir. 2014).  Because "[n]ot every portion or aspect of a copyrighted work is given copyright law's protection," "[c]opying [unprotected] aspects of a work is not wrongful, and thus not <u>all</u> copying is wrongful." *Id.* (emphasis in original).  As a consequence, "an element within a work may be unprotectible even if other elements, or the work as a whole, warrant protection." *Boisson v. Banian, Ltd.*, 273 F.3d 262, 268 (2d Cir. 2001).  Thus, "the term 'substantial similarity' is properly reserved for similarity that exists between the protected elements of a work and another work.  If two works are 'substantially similar,' any copying [is] wrongful.  By contrast, similarity that relates to unprotected elements is probative only of copying – not wrongful copying – and is referred to as 'probative similarity.'" *Zalewski*, 754 F.3d. at 101 (internal citations omitted).

Accordingly, on a motion for summary judgment, "it is entirely appropriate for a district court to resolve [the] question [of substantial similarity] as a matter of law, either because the similarity between two works concerns only noncopyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." *Peter F. Gaito*, 602 F.3d at 63 (citations & quotations omitted).

**B.      The Deposit Copy Defines The Scope Of Copyright Protection**

This Court has already ruled that the LGO copyright at issue in this case is limited to what is expressed in the written sheet music deposited with and registered by the U.S. Copyright Office. *See Griffin v. Sheeran*, No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908, at *1-2 (S.D.N.Y. Mar. 24, 2020) (citing *Merrell v. Tice*, 104 U.S. 557, 561 (1881)); *see also Skidmore v. Zeppelin*, 952 F.3d 1051, 1063 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 453 (2020), *reh'g denied*, 141 S. Ct. 946 (2020).

Here, the musical elements expressed in the Deposit Copy include the composition's key, meter, harmony (*i.e.*, chord progression), rhythm, melody, lyrics and song structure.  (56.1 ¶ 22). The Deposit Copy does <u>not</u> notate a bass-line, it does <u>not</u> reflect percussion elements (*e.g.*, drums), and it does <u>not</u> specify the tempo in which to perform the composition (*i.e.*, the number of beats per minute, which dictates how fast or slow the composition is to be performed).  (*Id.* ¶ 23).

Despite the clarity of the Ninth Circuit's *Skidmore* decision and this Court's *Griffin* decision, SAS's infringement claim is predicated on an element – the bass line – that exists only in the LGO Recording, not the Deposit Copy.  However, as this Court has made clear, "the field of protected elements [is not] enlarged on the theory they are consistent, and harmonize with the work as articulated in the Deposit Copy, and are implied by the way the articulated elements are expressed."  *Griffin*, 2020 U.S. Dist. LEXIS 52908, at *2-3.  "If what is implied is not in the Deposit Copy, it does not have the protection of copyright."  *Id.*  The comparison of TOL to LGO must be limited to only those elements notated in the Deposit Copy.  The bass line is not one of those elements and, thus, Defendants should be granted summary judgment because SAS's "backing pattern" requires all three elements and, at most, only two exist.

### C.   <u>The Court Must Filter Unprotectable Elements From Consideration</u>

While "[courts] usually apply the 'ordinary observer' test and ask whether 'the ordinary observer, unless he set out to detect the disparities, would be disposed to overlook them, and regard their aesthetic appeal as the same'" (*Zalewski*, 754 F.3d at 102 (citation & quotation omitted)), where, as here, a court is "faced with works that have both protectible and unprotectible elements, [the court's] analysis must be more discerning."  *Peter F. Gaito*, 602 F.3d at 66 (internal citations & quotations omitted).  In such cases, the Second Circuit has explained that "we instead <u>must</u> attempt to extract the unprotectible elements," and the question becomes "<u>whether the protectible</u>

elements, standing alone, are substantially similar." *Id.* (emphases added; citations & quotations omitted); *see also McDonald v. West*, 138 F. Supp. 3d 448, 455 (S.D.N.Y. 2015), *aff'd*, 669 F. App'x 59 (2d Cir. 2016) ("When a plaintiff alleges infringement of a copyrighted work that incorporates significant elements from the public domain … the 'ordinary observer' test must become 'more discerning'" because "[i]t would be unfair to impose copyright liability if the defendant copied something from the plaintiff that the latter had no right to control") (internal citation omitted).

As a California court recently stated in granting a motion to set aside an infringement verdict, "courts in musical copyright cases have a <u>significant obligation</u> … to encourage others to build freely upon the ideas and information conveyed by a work, and at the same time motivate creative activity, by <u>carefully limiting the scope of copyright protection to truly original expression only</u>." *Gray v. Perry*, No. 15-cv-5642 (CAS), 2020 WL 1275221, at *4 (C.D. Cal. Mar. 16, 2020) (emphases added; citations, quotations & brackets omitted); *see also Skidmore*, 952 F.3d at 1064 ("Crucially, because only substantial similarity in protectable expression may constitute actionable copying that results in infringement liability, it is essential to distinguish between the protected and unprotected material in a plaintiff's work") (citation & quotation omitted).

The principle that courts must extract unprotectable elements from consideration on Rule 12 and Rule 56 motions is firmly established in the Second Circuit. *E.g.*, *Peter F. Gaito*, 602 F.3d at 67 (explaining, on a motion to dismiss, "<u>we</u> are required to determine whether any alleged similarities are due to protected aesthetic expressions original to the allegedly infringed work, or whether the similarity is to something in the original that is free for the taking") (citation & quotation omitted; emphasis added); *Zalewski*, 754 F.3d at 98 (on summary judgment, the Second Circuit explained that "[t]here are scènes-à-faire in architecture" and the court must "[d]etermin[e]

7

the boundaries of copyright protection"); *McDonald*, 138 F. Supp. 3d at 456, *aff'd*, 669 F. App'x 59 (in a music infringement case, the court granted a motion to dismiss since the elements the defendants allegedly copied from the plaintiff's composition were "not copyrightable," as they were "far too … common, and unoriginal to create any exclusive right vested in Plaintiff").

Consistent with this settled rule, in assessing whether TOL is substantially similar to LGO, the Court must first extract unprotectable elements from consideration.  In the context of music, "[a]lthough there is generally a low bar for originality in copyright, given the limited number of notes and chords available to composers, and because common themes frequently reappear in various compositions, many if not most of the elements that appear in popular music are not individually protectable."  *Gray*, 2020 WL 1275221, at *4 (citations & quotations omitted).

As the Ninth Circuit noted in *Skidmore*, basic musical "building blocks" such as key, meter, tempo, common song structures, **common chord progressions**, common melodies and **common rhythms** are freely available and hence unprotectable.  952 F.3d at 1070 (emphases added); *see also McDonald*, 138 F. Supp. 3d at 454 ("common rhythms, song structures, and harmonic progressions are not protected") (citations omitted); *Jean v. Bug Music, Inc.*, No. 00-cv-4022 (DC), 2002 WL 287786, at *6 (S.D.N.Y. Feb. 27, 2002) (common melodic sequence held unprotectable); *Tisi v. Patrick*, 97 F. Supp. 2d 539, 543-44 (S.D.N.Y. 2000) (key, common structure, harmonic progression and percussive rhythm held unprotectable).  *Accord Gray*, 2020 WL 1275221, at *5 (finding unprotectable, among other things, "chord progressions," "syncopation," and "the use of basic musical devices in different manners") (citations & quotations omitted).

In this case, after eliminating the bass line, which SAS's own experts admit is not included in the Deposit Copy, only two allegedly similar elements actually exist.  SAS's experts further admit (and the case law recognizes) that both of these elements – the chord progression and the

harmonic rhythm (*i.e.*, syncopation) – are commonplace musical building blocks that have been used in countless songs.[6]  They are not protectable, are freely available and must be excluded from any infringement analysis.  And once they are excluded, SAS's infringement claim ceases to exist.

### D. No Actionable Similarities Exist Between LGO And TOL

Because one of the three elements that SAS admits is required for its infringement claim, the bass line, is not found in the Deposit Copy and because SAS admits the other two elements are unprotectable musical building blocks (which, thus, requires their being eliminated from consideration), there is nothing protectable supporting SAS's infringement claim.[7]

#### 1. SAS Concedes The I-iii-IV-V Chord Progression Is A Commonplace Unprotectable Musical Building Block

SAS <u>admits</u> that the I-iii-IV-V progression "is a <u>very common</u> progression, used in many songs, and by itself – in isolation – does not constitute an element that one could copyright in most cases."  (Covach Report ¶ 6; emphasis added).[8]  Indeed, Dr. Covach concedes "[a] chord succession that simply moves through the I, iii, IV and V chords cannot really be considered original, since there are other songs that employ this pattern."  (*Id.* ¶ 18; *see also* Covach Rebuttal

---

[6] While SAS's experts try to suggest that there are also melodic similarities, it is indisputable, as shown below, that no melodic similarities exist.  Only by altering pitches and ignoring the rhythmic relationships of the pitches are SAS's experts able even to pretend that some melodic similarity exists.  Dr. Everett's analysis also fails to include transcriptions of TOL, which would have highlighted his improper alterations.

[7] The key and meter of LGO are also unprotectable musical building blocks.  *E.g.*, *Tisi*, 97 F. Supp. 2d at 548; *Velez v. Sony Discos*, No. 05-cv-615 (PKC), 2007 WL 120686, at *10 (S.D.N.Y. Jan. 16, 2007).  While SAS points to the admittedly different "tempos" of TOL and the LGO Recording, the LGO Recording is irrelevant and the Deposit Copy does not notate a tempo – and tempo is, in any event, an unprotectable musical building block.  *E.g.*, *McDonald*, 138 F. Supp. 3d at 458 ("Tempo … is a basic element of music that is part of the public domain") (citation omitted).

[8] Before improperly "amending" his Report, Dr. Everett expressly admitted that the I-iii-IV-V chord progression was one of "the most common major-key progressions opening with [a I chord]."  (56.1 ¶ 11).

Report, ¶ 10 ("I state clearly in my report that this chord progression is common")).[9]

In fact, it is undisputed that the I-iii-IV-V progression appears in many songs that predate and postdate LGO (and Defendants have identified upwards of 50 songs that utilize a I-iii-IV-V or I-I[6]-IV-V chord progression).  (56.1 ¶¶ 36-37).  The I-iii-IV-V chord progression is so common it is taught in elementary guitar method books, one of which states that "dozens of other I-iii-IV-V songs" predated LGO and that the authors of LGO were "simply writing a song using a common progression, just like every other professional songwriter does." (*Id.* ¶ 38).  Another elementary guitar method book terms the I-iii-IV-V progression "a popular chord progression" and one of the "most frequent chord progressions."  (*Id.* ¶ 39).

The I-iii-IV-V chord progression is not protectable and thus must be extracted from consideration.  *E.g.*, *McDonald*, 138 F. Supp. 3d at 454 ("common … harmonic progressions are not protected") (citations omitted); *Gray*, 2020 WL 1275221, at *5 (chord progressions not protectable); *Batiste v. Najm*, 28 F. Supp. 3d 595, 615-16 (E.D. La. 2014); (ruling that chord progressions were "not entitled to protection" because they were "basic" "building blocks of music"); *VMG Salsoul, LLC v. Ciccone*, No. 12-cv-5967 (BRO), 2013 WL 8600435, at *7 (C.D. Cal. Nov. 18, 2013) ("[e]asily arrived at phrases and chord progressions are usually non-copyrightable"), *aff'd in part, vac'd in part on other grounds*, 824 F.3d 871 (9th Cir. 2016).

### 2.    The Chord Progressions Are Objectively Different

Not only is LGO's I-iii-IV-V7 chord progression unprotectable, but TOL does not even employ a I-iii-IV-V7 progression (or a I-iii-IV-V progression).  (56.1 ¶¶ 33-34).  Segments of TOL

---

[9] Dr. Covach also admits that TOL does not actually use a I-iii-IV-V chord progression but instead uses what he calls a "functionally equivalent" chord progression.  Extending copyright to unexpressed supposed "functionally equivalent" elements violates *Skidmore*, *Perry* and this Court's deposit copy decision and would improperly expand the monopoly conferred by copyright.

utilize a I-I[6]-IV-V chord progression which Dr. Covach admits is different but argues is "functionally equivalent" – a phrase that has no legal significance. Saying they are functionally equivalent is simply an admission that the chord progressions are different.

Moreover, the difference is significant. Whereas the second chord in LGO is a "iii" chord, the second chord in TOL is a "I[6]" chord (also written as a "I/3" chord). (*Id.* ¶ 35). A "I[6]" chord is a major chord, whereas a "iii" chord is a minor chord, a significant harmonic difference. If one could substitute individual chords in a four-chord progression and claim infringement of the "substitute" chords, it would create virtually limitless permutations, gutting the requirement that copyright extend only to what is expressed in the deposit copy.[10]

### 3. SAS Concedes The Centuries-Old Rhythmic Technique Known As "Anticipation" Is An Unprotectable Building Block Of Music

The second of the two remaining elements of SAS's "backing pattern," the rhythmic "anticipation" of chord changes, is also commonplace and unprotectable. Dr. Covach describes anticipation as "[a] type of syncopation that is common in popular music of the 20th century," and admits that "American popular music of the last 100 years employs a high degree of rhythmic syncopation." (Covach Rebuttal ¶ 5; *see also* Covach Report ¶ 18 (anticipation "occurs in other songs as well"); Ferrara I Report ¶¶ 16, 61; Ricigliano Report at 9).

SAS's admission is consistent with well-settled authority that methods and techniques such as syncopation are not protected by copyright. *E.g.*, *Gray*, 2020 WL 1275221, at *5 ("syncopation" and "the use of basic musical devices in different manners" are not protectable) (citations & quotations omitted); *McDonald*, 138 F. Supp. 3d at 458 ("Plaintiff cannot own a common musical technique like melisma"); *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1060-61 (C.D. Cal. 2018)

---

[10] Other differences in the chord progressions also exist. For example, whereas LGO uses a "I" chord, TOL often uses a "I5" chord, and whereas LGO uses a "V7" chord, TOL never uses a "V7" chord. (*Id.* ¶ 34).

("The use of basic musical devices in different manners is not copyrightable"); *see also* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery … ").

It is also consistent with well-settled authority that musical building blocks such as common rhythms (and anticipation is a common rhythmic technique) are not protected by copyright.  *E.g.*, *McDonald*, 138 F. Supp. 3d at 454 ("common rhythms … are not protected") (citations omitted); *id.* at 458 (common techniques are not protectable).

### 4.   The Harmonic Rhythms Are Objectively Different

LGO's harmonic rhythm is also objectively different than the harmonic rhythm in TOL. LGO uses a four-bar chord progression with two chords in bar 1, the continuation of the second chord in bar 1 into bar 2, two chords in bar 3, and the continuation of the second chord in bar 3 into bar 4.  (Ferrara I Report ¶ 49).  In contrast, TOL uses a two-bar chord progression, with two chords in bar 1 and two chords in bar 2.  (*Id.*)  In addition, whereas the second chord in LGO is on beat 4 and anticipates beat 1 of measure 2, the second chord in TOL is on the second half of beat 2 and anticipates beat 3 of measure 1.  (*Id.* ¶ 50).  Similarly, whereas the fourth chord in LGO is on beat 4 and anticipates beat 1 of measure 4, the fourth chord in TOL is on the second half of beat 2 and anticipates beat 3 of measure 2.  (*Id.* ¶ 51).  While SAS pretends these differences are insignificant – which is not the case – it admits the differences exist.  (Covach Rebuttal ¶ 5).

Further, the expression of the "anticipation" technique is different in each composition. Anticipation in LGO occurs before beat 1 while anticipation in TOL occurs before beat 3.  (Ferrara I Report ¶ 52).  Additionally, in LGO each anticipated chord has a duration of one quarter note, while each anticipated chord in TOL has the duration of an eighth note.  (*Id.* ¶ 53).

SAS ignores these objective differences.  To find equivalence between the harmonic

rhythms, one would need to disregard the objective differences cited above and also **cut in half** the value of the notes and chords in LGO.  (*Id.* ¶ 55).  The rhythmic differences between these works are empirically shown in the LGO Deposit Copy and the published sheet music for TOL.

Because the chord progressions and harmonic rhythms in LGO are both unprotectable and different from those used in TOL, these two remaining elements of SAS's three-part "backing pattern" must be eliminated from consideration.  Upon their being eliminated, nothing remains.

### 5. The Melodies Are Objectively Different, Which Is Obvious From SAS's Own Admissions

#### i. The Analyses Of SAS's Experts Prove That The Vocal Melodies Are Objectively Different

SAS's experts' struggle to buttress SAS's "backing pattern" claim includes manufacturing supposed melodic similarities between the opening few measures of TOL and random segments from LGO.  Yet, even as transcribed by Dr. Covach, these fragments of melody are objectively different, and the pitch sequences do not remotely match.

At Paragraph 15 of his Report, Dr. Covach compares the beginning of TOL (set to the words "When your legs don't work like they used to, and I can't sweep you off of your feet") with the last four measures of the LGO chorus (set to the words "Let's get it on, sugar, let's get it on, ooh") – completely different segments of the two songs.  Not only are the uses and placements different, Dr. Covach's own notations prove these melodies are very different:

| LGO | 1 | 1 | 1 | *6 | 5 | b3 | 2* | 6 | 5 | *3 | 5 | 6 | 5 | 3* | 3 | 5 | 6 | | |
| TOL | 3 | 5 | *6 | 3 | 2* | 1 | 2 | 3 | 5 | 1 | *3 | 5 | 6 | 5 | 3* | 3 | 2 | 1 | 1 |

The pitch notations above make it clear just how different these melodies are.  This does not even take into account the different metric placements of the different notes and their different rhythmic durations.  In an effort to fabricate alleged similarities where none exist, Dr. Covach

13

carefully ignores the rhythm at which these notes are written (*e.g.*, half notes versus quarter notes), the relationship of the notes and rhythmic values to each other, and the metric placements of the melodies.  These melodies are analyzed at Paragraphs 135-140 and 142-148 of the Ferrara I Report and at Paragraphs 30-31 and 39-40 of the Ferrara Rebuttal Report.  Even if Dr. Covach's transcriptions were accurate (and they are not), it is indisputable that these melodies are not remotely similar.  Unable to dispute these facts, Dr. Covach offers no rebuttal to them in his Rebuttal Report.

The obvious and objective differences between these vocal melodies can be heard by the naked ear on Tracks 1 and 2 of Audio Exhibit 1 to Ferrara I Report and Track 3 of Audio Exhibit 1 to the Ferrara Rebuttal Report.[11]  The Court can see and hear for itself that these are clearly and unequivocally very different melodies.  (Ferrara I Report ¶¶ 28, 37, 45, 143-149).[12]

While Dr. Covach compares the opening of TOL with the last four measures of LGO's chorus, SAS's other musicologist, Dr. Everett, compares a portion of TOL's opening with the opening phrases of LGO, but carefully – and improperly – omits any transcriptions of TOL because an accurate transcription would reveal the complete absence of any similarities.  Accurately transcribed, the pitch sequences of "Upper Voice" Melody Phrase 1 are utterly dissimilar:

| LGO | 3 | 4 | 5 | 4 | b3 | 2 | b3 | 2 | b3 | 2 | 2 | 2 | 1 | 2 |
|-----|---|---|---|---|----|---|----|---|----|---|---|---|---|---|
| TOL | 3 | 5 | 6 | 5 | 3  | 2 | 1  | 2 | 3  | 6 | 1 |   |   |   |

---

[11] Notably, the alleged similarity that exists in the pitch sequence of the second portion of the above melodic phrase lines up with greater similarity to the opening pitches of the well-known Stephen Foster song, "Camptown Races," than it does with TOL.  (Ferrara I Report ¶ 141).  For reference, "Camptown Races" includes the well-known vocal refrain "Oh, doo-dah day!"

[12] Dr. Covach's statement that these melodies are "strikingly" similar is both demonstrably false and outside his role as a musicologist, invading the province of the trier of fact.  Oddly, this statement uses a different font and typeface than the rest of his Report.

(Ferrara II Report ¶ 30).  As shown above, Dr. Everett wrongly claims, without providing a musical transcription, that "Upper Voice" Melody Phrase 1 begins with scale-degrees 3-4-5.  Yet, even Dr. Covach shows that Dr. Everett is objectively wrong.  (Covach Report ¶ 15).  By not bothering to transcribe TOL, Dr. Everett conceals that the pitches he ascribes to TOL are objectively wrong.

The pitch sequences of these melodies, together with their very different metric placements on or within beats, and their rhythmic durations, are analyzed at Paragraphs 26-38 of the Ferrara II Report and pages 22 to 25 of the Ricigliano Report.  The stark differences between these vocal melodies also can be heard by the naked ear on Track 1 of Audio Exhibit 1 to the Ferrara II Report.

Finally, Dr. Everett also identifies supposed similarities between "Upper Voice" Melody Phrase 2 of each work.  Yet again, however, Dr. Ferrara's musical transcriptions (and Dr. Everett provided none for TOL) confirm the pitch sequences are completely different (Ferrara II Report ¶¶ 39-40), and Dr. Ferrara and Mr. Ricigliano further underscore the marked differences between the metric placements and rhythmic durations of the pitches in these melodies.  (Ferrara II Report ¶¶ 39-47; Ricigliano Report at 25-28).  These differences can be heard by the naked ear on Track 2 of Audio Exhibit 1 to the Ferrara II Report.

### ii.  The Remainder Of SAS's Melodic Analysis Should Be Rejected

In a passing attempt to add heft to SAS's nonexistent claim of melodic similarity, Dr. Everett identifies some scattered alleged melodic similarities, most of which do not actually exist, none of which he bothers to transcribe, and none of which support SAS's infringement claim.

*First*, Dr. Everett claims that both songs emphasize certain notes – scale degrees 5 and 3 – over the "iii" chord; he opines that it supposedly would be more "usual" to emphasize scale degree 7 over the "iii" chord.  (Everett Report at 10, 20).  But Dr. Ferrara, Mr. Ricigliano and even Dr. Covach all agree that there is no "iii" chord in TOL (Ferrara I Report ¶ 39; Ricigliano Report at 8;

15

Covach Report ¶ 6), making nonsense of Dr. Everett's assertion.  (Ferrara II Report ¶ 51).  Further, the melodies "concurrent" with the second chord of the chord sequence in each song are different, and Dr. Everett does not even attempt to address the more salient fact that the melodies he has placed at issue are completely dissimilar as shown above.  (Ferrara II Report ¶¶ 52-57).

Moreover, the supposed "similarity" identified by Dr. Everett is what is absent from each work rather than what is present.  Copyright protects what is expressed, not what is unexpressed. In any event, there is nothing unusual about omitting scale-step 7 in songs that use a I-iii chord progression.  (Ricigliano Report at 28-29).  And because Dr. Everett carefully restricted his review of prior art to songs from before 1979, he ignored the fact that avoiding scale degree 7 is consistent with Sheeran's general style and his earlier works.  Perhaps even more important, Dr. Everett also ignores that it is quite common for songs that use the basic building block of a pentatonic scale, like LGO and TOL, to avoid scale-step 7.  (*Id.* at 30-31).  Thus, the absence of scale-step 7 is not only commonplace but expected.  Further, TOL and LGO express their melodic phrases in very different ways, as illustrated and notated at pages 35-36 of the Ricigliano Report.

*Second*, Dr. Everett claims that both songs supposedly end melodic phrases on the same note – a "non-resolving" scale degree 1.  This is incorrect.  As objectively demonstrated in the Ferrara II Report, the phrases do not both end on scale degree 1.  (Ferrara II Report ¶¶ 59-63; *see also* Ricigliano Report at 32-33).  But even if Dr. Everett were correct, the notes and rhythmic values of these melodies are different, making the note on which they end irrelevant, notwithstanding the fact that countless songs that are totally different end on the same note.  Ending phrases in this manner is a common melodic technique, which has been employed by Sheeran in his earlier works.  (Ricigliano Report at 32).

*Third*, Dr. Everett opines that both songs supposedly begin in a "weak metrical location."

16

(Everett Report at 20).[13]   As Dr. Ferrara explains, however, while both songs begin in a weak metrical location, they do not begin on the same beat.  (Ferrara II Report II ¶¶ 79-83).  But even if Dr. Everett were correct, it is exceedingly commonplace for vocal melodies to begin in weak metrical positions.  (*Id.*; Ricigliano Report at 34).  Tens of thousands of songs begin after a rest on a weak metrical position.  It is not remotely indicative of copying.  (*Id.*)

*Fourth*, Dr. Everett emphasizes that both melodies make use of the vocal technique known as "melisma."  (Everett Report at 17, 20).  Melisma occurs when a vocalist sings a single lyrical syllable over multiple notes (as opposed to one note per syllable).  (Ricigliano Report at 34).  As a matter of law, melisma is unprotectable.  *Williams v. Gaye*, 895 F.3d 1106, 1145 (9th Cir. 2018) ("Melisma … is 'a common musical technique' and, as such, unprotectable") (quoting *McDonald*, 138 F. Supp. 3d at 458).  It is unprotectable because it is a generic vocal technique that has been used for more than a millennium and is commonplace in popular music.  (Ferrara II Report ¶¶ 85, 90).  Indeed, Sheeran frequently used melisma in his prior songs.  (Ricigliano Report at 34-35).[14]

In sum, no matter how much Dr. Everett strains to fabricate alleged melodic similarities, the two songs are distinctly different and share nothing but two commonplace unprotectable musical building blocks which are actually expressed differently in each work.

### 6.      No Objectively Significant Structural Similarities Exist

Although LGO and TOL both incorporate generic structural building blocks of music such as verse and chorus sections, like almost all popular music does, significant and obvious structural differences exist between the two works, as charted and illustrated by Defendants' experts.

---

[13] Dr. Everett repeatedly employs obscure phrases without defining them, the purpose of which appears to be to confuse rather than to inform.

[14] And, of course, the two songs use the technique of melisma in significantly different ways, in different segments of the songs and in connection with different lyrics.  (Ferrara II Report ¶¶ 88, 90).

(Ferrara I Report ¶¶ 26-28; Ricigliano Report at 11).  For example, whereas TOL includes two pre-chorus sections, LGO has none; whereas LGO includes two bridge sections, TOL has none; and whereas TOL includes an interlude, LGO has none.  (Ferrara I Report ¶ 27).

Disregarding this Court's deposit copy ruling, SAS's experts point to alleged structural similarities between TOL and the LGO Recording.  (Ferrara I Report ¶¶ 122-123).  Even if the LGO Recording were relevant (and it is not), the song structures, as charted by Dr. Covach, are still objectively different.  (*Id.* ¶¶ 124-126).

Dr. Everett also strains to identify alleged structural similarities, arguing that both songs "loop" chord progressions "in both verse and chorus passages," and that "[b]oth songs share the same formal structure at sub-phrase, phrase, section, and multi-section levels."  (Everett Report at 21).  Dr. Everett's terminology is designed to obscure, not clarify.  To simplify what he is saying, he is merely noting that both songs repeat (*i.e.*, loop) unprotectable (and different) chord progressions.  (Ricigliano Report at 17).  Moreover, looping a chord progression is exceedingly common in popular music, and Sheeran's prior works frequently incorporate looping.  (Ferrara II Report ¶ 20; Ricigliano Report at 17-19, 35).  Repeating unprotectable chord progressions does not transform what is commonplace into something protectable.

In any event, Dr. Everett's analysis is also wrong.  TOL uses different chord progressions in its choruses and different durations of the "looped" chord progressions.  (Ferrara II Report ¶¶ 20-21, 24-25; Ricigliano Report at 17).  For example, the final two measures of the TOL choruses use a substantially different chord progression that "breaks away" from the basic I-I-$^6$-IV-V progression (which itself is different than the I-iii-IV-V progression in LGO), making the harmonic phrase structure of TOL more similar to the classic *Rolling Stones* song "Get Off My Cloud" (which predates LGO) than it is to LGO.  (*Id.*)

Finally, as noted at paragraphs 66-72 of the Ferrara II Report, Dr. Everett's conclusion regarding the song structures (as set forth in his sixth summary bullet point) is objectively inaccurate.  Dr. Everett identifies only fragmentary alleged similarities derived from commonplace musical building blocks and generic structural ideas.

### 7.   SAS's "Combination" Claim Fails As A Matter Of Law

Because SAS admits that the alleged similarities it has identified comprise unprotectable musical building blocks, SAS is relegated to arguing that TOL infringes the "combination," or selection and arrangement, of the "backing pattern" identified by Dr. Covach.

As detailed below, SAS's "selection and arrangement" of unprotectable elements claim fails for three independently sufficient reasons.  *First*, because there is no bass-line in the Deposit Copy, one of the three necessary elements of the combination does not exist.  *Second*, the remaining two elements – which SAS admits are commonplace, unprotectable basic musical building blocks – are not sufficiently numerous or original to qualify for copyright protection. *Third*, the remaining two elements are not identical or virtually identical but in fact are different, which precludes a finding of wrongful copying under applicable copyright jurisprudence.[15]

### i.   The Bass-Line Does Not Exist in LGO And Thus Cannot Be Considered As Part Of Any Alleged "Combination"

It is undisputed that the bass-line is not notated in the Deposit Copy.  Dr. Covach's contention that the bass-line is implied has already been rejected by this Court.  In any event, many different possible bass-lines could be implied from the Deposit Copy.  (Ferrara I Report ¶¶ 112-

---

[15] Dr. Covach's opinion is substantially based on his three-element "backing pattern."  While he makes a passing attempt to include the "combined parallels in the melody" of each song (Covach Report ¶ 21), his opinions regarding the melodies of each song, as shown above, are demonstrably baseless.  To the extent he claims that the indisputably different melodies form part of the "combination" in issue, it provides no support to his "selection and arrangement" claim and, in fact, further undermines any such claim, as it reinforces that the alleged combinations are not virtually identical.

13; Ferrara Rebuttal Report ¶¶ 19, 22).  Because SAS's combination claim requires the nonexistent

bass-line, it should be dismissed.[16]

### ii.  The "Combination" Of Two Commonplace Elements Is Not Sufficiently Original To Merit Copyright Protection

The law is clear that copyright protection extends to "'a combination of unprotectable

elements <u>only if</u> those elements are numerous enough and their selection and arrangement original

enough that their combination constitutes an original work of authorship.'"  *Skidmore*, 952 F.3d at

1074 (quoting *Satava v. Lowry*, 323 F.3d 805, 811 (9th Cir. 2003); emphasis added & ellipsis

omitted).  "Put another way, what a selection and arrangement copyright protects is the <u>particular</u>

way in which the artistic elements form a coherent pattern, synthesis, or design."  *Skidmore*, 952

F.3d at 1074 (citations omitted; emphasis in original).[17]

The principle articulated by the Ninth Circuit in *Skidmore* is the same in the Second Circuit.

*See Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 552 n.3 (S.D.N.Y. 2011),

*aff'd sub nom. Jovani Fashion, Ltd. v. Fiesta Fashions*, 500 F. App'x. 42 (2d Cir. 2012) ("the bar

for copyrightability due solely to selection and arrangement is quite high") (quoting *Satava*, 323

F.3d at 811)); *Threeline Imports, Inc. v. Vernikov*, No. 15-cv-2333(AMD) (RML), 2016 WL

11472749, at *13 (E.D.N.Y. Oct. 28, 2016).

Two elements have been found insufficient to satisfy the "numerous" requirement.  *E.g.*,

*Beyond Blond Productions, LLC v. Heldman*, 479 F. Supp. 3d 874, 883 (C.D. Cal. Aug. 14, 2020)

---

[16] Dr. Covach did not conduct any prior art search before opining that the nonexistent LGO "backing pattern" was distinctive to LGO, a further reason to reject his opinion and find it inadmissible under *Daubert* and to dismiss SAS's claim of infringement.  *E.g.*, *Johannsongs-Publishing Ltd. v. Rolf Lovland*, No. 18-cv-100009 (AB), 2020 WL 2315805, at *5 (C.D. Cal. Apr. 3, 2020).

[17] To be sure, Defendants do not dispute on this motion that LGO as a whole is entitled to copyright protection; what Defendants dispute – and what the law unequivocally supports – is that the combination of unprotectable elements on which SAS relies to claim an infringement is not sufficiently numerous or original to qualify for protection and is not, in any event, virtually identical in TOL.

("The law and facts clearly favor the conclusion that [the plaintiff's] combination of two unprotectable elements is not sufficiently numerous or original to constitute [an] original work entitled to copyright protection").  On the contrary, the "numerous enough" requirement generally requires that <u>at least</u> four or five distinct elements be combined together in a coherent, purposeful fashion, but even four or five elements may not suffice.  *E.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (combination of five elements qualified for protection); *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1139 (D. Or. 2012) (combination of four elements qualified for protection); *Morrill*, 338 F. Supp. 3d at 1061 (combination of five elements did <u>not</u> qualify for protection); *Cottrill v. Spears*, No. 02-cv-3646 (BMS), 2003 WL 21223846, at *9 (E.D. Pa. May 22, 2003), *aff'd*, 87 F. App'x 803 (3d Cir. 2004) (combination of four elements did <u>not</u> qualify for protection); *Smith v. Weeknd*, 19-cv-2507 (PA), 2020 WL 4932074, at *7 (C.D. Cal. July 22, 2020) (combination of three elements did <u>not</u> qualify for protection).[18]

Here, the two unprotectable elements are not "numerous enough" to qualify for copyright protection as a matter of law.  That, alone, requires dismissal of SAS's selection and arrangement infringement claim.[19]

Moreover, even if the "backing pattern" was not lacking one of its required elements, it is

---

[18] That the plaintiff sought to combine three elements in *Smith* is confirmed by reference to the docket in that case.  (*See* Dkt. No. 131 at 19-20).

[19] Dr. Everett's purported additional alleged similarities (all of which have been addressed above) either do not exist or are overstated.  (*See generally* Ferrara II Report; Ricigliano Report at 36-37).  These supposed similarities are not part of any common "selection and arrangement," but instead, as demonstrated in the Ricigliano Report, are purely random isolated elements.  (Ricigliano Report at 38-39).  As a matter of law, this cannot support a "selection and arrangement" claim.  *E.g.*, *Washington v. ViacomCBS, Inc.*, No. 20-cv-0435 (CBM), 2020 WL 5823568, at *4 (C.D. Cal. Aug. 20, 2020) (rejecting claim because "Plaintiff fails to explain how th[e] elements are 'particularly selected and arranged' in a manner different than commonplace elements or a random selection thereof"); *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) ("We are particularly cautious where, as here, [a] list emphasizes random similarities scattered throughout the works") (citation omitted); *see also Skidmore*, 952 F.3d at 1076 (citing *Litchfield*).

also not "original enough."  Defendants have identified multiple works that use a I-iii-IV-V chord progression (and TOL uses a different I-I$^6$-IV-V chord progression) together with anticipation of chord changes on the second and fourth chords.  (56.1 ¶ 116).  Defendants also have identified a prior work authored by TOL co-author Amy Wadge, who contributed the chord progression at issue in TOL, that includes a I-I$^6$-IV-V chord progression that anticipates chord changes on the second, third, and fourth chords.  (*Id.* ¶¶ 53, 117).  Sheeran, too, has used the commonplace anticipation technique in at least twenty songs that he wrote or co-wrote prior to TOL.  (*Id.* ¶¶ 52, 118).  In ten of those twenty songs, anticipation occurs on the second and fourth chords of the chord progression, as in TOL.  (*Id.*).

Objectively, the "selection and arrangement" similarities, consisting only of two elements that are commonplace musical building blocks available to all composers and which have been used (both in combination and in isolation) before and after LGO, are insufficient to support SAS's infringement claim.  (Ferrara I Report ¶¶ 5, 16, 65; 84, 160; Ricigliano Report at 20-21, 36-39).  To hold otherwise would bar songwriters from using unprotectable chord progressions and harmonic rhythms that have been used in countless songs preceding LGO.  In fact, if one were to adopt Dr. Covach's "functional equivalence" theory, it would be applicable to each chord in the progression, thereby preventing songwriters from using tens of thousands of chord progressions and rhythms that are "functional equivalents," undermining the express purpose of the Copyright Act.  *See Gaste v. Kaiserman*, 863 F.2d 1061, 1068 (2d Cir. 1988) ("we are mindful of the limited number of notes and chords available to composers and the resulting fact that common themes frequently reappear in various compositions, especially in popular music") (citation omitted); *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218, 1225 (11th Cir. 2008) (cautioning that if common musical building blocks were granted protection, "future authors, composers and

artists will find a diminished store of ideas on which to build their works") (citations & quotations omitted); *see also Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 354 (1991) (extending copyright protection to compilations of unprotectable elements runs the risk of "creat[ing] a monopoly in public domain materials without the necessary justification of protecting and encouraging the creation of writings by authors") (citation & quotation omitted).

Because the elements in SAS's "selection and arrangement" claim are not sufficiently numerous or original, its infringement claim should be dismissed.

### iii.   SAS's "Combination" Claim Also Fails Because TOL Does Not Replicate The Elements In LGO In A Near Identical Manner

The copyright in a "combination" "of otherwise uncopyrightable elements," is "thin" and "a subsequent author remains free to use the public domain elements to aid in preparing a competing work, so long as the competing work does not feature the <u>same</u> selection and arrangement." *Odegard Inc. v. Safavieh Carpets, Inc.*, 398 F. Supp. 2d 275, 279 (S.D.N.Y. 2005) (citations, quotations and brackets omitted; emphasis added); *see also Sweet Gisele, Inc. v. True Rock CEO, LLC*, No. 17-cv-5170 (FB) (RML), 2018 WL 4863650, at *8-9 (E.D.N.Y. Sept. 4, 2018), *report and recommendation adopted*, 2018 WL 4863586 (E.D.N.Y. Sept. 28, 2018); *Rose v. Hewson*, No. 17-cv-1471 (DLC), 2018 WL 626350, at *3 (S.D.N.Y. Jan. 30, 2018).

Thus, infringement in such cases "will be established only by <u>very close</u> copying because the majority of the [plaintiff's] work is unprotectable." *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996) (citation omitted; emphasis added); *see also Zalewski*, 754 F.3d at 103, 107 (finding plaintiff had "thin copyright" and "[o]nly very close copying would have taken whatever actually belonged to Plaintiff") (citation & quotation omitted); *Peters v. West*, 776 F. Supp. 2d 742, 750-51 (N.D. Ill. 2011), *aff'd*, 692 F.3d 629 (7th Cir. 2012) (dismissing claim since, even assuming plaintiff's song qualified for protection due to its "combination of unprotectible

elements," the defendant's song did "not use the contested combination of unprotectible elements … in their entirety in a nearly identical format").

In other words, where a plaintiff "seeks to apply [the selection and arrangement] theory of protection to 'works where there is a narrow range of available creative choices, the defendant's work would necessarily have to be '<u>virtually identical</u>' to the plaintiff's work in order to be substantially similar." *Gray*, 2020 WL 1275221, at *3 (emphasis added; quoting *Skidmore*, 952 F.3d at 1076 n.13).

Here, the two unprotectable elements that are allegedly "similar" are, in fact, different and not expressed in the same or virtually same manner.  As Dr. Covach admits, objective and significant differences exist between both the chord progressions and the harmonic rhythms.  (*See supra* at Section I.D.2. and I.D.4.).  No jury, properly instructed, could find that TOL copies the "combination" of unprotectable elements in LGO in an identical or virtually identical manner.  *E.g.*, *Odegard*, 398 F. Supp. 2d at 279; *Beaudin*, 95 F.3d at 2; *Sweet Gisele*, 2018 WL 4863650, at *8-9; *Gray*, 2020 WL 1275221; *Skidmore*, 952 at 1076 n.13.

## II.   IN THE EVENT THIS ACTION IS NOT DISMISSED, SAS'S CLAIM FOR INDIRECT TOURING PROFITS SHOULD BE DISMISSED

For purposes of discovery, this Court permitted SAS to obtain information regarding Ed Sheeran's touring and merchandising revenues and costs despite Defendants' contention that SAS failed to sufficiently plead or show any causal nexus between the alleged infringement and the sale of a single concert ticket or a single piece of merchandise at such concerts.  Defendants' research has not revealed a single case that has ultimately permitted the recovery of touring or merchandising profits in a music infringement action – precisely because there is no causal nexus.

This Court found that, for discovery purposes, a plausible causal nexus was pleaded in SAS's allegation that "Sheeran experienced a sharp and sudden rise … as a direct result of the

commercial success of the release of 'Thinking Out Loud'" and that "[TOL] was a top-three song as measured by performance income in the world." *Structured Asset Sales, LLC v. Sheeran*, 433 F. Supp. 3d 608, 612 (S.D.N.Y. 2020). But now SAS has to offer admissible proof, not merely plead facts, supporting the alleged causal nexus. And SAS has no admissible evidence showing that Sheeran's touring and merchandising profits have any causal nexus to the alleged infringement.

SAS has provided no evidence whatsoever showing any nexus. Instead, it simply assumes the nexus exists. There is no linkage shown between a single ticket purchase or a single piece of merchandise bought and TOL (much less to the alleged infringement). SAS did not seek discovery bearing upon any such causal nexus (Zakarin Decl. Exhibit 18), and in response to Defendants' document requests for any evidence of any causal nexus, SAS did not produce a single piece of paper. (*Id.* at Exhibit 19, Request Nos. 33, 35, 36, 44, 61, 86; Zakarin Decl. ¶¶ 123-24).[20] Nor has SAS identified a single percipient witness with any knowledge of any such nexus.

Accordingly, should this case not be dismissed, SAS's claim for touring and merchandising profits should be dismissed, as it has no admissible proof to support its claim. *E.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Nick's Garage, Inc. v. Progressive Cas. Ins. Co.*, 875 F.3d 107, 114 (2d Cir. 2017).

## CONCLUSION

It is respectfully submitted that summary judgment should be granted to Defendants.

---

[20] In response to Defendants' requests for production, SAS produced a total of 403 pages of documents, none of which has the slightest connection to the indirect profits SAS seeks. The documents SAS produced fall under the following seven categories: (1) documents from and correspondence with ASCAP, BMI, SoundExchange and The Harry Fox Agency concerning public performance income, interactive streaming income, and mechanical royalties; (2) hearsay articles from print publications and the Internet; (3) probate records for the Estate of Ed Townsend; (4) sheet music; (5) excerpts from a book on Marvin Gaye's "Greatest Hits"; (6) email correspondence between SAS's principal and others regarding this matter and other music infringement cases; and (7) royalty statements for LGO. No documents regarding any nexus between the alleged infringement and touring or merchandising revenues were produced.

Dated:  New York, New York
        April 5, 2021

                                    PRYOR CASHMAN LLP

                                    By: */s/ Donald S. Zakarin*
                                         Donald S. Zakarin
                                         Ilene S. Farkas
                                         Andrew M. Goldsmith
                                    7 Times Square
                                    New York, NY 10036
                                    (212) 421-4100

                                    *Attorneys for Defendants Edward
                                    Christopher Sheeran, Sony/ATV Music
                                    Publishing LLC, Atlantic Recording
                                    Corporation, BDi Music Ltd., Bucks Music
                                    Group Ltd., The Royalty Network, Inc.,
                                    David Platz Music (USA) Inc., Amy Wadge
                                    and Jake Gosling*