UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STRUCTURED ASSET SALES, LLC,

                                    Plaintiff,

             v.

EDWARD CHRISTOPHER SHEERAN,
*p/k/a* ED SHEERAN, SONY/ATV MUSIC
PUBLISHING, LLC, ATLANTIC
RECORDING CORPORATION *d/b/a*
ATLANTIC RECORDS, BDI MUSIC
LTD.,
BUCK MUSIC GROUP LTD., THE
ROYALTY NETWORK, INC., DAVID
PLATZ MUSIC (USA) INC., AMY
WADGE, JAKE GOSLING and DOES 1
THROUGH 10,

                                    Defendants.

Case No. 1:18-cv-5839 (LLS)

**DEFENDANTS' REPLY TO
PLAINTIFF'S "RESPONSE AND
COUNTERSTATEMENT OF
MATERIAL FACTS"**

        Defendants respectfully submit this Reply ("56.1 Reply") to the "Response And

Counterstatement Of Material Facts" submitted by SAS (the "56.1 Response").[1]

        Rule 56.1 is intended to identify and then isolate those issues supposedly in dispute, so that

the Court can determine whether there is a disputed issue of material fact that would warrant denial

of a motion for summary judgment.  When a moving party has shown that there are no disputed

issues of material fact, it is not sufficient for the opposing party to simply state that a fact is

"disputed."  Rather, the opposing party must also provide factual support showing that an alleged

factual dispute actually exists and is material.  Nor is it proper for the opposing party to assert that

there is a factual dispute when it is clear, upon examination of the supposed "dispute," that there

is no dispute and the facts are actually admitted.

---

[1] Undefined capitalized terms have the meanings given to them in Defendants' 56.1 Statement.

1

SAS's 56.1 Response violates both of these principles.  As such, as will be shown below, SAS's 56.1 Response actually admits that there is no disputed issue of material fact and that Defendants are entitled to summary judgment dismissing the Third Amended Complaint in this action.

For ease of reference, this Reply proceeds as follows in three Parts.  In Part I (which begins on Page 3), Defendants provide a summary of SAS's 56.1 Response, grouping SAS's specific numbered Responses into separate and identifiable categories according to the nature of each numbered Response.  In Part II (which begins on Page 4), Defendants provide a Reply to each "Response" that SAS has submitted in opposition to the 56.1 Statement (except for those numbered Responses that specifically admit that the corresponding paragraph of Defendants' 56.1 Statement is "Undisputed).  Defendants have bolded each factual statement included in the 56.1 Statement, italicized each Response included in SAS's 56.1 Response and then, where applicable, included a Reply in standard font preceded by **"DEFENDANTS' REPLY:"**.  Finally, in Part III (which begins on Page 65), Defendants submit their Reply to SAS's Counterstatement of Material Facts.

## PART I:  SUMMARY OF SAS'S 56.1 RESPONSE

SAS's specific Responses to Defendants' 56.1 Statement can be grouped into the following categories.

| Category | Description | Paragraphs |
|---|---|---|
| Category 1 | SAS admits the Statement of Fact is Undisputed. | 1-3, 6-10, 12-15, 17-20, 24, 26, 27, 29-32, 43-45, 54, 55, 59, 62, 66-70, 73, 74, 80, 85, 86, 88, 90-96, 103, 104, 109, 110, 114, 117 and 118 |
| Category 2 | SAS purports to "dispute" the Statement of Fact but provides no facts or other admissible evidence contradicting Defendants' Statement of Fact or fails to identify any alleged facts in dispute or fails to address the specific fact in question. | 4-5, 25, 28, 38-40, 53, 56-58, 60, 61, 63-65, 76-79, 81-84, 87, 89, 97-102, 105-108, 111-113, 120-124 |
| Category 3 | SAS purports to "dispute" the Statement of Fact, but when its Response is examined, it actually admits the Statement of Fact. | 11, 16, 33-37, 41, 42, 46-52, 72, 75. |
| Category 4 | SAS purports to "dispute" the Statement of Fact based on its continuing disagreement regarding the scope of copyright protection, whether the Deposit Copy delimits the scope of LGO's copyright and whether the Deposit Copy includes a bass line.  This is purely a legal issue and it has already been determined adversely to SAS. | 21, 22, 23, 115, 116, 119 |

## PART II:  REPLY TO SAS'S 56.1 RESPONSE

### I.    Procedural Background

1.    Plaintiff Structured Asset Sales, LLC ("SAS") commenced this action on June 28, 2018 by filing a complaint, alleging that the musical composition Thinking Out Loud ("TOL") infringes the registered copyright in the musical composition Let's Get It On ("LGO"). (ECF 1).

*SAS Response: Undisputed.*

2.    SAS twice amended its complaint; the operative pleading is the Third Amended Complaint ("TAC"). (ECF 102; Declaration of Donald S. Zakarin ("Zakarin Decl.") at Exhibit 11).

*SAS Response: Undisputed.*

3.    Defendants filed Answers to the TAC on July 8, 2019 and August 26, 2019. (ECF 109-113, 118).

*SAS Response: Undisputed.*

4.    With a single narrow exception (documents concerning Sheeran income for United States concerts and merchandise sold at such concerts, which was the subject of a pending motion), fact discovery concluded on December 26, 2019. (ECF 103, 146).

*SAS Response: Disputed. On April 7, 2020, Plaintiff wrote to the Court regarding the case schedule, asking for additional time to complete fact and expert discovery in light of, among other things, the impact of the COVID-19 pandemic. ECF 145 ("SAS was and is willing to make some concessions, but does not believe it has waived any of its discovery rights"). SAS repeated its position on April 8, 2020. ECF 147 ("SAS respectfully requests that the Court adjust the current schedule in this case in the manner we proposed in our letter of April 7 (ECF 145), beginning with*

4

June 30, 2020 as the date by which to raise any remaining fact discovery issues, with fact depositions and the expert schedule following from there, once COVID-19 restrictions are lifted").

On April 16, 2020, the Court issued an Order, referencing ECF 145-150, writing that the requests regarding the "deposit copy" issue "are resolved as follows: Defendants' statement on page two of their counsel's April 10, 2020 letter, that 'Defendants are prepared to file a motion for summary judgment based on the deposit copy' is allowed, and they may do so without any further need for a pre-motion conference." ECF 151. The Court declined to address Plaintiff's request to make a "deposit copy" motion.

By Endorsement dated May 4, 2020, the Court clarified that with respect to its April 16 Order (ECF 151), other than allowing Defendants to make a motion "based on the deposit copy," all other matters in "were simply left open, to be dealt with if necessary in light of the clarifying effects of a motion for summary judgment." ECF 155.

On June 25, 2020, after Defendants objected to Plaintiff's service of expert rebuttal reports, the Court wrote: "The scheduling orders nowhere forbade rebuttal reports, and both sides may use them. If that requires a re-scheduling of an expert's deposition, so be it." ECF 174. On September 3, 2020, after the parties made a joint request for additional time to take expert depositions due to the challenges presented by the COVID-19 pandemic, the Court wrote "I would give great weight to the joint conclusion of counsel of whether expert depositions should be taken remotely or in-person in each expert's case, and to the dates which collectively serve them best. When counsel suggest their proposals on these matters and the dates for expert depositions, I expect to approve them unless some unforeseen good cause forbids it." ECF 177.

The September 3, 2020 Endorsement was the last entry on the docket before Defendants' April 5, 2021 Motion for Summary Judgment (ECF 178-81) and Motion In Limine (ECF 182-84).

**DEFENDANTS' REPLY:** SAS's unnecessarily longwinded response effectively admits that, consistent with the Joint Report And Scheduling Order dated May 31, 2019 (ECF 103), and with the exception of discovery relating to touring and merchandising income, fact discovery concluded in this matter on December 26, 2019. The remainder of SAS's "Response" is irrelevant and does not constitute a factual dispute;; but, for the avoidance of doubt, as SAS notes, the Court permitted Defendants "to file a motion for summary judgment based on the deposit copy" (ECF 151), and that is exactly what Defendants have done.

5.     **Further to the Court's Opinion and Order dated January 15, 2020 (ECF 144), Defendants completed their production of Sheeran concert and merchandise income on May 14, 2020. (Zakarin Decl. ¶ 7).**

*SAS Response: Disputed. Defendants purport to have completed their production of Sheeran concert and merchandise income, but SAS lacks sufficient information to know whether Defendants have or have not in fact completed their production or produced all documents required by the Federal Rules of Civil Procedure and the Local Rules of this Court.*

**DEFENDANTS' REPLY:** This is not a disputed issue of fact. At most, SAS is suggesting that it does not know if Defendants "completed" their production of Sheeran concert and merchandise income on May 14, 2020, over a year ago, but offers nothing to dispute the statement of fact.

6.     **On April 22, 2020, SAS submitted an expert musicologist report authored by John Covach, Ph.D. ("Dr. Covach") (the "Covach Report"). (Zakarin Decl. at Exhibit 1).**

*SAS Response: Undisputed.*

7.      On May 22, 2020, Defendants submitted an expert musicologist report authored by Lawrence Ferrara, Ph.D. ("Dr. Ferrara"), including a SAS Response to the Covach Report (the "Ferrara I Report"). (Zakarin Decl. at Exhibit 2).

*SAS Response: Undisputed.*

8.      On May 6, 2020, SAS submitted an expert musicologist report authored by Walter Everett ("Dr. Everett") (the "Original Everett Report"). (Zakarin Decl. at Exhibit 3).

*SAS Response: Undisputed.*

9.      The Original Everett Report lacked information required by Rule 26 for an expert report, and Defendants so advised SAS. (*Id.* at Exhibit 4).

*SAS Response: Undisputed.*

10.      On May 24, 2020, two days after receipt of the Ferrara I Report, SAS, in addition to supplying the required information omitted from the Original Everett Report and without permission or consent from Defendants, submitted a "Revised" expert musicologist report authored by Dr. Everett (the "Revised Everett Report," together with the Original Everett the "Everett Reports"). (*Id.* at Exhibit 5).

*SAS Response: Undisputed.*

FOOTNOTE 1: Unless otherwise noted, references to the "Everett Report" correspond to the Revised Everett Report.

*SAS Response: Undisputed. Plaintiff will follow the same convention herein.*

11.      The Revised Everett Report deleted, among other things, Dr. Everett's prior admission in Paragraph 6 of the Original Everett Report that the I-iii-IV-V chord progression used in LGO was one of "the most common major-key progressions opening with [a I chord]." (*Id.*).

**SAS Response:** *Disputed. The following language was unchanged between the Original and Revised Everett Reports: "In order of decreasing frequency of appearance, based on a study of more than 6,000 tonal songs of the 1950s through the 1970s, the most common major-key progressions opening with I are:" Zakarin Dec. Ex. 3 (ECF 179-3) at 4 ¶ 6, Ex. 5 (ECF 179-5) at 4 ¶ 6, Ex. 6 (ECF 179-6) at 4 ¶ 6.*

*The following edit was made to a later section of the Report:*

*Original: "Among the most common progression classes beginning with I listed above, however, the sixth most commonly heard is I - iii - IV - V. **This is the progression shared between our exhibits by Marvin Gaye – Edward Townsend and Ed Sheeran.**"*

*Revised: "Among the progression classes beginning with I listed above, however, **the progression class shared between our exhibits by Marvin Gaye – Edward Townsend and Ed Sheeran, I - iii - IV - V, is uncommon, with far fewer examples than any of those progressions listed above it.**"*

*Zakarin Dec. Ex. 3 (ECF 179-3) at 4-5 ¶ 7, Ex. 5 (ECF 179-5) at 4-5 ¶ 7, Ex. 6 (ECF 179-6) at 4¬5 ¶ 7. Defendants' suggestion that this edit changed the substance of the Report is false and without foundation.*

**DEFENDANTS' REPLY:** There is no dispute here. Rather, SAS seizes on an inadvertent error in numbering - Defendants mistakenly cited Paragraph 6 of the Original Everett Report when they intended to cite Paragraph 7. SAS thus admits that Paragraph 7 in the Original Everett Report admits that the I-iii-IV-V chord progression is "[a]mong the most common progression classes beginning with" a I chord, and that the I-iii-IV-V chord progression is "the sixth most commonly heard" chord progression in this "class." It is undisputed that these admissions were deleted from the Revised Everett Report. (Zakarin Decl. at Exhibit 6 ¶ 7).

**FOOTNOTE 2: A redline comparing the Original Everett Report against the Revised Everett Report is annexed to the Zakarin Declaration as Exhibit 6.**

**SAS Response:** *Undisputed.*

12.    On June 21, 2020, SAS submitted a "Rebuttal Report" from Dr. Covach, responding to the Ferrara I Report (the "Covach Rebuttal Report"). (*Id.* at Exhibit 7).

*SAS Response: Undisputed.*

13.    On June 23, 2020, Defendants submitted a "Rebuttal Report" from Dr. Ferrara, responding to the Original Everett Report and the Revised Everett Report (the "Ferrara II Report"). (*Id.* at Exhibit 8).

*SAS Response: Undisputed.*

14.    On June 23, 2020, Defendants submitted an expert musicologist report authored by Anthony Ricigliano ("Mr. Ricigliano") responding to the Original Everett Report and the Revised Everett Report (the "Ricigliano Report"). (*Id.* at Exhibit 9).

*SAS Response: Undisputed.*

15.    On July 21, 2020, Defendants submitted a "Rebuttal Report" from Dr. Ferrara, responding to the Covach Rebuttal Report (the "Ferrara Rebuttal Report"). (*Id.* at Exhibit 10).

*SAS Response: Undisputed.*

16.    On April 16, 2020, the Court granted Defendants leave to seek summary judgment without further notice. (ECF 151).

*SAS Response: Disputed. What the Court actually wrote was the following:*

*The points raised in letters from counsels to the Court, dated April 7, 2020 (plaintiff), April 8, 2020 (one defendant's, two plaintiffs), April 10, 2020 (defendant) and April 13, 2020 (plaintiff), which converge on the importance of the "deposit copy" issue in this case, are resolved as follows: Defendants' statement on page two of their counsel's April 10, 2020 letter, that "Defendants are prepared to file a motion for summary judgment based on the deposit copy" is allowed, and they may do so without any further need for a pre-motion conference.*

*ECF 151. In the referenced portion of Defendants' April 10, 2020 letter (ECF 149), their counsel wrote:*

9

> *Fourth, SAS seeks to file a motion for partial summary judgment, seeking, in essence, to reargue Your Honor's in limine ruling from the Griffin case. Defendants are prepared to file a motion for summary judgment based on the deposit copy. SAS has not provided any expert report showing any actionable similarity between LGO and TOL because there is none. As noted in my letter to Your Honor of April 8, 2020, SAS has already had its bite at the deposit copy apple by filing an amicus brief to the en banc panel in Skidmore.*

*Thus, when the Court wrote on April 16, 2020 that Defendants were "allowed...to do so without any further need for a pre-motion conference," Plaintiff understood the Court to be referring to, and expecting, a motion for summary judgment from Defendants (and not from Plaintiff) on the issue of whether the scope of copyright is limited to the deposit copy, not a motion for summary judgment of noninfringement based on the non-binding "deposit copy" decision in Griffin (as discussed in the accompanying Memorandum of Law), as Defendants had already made and lost a motion for summary judgment of noninfringement in Griffin, which decision is binding on Defendants (as discussed in the accompanying Memorandum of Law). ECF 149, 151.*

**DEFENDANTS' REPLY:**  The Court's Order (ECF 151) speaks for itself.  The Court permitted Defendants "to file a motion for summary judgment based on the deposit copy" (ECF 151), and that is exactly what Defendants have done.

**FOOTNOTE 3: While Defendants originally contemplated moving for summary judgment after the completion of expert depositions, because Covid restrictions and medical safety dictated that in-person depositions be deferred until in-person activity was safe and because both SAS and Defendants agreed that deposing musicologists cannot effectively be conducted remotely, the depositions of musicologists have not yet been conducted. Nevertheless, given the passage of time and because Defendants maintain that the admissions contained in the Covach Reports and Everett Report, even without the benefit of depositions, warrant summary judgment, Defendants have determined to move in advance of deposing SAS's musicologists.**

*SAS Response: Disputed. Defendants' motion is premature and contrary to the Court's rulings. ECF 149, 151. It is also improper for Defendants to presume to be able to make a motion for summary judgment and still expect to take Plaintiff's experts depositions. For the avoidance of doubt, Plaintiff has not waived, and does not forego, the right to depose Defendants' experts.*

**DEFENDANTS' REPLY:**  This is neither a disputed issue of material fact nor is it accurate.  The motion is proper in timing and in accordance with the Court's permission.  (*See Supra* ¶ 16).  Should the Court deny summary judgment and should Defendants determine that taking SAS's musicology experts is warranted, they can and will do so.

**II.**   <u>Let's Get It On</u>

17.    **Edward Benjamin Townsend ("Townsend") and Marvin Gaye Jr. ("Gaye") authored LGO in 1973. (TAC ¶ 1).**

*SAS Response: Undisputed.*

18.    **SAS purports to have acquired a one-third share of Townsend's two-thirds songwriter share of LGO (the songwriter share represents a 50% interest in LGO, with the other 50% share being the publisher share owned by Stone Diamond Music Corp. ("Stone Diamond"), an affiliate of Jobete Music Company ("Jobete"), both of which were affiliated with Motown Records), which would provide SAS with an 11 and one-ninth percent beneficial interest in LGO (i.e., an 11.11% interest). (TAC ¶ 16).**

*SAS Response: Undisputed.*

19.    **On or about July 17, 1973, music publishers Stone Diamond and Cherritown Music Co. ("Cherritown Music"), Ed Townsend's own music publishing company, as copyright owners, filed an Application for Registration of a Claim to Copyright with the U.S. Copyright Office for the musical composition LGO (the "Copyright Application"). (Zakarin Decl. at Exhibit 12).**

*SAS Response: Undisputed, except to note that there are two 1973 registrations for LGO. The composition was registered for copyright in 1973 under EU422281 and EP314589, and copyright was automatically renewed in 2000 under RE 0000848835 and RE 0000840063.*

20.    **In support of the Copyright Application, Stone Diamond and Cherritown Music deposited sheet music with the U.S. Copyright Office for LGO (the "Deposit Copy"). (*Id.*).**

*SAS Response: Undisputed, except to clarify that what was submitted was sheet music written in the "lead sheet" notation style (Covach Report ¶¶ 3, 21; Covach Rebuttal Report ¶ 6), and to note that there are two 1973 registrations for LGO. The composition was registered for copyright in 1973 under EU422281 and EP314589, and copyright was automatically renewed in 2000 under RE 0000848835 and RE 0000840063.*

21.    **The Copyright Office ultimately registered LGO for copyright – as memorialized by the Deposit Copy – under Registration No. EP 314589. (*Id.*; Zakarin Decl. at Exhibit 13).**

*SAS Response: Disputed. SAS agrees that the registration issued, but does not agree that the scope of the registration is "memorialized by the Deposit Copy." Defendants' statement is premised on the non-binding in limine decision in the Griffin matter, as discussed in the accompanying Memorandum of Law. Also, there are two 1973 registrations for LGO. The composition was registered for copyright in 1973 under EU422281 and EP314589, and copyright was automatically renewed in 2000 under RE 0000848835 and RE 0000840063.*

**DEFENDANTS' REPLY:**    SAS's "Response" is nonresponsive and does not cite admissible evidence to support any supposed "dispute."  It is undisputed that the Copyright Office registered LGO for copyright under Registration No. EP 314589, and that the material deposited

with the Copyright Office corresponded to the LGO sheet music, *i.e.*, the Deposit Copy.  The Deposit Copy issue has been determined consistently by this Court, the Ninth Circuit and the Copyright Office.  In any event, this is a legally baseless argument, not a disputed issue of material fact.

**22.      The musical elements notated in the Deposit Copy include only the following elements: key, meter, harmony (i.e., the chord progression), rhythm, melody, lyrics and song structure. (*Id.*; Ferrara I Report ¶¶ 23-24).**

*SAS Response:* Disputed. Dr. Covach acknowledges that the 1973 deposit copy "does not notate a separate bass part," but he then goes on to explain that a specific bass line is <u>nevertheless found within the deposit copy</u>, because the deposit copy is written in "lead sheet" notation format:

> This sheet music deposit copy is in "lead sheet" format—a form of notation that is extremely common in the notation of popular music. A lead sheet typically provides the melody notated on the treble clef, with lyrics below and chord symbols above. Example 2c shows the first four measures of the "deposit copy" sheet music for "Let's Get It On." But even though a bass part is not specified here, any performer must play a bass line of some kind in order to realize the content of the lead sheet. After all, there must be a lowest-sounding note in any musical realization. The most direct and basic practice is for the bass line to be formed from the roots of each the chords specified above the melody in the lead sheet.



Example 2c (Gaye-Townsend): lead sheet showing melody, lyrics, and chord symbols

> Since the chords specified are Eb – G minor – Ab – Bb7, the most obvious bass line is simply a succession of the notes Eb – G – Ab – Bb, and this is precisely what musicians would understand the lead sheet to be specifying. <u>Thus, a specific  bass line is indicated by the chord symbols on the lead sheet</u>, even though it is not notated separately.

*Covach Report (ECF 179-1) ¶ 8.*

13

*Dr. Ferrara objects to this approach by arguing that many different bass lines <u>could</u> be played if a musician chose to do so. Dr. Covach acknowledges this obvious point, but explains again how the "lead sheet" notation actually dictates what bass line notes should be played:*

> *If presented with the chord progression I – iii – IV – V and asked to provide the simplest and most obvious bass part, <u>musicians would overwhelmingly posit the one I provide in my report</u>. An actual bass player might not be satisfied with playing the most simple and obvious bass line, so Dr. Ferrara is quite right to point out that many possibilities exist. <u>But as a basic fundamental of music theory, the bass part I posit for LGO is noncontroversial</u>. He argues that other variants are possible, <u>but the one I provide is the most simple and direct one that a musician or musicologist would play from that lead sheet</u>.*

*Covach Rebuttal (ECF 179-7) ¶ 6 (emphasis added).*

*Dr. Covach goes on to respond to Dr. Ferrara's criticism of his argument that the bass line in TOL and LGO is distinctive, and the choice in TOL to replicate the bass line from LGO is noteworthy for the analysis of similarity:*

> *Dr. Ferrara seems to miss the point of the bass part as I present it. It is not so much that the 1 – 3 – 4 – 5 bass part is an exceptional feature of LGO; the point is rather that it is an <u>exceptional feature in TOL</u>. Without considering the bass part at all and thinking only about the harmonic pattern in TOL, the four-chord progression is I – I – IV – V. If one posited the simplest and most obvious bass part for TOL based only on this progression, it would be 1 – 1 – 4 – 5; there is no reason whatsoever to think that the second note in the bass part would change from repeating 1 before moving to 4. But TOL uses the 1 – 3 – 4 – 5 bass part to create the chord progression I – i6 – IV – V. <u>Of the vast possibility of variants Sheeran and Wadge could have used (following precisely the argument Dr. Ferrara employs in his discussion of bass lines), they chose the very one, 1 – 3 – 4 – 5, that duplicates the bass part found in LGO</u>.*

*Covach Rebuttal (ECF 179-7) ¶ 7 (first and third emphases added).*

**DEFENDANTS' REPLY:**  First, SAS does not deny that the Deposit Copy does not notate tempo.  That is therefore undisputed.

As for the bass line, SAS has expressly admitted in its "Response" above (and in the Covach Report) that "a specific bass line … is not notated separately" in the Deposit Copy, and that "a bass part is not specified" in the Deposit Copy.  Claiming that a bass line can be "<u>found</u> within the deposit copy" is simply a euphemism for saying it is "inferred."

14

Dr. Covach admits that there is no bass line notated.  While he infers one that could be derived from the lowest note in each chord, it is still not notated and it is but one of many possible bass lines that could be played with the chord progression (and, in fact, it is not the bass line played even on the LGO Recording).  This is the very argument advanced – and rejected – in *Griffin*. Simply because there are various bass parts that can be played with the chords in the chord progression, one of which uses the lowest notes in each chord, that does not mean that it is the only bass part that could be played or that it is a bass line that is notated in the Deposit Copy.

The Deposit Copy sets only the most generalized parameters – ideas, not expression – for what a bass-line may encompass: it must include notes in the same key and be related to the chord progression, and it must be played in 4/4 meter.  (Ferrara I Report ¶¶ 90, 109; Ferrara Rebuttal Report ¶¶ 18-20).  That is precisely what this Court ruled in *Griffin*.  *See* 351 F. Supp. 3d 492, 500 (S.D.N.Y. 2019) (observing the LGO chords "merely set parameters for what a potential bass-line could encompass").

Copyright law does not protect that which could be derived, extrapolated from, "found" or suggested by what has been deposited with and registered by the Copyright Office.  It protects that which has been expressed in intelligible notation (under the 1909 Act), and that which has been fixed in tangible expression (under the Current Act).  As SAS admits, the bass line inferred by Dr. Covach is not expressed in the Deposit Copy; therefore, it is not within the scope of LGO's copyright.

**23.    The Deposit Copy does not notate, among other things, a bass-line, percussion elements (e.g., drums) or a tempo in which to perform the composition (i.e., the number of beats per minute, which dictates how fast or slow the composition is to be performed). (*Id.*; *see also* Covach Report ¶ 8; Covach Rebuttal Report ¶ 6).**

*SAS Response:* Disputed. Please see Plaintiff's SAS Response to paragraph 22, which is incorporated in full into this SAS Response.

**DEFENDANTS' REPLY:**  Please see Defendants' Reply to SAS's Response to Paragraph 22, *supra*.  Defendants also reiterate that SAS has not even attempted to dispute that LGO does notate a tempo.

## III.    Thinking Out Loud

**24.    On or about February 3, 2014, Sheeran and Wadge co-authored TOL in Suffolk, England. (Sheeran Tr. at 62:12-20, 128:8-129:24;4 Declaration of Amy Wadge dated June 28, 2018 ("Wadge Decl." or "Wadge Declaration") at ¶¶ 3-7).**

*SAS Response:* Undisputed that Sheeran and Wadge so testified.

**25.    Sheeran testified that he did not copy LGO when authoring TOL, and that he and Wadge independently created TOL at his home, with Wadge authoring the chords. (Sheeran Tr. at 62:12-67:10, 78:12-79:18).**

*SAS Response:* Disputed. Sheeran was never asked about copying and the testimony cited contains no denial of copying or claim of independent creation. Here is the actual testimony:

*Q. At the time that Ms. Wadge and you were writing "Thinking Out Loud", was there any discussion about any similarities or possible perceptions to that and*

*"Let's Get It On"?*

*A. No.*

*Q. Okay. Any time after that, before it was released?*

*A. No.*

*Q. Okay.*

*A. It was always called the Van Morrison song, always.*

*Q. Okay.*

*MR. FRANK: Why was it called the Van Morrison song?*

*Q. Yeah, why was it called the Van Morrison song?*

*A. It emulates the sounds, I guess; piano, guitar, drums, song about love.*

*Sheeran Tr. (ECF 179-14), 78:23-79:18.*

**DEFENDANTS' REPLY:** The cited testimony speaks for itself.  Sheeran and Wadge did not copy from LGO in authoring TOL.

**26.    On February 5, 2014, Sheeran recorded what would become the commercially released version of TOL at Sticky Studios in Surrey, England. (***Id.*** at 128:8-129:24; Declaration of Jake Gosling dated July 26, 2018 ("Gosling Decl." or "Gosling Declaration") at ¶ 3, annexed to Zakarin Declaration at Exhibit 16).**

*SAS Response: Undisputed that Gosling so testified.*

**27.    The commercially released recording of TOL includes, among other things, electric-guitar, bass-guitar, piano, organ, lyrics, vocals and percussion/drums. (Ferrara I Report at Audio Exhibit 1, Track 1).**

*SAS Response: Undisputed.*

**28.    Sheeran and Wadge did not author the bass-guitar part or the drum part in TOL. (Sheeran Tr. 128:8-130:23; Gosling Decl. ¶¶ 3-6).**

*SAS Response: Disputed. Sheeran testified that Gosling "added" the drums and bass; there is no testimony as to who composed the drums and bass. Sheeran Tr. (ECF 179-14), 128:8-130:23; Gosling Dec. (ECF 179-16) ¶¶ 3-6.*

**DEFENDANTS' REPLY:** SAS's "dispute" presents neither a disputed issue of material fact nor even a dispute.  It is a semantic irrelevancy.

**FOOTNOTE 4:** Excerpts of the Sheeran Transcript ("Sheeran Tr.") from the action captioned Griffin v. Sheeran, et al., Case No. 17-cv-5221 (the "Griffin Action") are annexed as Exhibit 14 to the Zakarin Declaration. The parties have agreed to the use in this action of materials exchanged during discovery in the Griffin Action. (Zakarin Decl. ¶ 26).

*SAS Response:* Undisputed.

**FOOTNOTE 5:** A copy of the Wadge Declaration, submitted in the Griffin Action, is annexed as Exhibit 15 to the Zakarin Declaration. While there is no evidence that contradicts the testimony of Mr. Sheeran and of Ms. Wadge, Defendants' motion is not dependent on their testimony. Rather, this motion is based on the admissions of SAS's own musicologists, which confirm that there is no viable claim of infringement in this case.

*SAS Response:* Undisputed as to the first sentence. Disputed that there is no evidence that contradicts the testimony of Mr. Sheeran and Ms. Wadge, and disputed that Defendants have grounds for summary judgment under any circumstances. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim. Please see Plaintiff's SAS Responses to paragraphs 25 and 28, which are incorporated in full into this SAS Response.

**DEFENDANTS' REPLY:** SAS's statement of a "dispute" exists in thin air. It cites no contra evidence and its Response is therefore effectively an admission that there is no dispute.

## IV.    Musical Comparison Of LGO And TOL

### Key & Meter

29.    The Deposit Copy is written in the key of E-flat major and in 4/4 meter. (Ricigliano Report at 12; Covach Report ¶¶ 7-8).

*SAS Response:* Undisputed.

30.    TOL is written in the key of D major and in 4/4 meter. (Ricigliano Report at 12; Covach Report ¶ 7).

*SAS Response: Undisputed.*

31.    Due to its ubiquity in popular music, 4/4 meter is also known as "common time." (Ferrara I Report ¶ 68).

*SAS Response: Undisputed that 4/4 meter is known is "common time" or "quadruple time." Disputed that the naming has anything to do with "popular music."*

**DEFENDANTS' REPLY:**  This is again a "dispute" with no evidence to support it and hence is admitted.

### *Chord Progressions*

32.    The LGO Deposit Copy features a I-iii-IV-V7 (or a 1-3-4-5) chord progression. (Ferrara I Report ¶ 32; Covach Report ¶ 6; Original Everett Report at 5).

**SAS Response:** Undisputed.

**FOOTNOTE 6:  A "7" denotes the addition of a pitch that is the interval of a minor seventh above the root or name of the chord. (Ferrara I Report ¶ 32 n.14).**

*SAS Response:*  [*SAS did not respond to Footnote 6.  Hence it is undisputed*].

33.    None of the chord progressions in TOL are the same as the I-iii-IV-V7 (or simplified I-iii-IV-V) chord progression used in LGO. (Ferrara I Report ¶ 39; Covach Report ¶ 6).

*SAS Response: Disputed. Dr. Covach explains as follows in his opening report:*

*Using this system, the chord progression employed in the backing pattern of Gaye and Townsend's song may be written as I – iii – IV – V (see example 1a). This is a very common progression, used in many songs, and by itself—as an isolated entity—does not constitute an element that one could copyright in most cases. The Sheeran and Wadge work employs a slight adjustment to this chord pattern: the I, IV, and V chords are maintained from the Gaye and Townsend work, but the iii is replaced with a common substitute. As any freshman harmony textbook will attest, the I chord with the third scale degree in the bass may stand in (or substitute) for the iii chord without affecting the function of the progression (the bass lines in each recording are discussed in more detail immediately below). The Sheeran and Wadge work uses this chord, commonly labeled "I6," as a slight*

19

*modification the Gaye and Townsend original (see example 1b), producing a <u>mild variant that is harmonically equivalent: I – I6 – IV – V</u>.*



*Examples 1a (Gaye-Townsend) and 1b (Sheeran-Wadge): chord progressions compared*

*Covach Report (ECF 179-1) ¶ 6 (emphasis added) (citing and quoting from an undergraduate music textbook for the proposition that "iii may substitute for I6 to create a tonic extension").*

*Dr. Everett, similarly, explained the equivalence between the iii and I6 chords, and thus the equivalence between the two primary chord patterns:*

> *For our purposes, we must recognize the essential functional identities of the I6 chord and the iii chord as being indistinguishable. Both triads appear over ^3 in the bass; both also include both ^3 and ^5 in common among upper voices. The only difference in their identity is the inclusion of ^1 (= ^8) in the I6 chord, as opposed to ^7 in the iii chord. Particularly among texturally less significant inner voices, these two pitches just a half step apart (^8 and ^7) sound interchangeable, registering only differences of color between them. (^8 and ^1 are exactly the same scale degree, given that the scale replicates in octaves. We will refer to ^1 as ^8 when recognized in connection to its neighbor, ^7) Often, any difference between the two chords I6 and iii is unrecognizable, especially if ^3 is present in both outer voices, the lead vocal as well as the bass.*
>
> *....*
>
> *Another perspective will add weight to what might be for some an anti-intuitive argument, that the minor iii chord could be equivalent to a major I6 triad. This relates to the interchangeability of the two triads, based largely on the fact that scale degrees ^3 and ^5 are common to both. [Providing example]. Thus, iii is here equivalent to the I which it replaces (because of ^5 and ^3, common between them, emphasized in the vocal, and because the tiny difference between ^8 and ^7 is buried in an inner voice), but iii is even closer to I6 than to I.*

*Everett Report (ECF 179-5) ¶¶ A.4-5. Dr. Everett goes further to explain why – in his view – the progression one hears in TOL is the same as the LGO sheet music:*

> *it is clear from the Gaye - Townsend written notation that the "iii" chord, Gm, can be performed interchangeably with the "I6" chord, Eb/G, as long as ^3 is played in the bass. Therefore, Sheeran's band (which performs I6 chords more often than iii chords) <u>performs identical chord progressions to those notated</u> in the Gaye - Townsend deposit copy.*

*Everett Report (ECF 179-5) ¶ B.7 (emphasis added).*

       *Dr. Ferrara, Defendants' musicology expert, takes issue with Drs. Covach's and Everett's views on the equivalence of the chord progressions in TOL and LGO, but Dr. Covach responds to those criticisms, driving home the point that we are dealing with experts with materially differing opinions that cannot be resolved on a motion for summary judgment. Dr. Covach builds upon the single undergraduate music textbook he cites in his opening report, arguing based on multiple sources that there is a "consensus among experts" on the subject that Dr. Ferrara choses to ignore:*

> *The textbook in use in Dr. Ferrara's own department at New York University is The Musician's Guide to Theory and Analysis by Jane Piper Clendinning (Florida State University) and Elizabeth West Marvin (Eastman School of Music). Clendinning and Marvin write: "The progression I – iii may in fact be considered a variation of I – I6."2 Similar passages may be found in widely used textbooks by Miguel A. Roig-Francoli (Cincinnati College-Conservatory of Music) and L. Poundie Burstein (CUNY) and Joseph N. Straus (CUNY).3 Yet in spite of this general consensus among experts writing on the functional equivalence of I6 and iii in this harmonic context, Dr. Ferrara writes that "not one of the chord progressions in TOL is the same as the I – iii – IV – V7 (or even I – iii – IV – V) chord progression in LGO" (¶40, p. 15-16). <u>Dr. Ferrara is out of step with his colleagues owing to the narrowness of his interpretation; he seems to argue that because one thing is a slight variation of another, these two things are completely different.</u> They are, according to consensus among experts, strikingly similar.*

*Covach Rebuttal (ECF 179-7) ¶ 4 (emphasis added).*[2]

       **DEFENDANTS' REPLY:**  Paragraph 39 of the Ferrara I Report identifies the various chord progressions used in TOL, none of which is a I-iii-IV-V progression.  SAS's extraction of lengthy sections from Dr. Covach's Report neither addresses nor contradicts Dr. Ferrara's findings, which are objectively corroborated by the published sheet music for TOL.  (Ferrara I Report at Visual Exhibit C).  Hence, for all of its length, there is no disputed issue of material fact presented.  It is an objective unrefuted fact that none of the chord progressions in TOL are the same as the I-iii-IV-V7 (or simplified I-iii-IV-V) chord progression used in LGO and the portions of SAS's

---

[2] Dr. Covach obviously does not mean to use the term "strikingly similar" to express a legal position.

experts' reports that it quotes, admit that the chord progressions used in LGO are "variant," *i.e.*, different from LGO.  SAS has also admitted that the LGO chord progression is "very common," "commonplace" and an "unprotectable" element.  (*Infra* ¶¶ 36, 114).

**34.    TOL features multiple, different chord progressions, including:**

       **I5-I6-IV5-Vsus2**

       **I5-I6-IV5-V5**

       **I-I6-IV-Vsus2**

       **I-I6-IV-V**

       **I-I6-IV-V11**

       **I-I6-IV-Vsus4**

       **vi-V-IV-I6-ii7-V-I**

**(*Id.* ¶¶ 39, 47).**

    ***SAS Response:*** *Disputed. The "Id." cite is incorrect. Defendants presumably mean to reference ¶¶ 39 and 47 of the Ferrara Report, not the Covach Report (ECF 179-1). Please see Plaintiff's SAS Response to paragraph 33, which is incorporated in full into this SAS Response.*

    **DEFENDANTS' REPLY:**  While SAS uses the word "disputed," there is no dispute noted as SAS's "Response" to Paragraph 33 does not address the specific findings of Dr. Ferrara cited in Paragraph 34. As such, the Statement in this Paragraph is admitted.

    **FOOTNOTE 7: A "I6" chord also can be written as a "I/3" chord. (Ferrara II Report ¶ 9 n.3).**

    ***SAS Response:*** *Undisputed.*

**35.    A "I6" chord, a major chord, is different from a "iii" chord, a minor chord. (Ferrara II Report ¶¶ 9-15; Ferrara Rebuttal Report ¶¶ 2-5, 7).**

*SAS Response:* Undisputed that the two chords do not have identical notes, but disputed that these differences have relevance to the musicological analysis at issue here. Please see Plaintiff's SAS Response to paragraph 33, which is incorporated in full into this SAS Response.

**DEFENDANTS' REPLY:**  This fact remains undisputed and SAS's "Response" to Paragraph 33 admits that the chords are different.  "Functionally equivalent" chords by definition are different from one another and the "functionally equivalent" chords referenced by Dr. Covach do not appear in the Deposit Copy.

36.    **SAS has admitted that the I-iii-IV-V progression "is a very common progression, used in many songs, and by itself – as an isolated entity – does not constitute an element that one could copyright in most cases." (Covach Report ¶ 6; emphasis added; *see also* Original Everett Report at 4-5).**

*SAS Response:* Undisputed that the incomplete quote above is from Dr. Covach's report, but disputed that Dr. Covach's views as to what one could or could not <u>copyright</u> has relevance to the musicological analysis at issue here. Indeed, Defendants have criticized SAS's experts from even using language that could be construed as relating to copyright law.

**DEFENDANTS' REPLY**:  This Response admits that the chord progression is very common, and it is therefore not a disputed issue of material fact.  All else in SAS's Response is irrelevant.

37.    **In addition to the admission of Dr. Covach in the Covach Report, Defendants have identified at least 52 songs that utilize a I-iii-IV-V or I-I6-IV-V chord progression. (Ferrara I Report at Visual Exhibit H; Ricigliano Report at 8).**

*SAS Response:* Undisputed that Dr. Ferrara purports to identify 52 such songs, but disputed that what Dr. Ferrara said is tied to what Dr. Covach said, and disputed that Dr. Covach

made an "admission." Please see Plaintiff's SAS Response to paragraph 36, which is incorporated in full into this SAS Response.

**DEFENDANTS' REPLY:**  This Response admits that the chord progression is very common and admits that Defendants identified at least 52 prior songs using the progression.  It is therefore not a disputed issue of material fact.  All else in SAS's Response is irrelevant.

38.    **A guitar method book, titled Guitar for Advanced Beginners, states that "dozens of other I-iii-IV-V songs" predated LGO and that the authors of LGO were "simply writing a song using a common progression, just like every other professional songwriter does." (Ferrara I Report at Visual Exhibit E).**

*SAS Response: Disputed as the document is inadmissible hearsay. In addition, Plaintiff notes that the book was published more than twenty-five years after Let's Get It On was written. Ferrara I Report at Visual Exhibit E.*

**DEFENDANTS' REPLY:**  SAS is legally wrong as to experts (Rule 703 of the Federal Rules of Evidence permits experts to testify based on otherwise inadmissible evidence), and while the Response says "disputed," it offers no facts to support any dispute.  The twenty-five year statement is entirely irrelevant to any issue.  This Statement is therefore undisputed.

39.    **A guitar method book, titled Money Chords, identifies the I-iii-IV-V progression as "a popular chord progression" and one of the "most frequent chord progressions." (Ferrara I Report at Visual Exhibit D).**

*SAS Response: Disputed as the document is inadmissible hearsay. In addition, Plaintiff notes that the book was published more than twenty-five years after Let's Get It On was written. Ferrara I Report at Visual Exhibit D.*

**DEFENDANTS' REPLY:** SAS is legally wrong as to experts (Rule 703 of the Federal Rules of Evidence permits experts to testify based on otherwise inadmissible evidence), and while the Response says "disputed," it offers no facts to support any dispute. The twenty-five year statement is entirely irrelevant to any issue. This Statement is therefore undisputed.

40. **A piano method book, titled How To Play Rock 'N' Roll Piano, copyrighted in 1967, six years prior to the creation of LGO, identifies the I-iii-IV-V chord progression as one of ten "popular rock 'n' roll progressions." (Zakarin Decl. at Exhibit 17).**

*SAS Response: Disputed as the document is inadmissible hearsay.*

**DEFENDANTS' REPLY:** SAS is legally wrong as to experts (Rule 703 of the Federal Rules of Evidence permits experts to testify based on otherwise inadmissible evidence), and while the Response says "disputed," it offers no facts to support any dispute. This Statement is therefore undisputed.

### *Harmonic Rhythms*

41. **SAS alleges that TOL "uses the identical harmonic rhythm as found in" LGO because both songs anticipate (or syncopate) chord changes on the second and fourth chords of the four-chord progressions that SAS places in issue. (TAC ¶ 43; Covach Report ¶¶ 10-11; Everett Report at 14-15).**

*SAS Response: Disputed. Dr. Covach explains that while the two songs are notated using two different time signatures ("fast" and "slow"), their harmonic rhythms are the same:*

> *Gaye and Townsend's "Let's Get It On" sets the I – iii- IV – V chord-bass progression to a distinctive rhythm as shown in example 3a. This rhythm extends over two measures (or bars) according to a "slow" 4/4 time signature (see below), dividing the duration of the first two chord-bass pairings unevenly, as represented by the dotted quarter and eight note tied to a half note. The third and fourth chord-bass pairings divide the second measure in a parallel manner to the first measure. The musical notation of rhythm allows for alternate ways of notating the same rhythm. A second possible notation for this rhythm is notated*

25

*below as "fast" 4/4. Note that the eighth notes in the "slow" 4/4 are notated as quarter notes in the "fast" 4/4 version.*

*....*



Example 3a (Gaye-Townsend): harmonic rhythm, chord-bass pairing, notated in "slow" 4/4



Example 3b (Sheeran-Wadge): harmonic rhythm, chord-bass pairing

> *Sheeran's "Thinking Out Loud" uses the identical harmonic rhythm as found in Gaye's "Let's Get It On," and this is shown in example 3b. Played in an A-B comparison, 3a and 3b make the strong similarity between the two songs abundantly clear. It does not require an understanding of standard rhythmic notation to see it in the sheet music and hear it in the music played from it that this rhythm is identical between the two songs.*

*Covach Report (ECF 179-1) ¶¶ 10-11.*

Dr. Everett refers to the same phenomenon as "syncopation," explaining that it is an uncommon feature shared by LGO and TOL:

> *In songs that include the I - iii - IV - V progression class, chords typically change every four beats (a full bar), providing a "harmonic accent" on strong downbeats (the first beat of every bar). Syncopated chord changes, occurring on weak beats, are much less common, but these are heard in both Gaye - Townsend and Sheeran exhibits.*

*Everett Report (ECF 179-5) ¶ D.1.*

*Dr. Ferrara takes issues with these conclusions as well, but Dr. Covach explains that Dr. Ferrara is disingenuously elevating form over substance, as the particular notation employed in the sheet music for the two songs has no bearing on whether the harmonic rhythms of the two compositions are similar:*

> *Dr. Ferrara argues that this difference in notational practice makes the resulting rhythmic pattern "not the same." And again, in a very literal (though not particularly musical) sense, this is true. But these rhythms are identical in sound. This variation in ways one may notate the same rhythmic figure is another type of basic principle we teach musicians routinely. It is as if one would argue that this rebuttal would mean something different if I used 24 pt. font rather than 12 pt. My words would retain all of their meaning, even if the page were twice as big.*

*Covach Rebuttal (ECF 179-7) ¶ 5.*

**DEFENDANTS' REPLY:**  SAS's "Response" does not directly address the Statement in Paragraph 41, which remains undisputed (since it derives directly from the TAC, the Covach Report and the Everett Report).

SAS's assertion that the two songs are notated using different time signatures ("fast" and "slow") is also patently false.  The LGO Deposit Copy is notated in 4/4 time, but it does <u>not</u> indicate whether it is "fast" or "slow" 4/4 time (and, in any event, "fast" or "slow" 4/4 time refers to tempo, and it is undisputed the Deposit Copy does not notate a tempo).  (Zakarin Decl. Exhibit 13; 56.1 Response ¶ 23).  As noted, the harmonic rhythm in the Deposit Copy is objectively different from TOL, a fact that SAS has not disputed.  (Ferrara Rebuttal Report ¶ 13).

Thus, despite the prolixity of SAS's cutting and pasting passages from its expert reports into its 56.1 Response, there is no disputed issue of material fact identified.

Moreover, as Dr. Ferrara illustrates in the Ferrara I Report, the transcription in Example 3a from the Covach Report is objectively erroneous because it ignores the many objective differences Dr. Ferrara identified between the harmonic rhythms (as reproduced at Paragraphs 46-50 below), and it otherwise speculates on the placement of the pitches in a chord.  (Ferrara I Report ¶

105).  Example 3b from the Covach Report also represents an inaccurate transcription of TOL.  (*Id.*).  Dr. Covach does not address in his Rebuttal Report the fact that his transcriptions in Example 3a and 3b are erroneous.

42.    **SAS admits that "the harmonic rhythm common between these two songs occurs in other songs as well" and "can be thought of in terms of stylistic commonplaces." (Covach Report ¶ 18).**

*SAS Response: Disputed as it misstates what Dr. Covach wrote. Dr. Covach wrote "In the case of the present comparison between 'Let's Get It On' and 'Thinking Out Loud,' it is clear that certain aspects of the backing pattern described above can be thought of in terms of stylistic commonplaces." Covach Report (ECF 179-1) ¶ 18.*

**DEFENDANTS' REPLY:**  This again is an example of SAS using the word "disputed," where there is no dispute.  SAS identifies no facts in dispute.  Defendants correctly quoted Paragraph 18 of the Covach Report.

43.    **The rhythmic anticipation of chord changes is an unprotectable musical technique. (Ferrara I Report ¶¶ 16, 61; Ricigliano Report at 9).**

*SAS Response: Undisputed that the technique, standing alone, is unprotectible. The use of anticipation in LGO and TOL, however, is similar and distinctive. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim.*

**DEFENDANTS' REPLY:**  SAS has admitted this Statement is undisputed.  Its further assertion of alleged distinctiveness (an improper and inadmissible expert opinion for the reasons articulated in the accompanying *Daubert* motion) is both false and irrelevant.

44.    **The rhythmic anticipation of chord changes is commonplace in popular music. (*Id.*; Covach Rebuttal Report ¶ 5).**

*SAS Response:* *Undisputed that the technique, standing alone, is unprotectible. The use of anticipation in LGO and TOL, however, is similar and distinctive. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim.*

**DEFENDANTS' REPLY:** SAS admits the cited fact is undisputed.  Defendants otherwise refer the Court to their Reply to Paragraph 43.

45.    **Dr. Covach describes anticipation as "[a] type of syncopation that is common in popular music of the 20th century," and admits that "American popular music of the last 100 years employs a high degree of rhythmic syncopation." (Covach Rebuttal ¶ 5; *see also* Covach Report ¶ 18 (anticipation "occurs in other songs as well").**

*SAS Response:* *Undisputed that the incomplete quotes above are from Dr. Covach's report. Undisputed that the technique, standing alone, is unprotectible. The use of anticipation in LGO and TOL, however, is similar and distinctive. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim.*

**DEFENDANTS' REPLY:** SAS admits the cited fact is undisputed.  Defendants otherwise refer the Court to their Reply to Paragraph 43.

46.    **The technique of syncopation employed in LGO and TOL is different: LGO features a four-bar chord progression with two chords in bar 1, the continuation of the second chord in bar 1 into bar 2, two chords in bar 3, and the continuation of the second chord in bar 3 into bar 4; in contrast, TOL features a two-bar chord progression (not a four-bar chord progression), with two chords in bar 1 and two chords in bar 2. (Ferrara I Report ¶ 49).**

*SAS Response:* *Disputed. Please see Plaintiff's SAS Response to paragraph 41, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** The cited fact remains undisputed and SAS's "Response" to Paragraph 41 nowhere addresses the undisputed facts admitted in Paragraph 46.

47.    **Whereas the second chord in LGO is on beat 4 and anticipates beat 1 of measure 2, the second chord in TOL is on the second half of beat 2 and anticipates beat 3 of measure 1. (*Id.* ¶ 50).**

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 41, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** The cited fact remains undisputed, and SAS's "Response" to Paragraph 41 nowhere addresses the undisputed facts admitted in Paragraph 46-47.

48.    **Whereas the fourth chord in LGO is on beat 4 and anticipates beat 1 of measure 4, the fourth chord in TOL is on the second half of beat 2 and anticipates beat 3 of measure 2. (*Id.* ¶ 51).**

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 41, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** The cited fact remains undisputed, and SAS's "Response" to Paragraph 41 nowhere addresses the undisputed facts admitted in Paragraph 46-48.

49.    **Anticipation in LGO occurs before beat 1; anticipation in TOL occurs before beat 3. (*Id.* ¶ 52).**

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 41, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** The cited fact remains undisputed, and SAS's "Response" to Paragraph 41 nowhere addresses the undisputed facts admitted in Paragraph 46-49.

50.    In LGO each anticipated chord has a duration of one quarter note, while each anticipated chord in TOL has the duration of an eighth note. (*Id.* ¶ 53).

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 41, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** The cited fact remains undisputed, and SAS's "Response" to Paragraph 41 nowhere addresses the undisputed facts admitted in Paragraph 46-50.

51.    To find equivalence between the harmonic rhythms in each work, one must disregard the objective differences recited above in Paragraphs 46 through 50 and also cut in half the value of the notes and chords in LGO. (*Id.* ¶ 55).

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 41, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** The cited fact remains undisputed, and SAS's "Response" to Paragraph 41 nowhere addresses the undisputed facts admitted in Paragraph 46-51.

52.    Because Dr. Covach failed to perform any prior art search and Dr. Everett's prior art search terminated in 1979, years prior to the time period when both Sheeran and Wadge were individually and together creating musical works, they failed to address the fact that Sheeran used the anticipation technique in at least twenty songs that he wrote or co-wrote prior to TOL; in ten of those twenty songs, anticipation occurs on the second and fourth chords of the chord progression, as in TOL. (Ferrara I Report ¶ 61; Everett Report at 4).

*SAS Response: Disputed. Sheeran's and/or Wadge's use of one or more elements found in TOL prior to creating TOL has no bearing on whether TOL infringes LGO. Neither Ferrara nor Ricigliano claim (and neither Covach nor Everett concede) that any prior Sheeran or Wadge*

*composition includes what Dr. Covach refers to as the "backing pattern." Ferrara I Report,*

*passim; Ferrara II Report, passim; Ferrara Rebuttal Report, passim; Ricigliano Report, passim.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides

not a single fact to show any dispute.  As such, the Statement remains undisputed.

53.    **Prior to co-authoring TOL, Wadge authored a composition that includes a I-**

**I6-IV-V chord progression that anticipates chord changes on the second, third, and fourth**

**chords. (Ferrara I Report ¶ 63; Ricigliano Report at 19).**

*SAS Response: Disputed. Sheeran's and/or Wadge's use of one or more elements found in*

*TOL prior to creating TOL has no bearing on whether TOL infringes LGO. Neither Ferrara nor*

*Ricigliano claim (and neither Covach nor Everett concede) that any prior Sheeran or Wadge*

*composition includes what Dr. Covach refers to as the "backing pattern." Ferrara I Report,*

*passim; Ferrara II Report, passim; Ferrara Rebuttal Report, passim; Ricigliano Report, passim.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides

not a single fact to show any dispute.  As such, the Statement remains undisputed.

### *Melodic Elements Placed In Issue By Dr. Covach*

54.    **At Paragraph 15 of his Report, Dr. Covach notates the vocal melodies that he**

**places in issue as follows:**

| LGO | 1 | 1 | 1 | *6 | 5 | b3 | 2* | 6 | 5 | *3 | 5 | 6 | 5 | 3* | 3 | 5 | 6 | | |
|-----|---|---|---|----|---|----|----|---|---|----|---|---|---|----|---|---|---|---|---|
| TOL | 3 | 5 | *6 | 3 | 2* | 1 | 2 | 3 | 5 | 1 | *3 | 5 | 6 | 5 | 3* | 3 | 2 | 1 | 1 |

(Covach Report ¶ 15).

*SAS Response: Undisputed.*

55.    **Track 2 of Audio Exhibit 1 to the Ferrara I Report includes performances of**

**the above different melodies.**

*SAS Response:* *Undisputed that Track 2 of Audio Exhibit 1 purports to include such performances.*

56.    **Dr. Covach's analysis of the vocal melodies omits any analysis of the rhythmic durations and metric placements of the melodies. (Ferrara I Report ¶¶ 131-32).**

*SAS Response:* *Disputed that Dr. Covach "omitted" anything relevant to the musicological analysis.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.

57.    **Differences also exist between the rhythmic durations and metric placements of the melodies in each work. (*Id.* ¶¶ 142-49).**

*SAS Response:* *Disputed that the "differences" are relevant to the musicological analysis.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.

58.    **The alleged similarity that exists in the pitch sequence of the second segment of the above melodic phrase that Dr. Covach places in issue lines up with greater similarity to the opening pitches of the well-known Stephen Foster song, "Camptown Races," than it does with TOL. (*Id.* ¶ 141).**

*SAS Response:* *Disputed, as the concept of "greater similarity" is either a subjective musicological determination or a subjective legal determination, neither of which is subject to resolution under Fed. R. Civ. P. 56.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.

**FOOTNOTE 8: The TOL melody is set to the words "When your legs don't work like they used to before, and I can't sweep you off of your feet," and the LGO melody is set to the words "Let's get it on, sugar, let's get it on, ooh."**

*SAS Response:* *Undisputed.*

**FOOTNOTE 9 The cited Audio Exhibit may be accessed at the following URL:** [https://pryorcashman.sharefile.com/d-s50fa4146d1ca44b99a08580006581461](https://pryorcashman.sharefile.com/d-s50fa4146d1ca44b99a08580006581461).

*SAS Response:* *Undisputed.*

**FOOTNOTE 10: For reference, "Camptown Races" includes the well-known vocal refrain "Oh, doo-dah day!"**

*SAS Response:* *Undisputed.*

### *Melodic Elements Placed In Issue By Dr. Everett*

### A.    Dr. Everett's Third Summary Bullet

**59.    Dr. Everett compares TOL's opening to the opening two phrases of LGO, through his analysis of what he refers to as the "Upper Voice" melodies. (Everett Report at 6-10).**

*SAS Response:* *Undisputed.*

**60.    The Everett Reports omit any transcription in musical notation of the "Upper Voice" melodies. (Ricigliano Report at 22).**

*SAS Response:* *Disputed that Dr. Everett "omitted" anything relevant to the musicological analysis.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed.

**61.    The actual pitch sequences of "Upper Voice" Melody Phrase 1 are:**

| LGO | 3 | 4 | 5 | 4 | b3 | 2 | b3 | 2 | b3 | 2 | 2 | 2 | 1 | 2 |
| TOL | 3 | 5 | 6 | 5 | 3 | 2 | 1 | 2 | 3 | 6 | 1 | | | |

(Ferrara II Report ¶ 30).

**SAS Response:** *Disputed. Everett Report (ECF 179-5) at 6-10.*

**DEFENDANTS' REPLY:** Simply repeating a demonstrably false statement does not create a disputed issue of material fact. Dr. Ferrara's transcriptions are objectively corroborated by the Deposit Copy and the published sheet music for LGO. (Zakarin Decl. Ex. 13; Ferrara I Report at Visual Exhibit C). Moreover, SAS overlooks it has jettisoned Dr. Everett's opinion regarding the first four notes of LGO and TOL (*infra* ¶ 64) and adopted the opinion of Dr. Covach (which is consistent with Dr. Ferrara's opinion), confirming that it is undisputed.

**62.    Dr. Everett claims that "Upper Voice" Melody Phrase 1 begins with scale-degrees 3-4-5 in each work. (Everett Report at 6-7).**

**SAS Response:** *Undisputed.*

**63.    As shown above, only because Dr. Everett fails to transcribe TOL can he make this demonstrably false assertion; in fact, it is indisputable that TOL begins with scale-degrees 3-5-6. (Ferrara Report II ¶¶ 30-31, 39-40; *see also* Track 3 Audio Exhibit 1 to the Ferrara II Report).**

**SAS Response:** *Disputed. Everett Report (ECF 179-5) ¶ B.1-3.*

**DEFENDANTS' REPLY:** Simply repeating a demonstrably false statement does not create a disputed issue of material fact. Dr. Ferrara's transcriptions are objectively corroborated by the Deposit Copy and the published sheet music for LGO. Defendants otherwise refer the Court to their Reply to Paragraph 61.

64.    In fact, even Dr. Covach's Report refutes Dr. Everett's conclusion regarding the opening scale-degrees of "Upper Voice" Melody Phrase 1. (Covach Report ¶ 15).

*SAS Response: Disputed that Dr. Covach "refutes" Dr. Everett. Both experts are transcribing from audio recordings and there is no "official" transcription of TOL. To the extent Dr. Covach and Dr. Everett disagree on this minor point, SAS adopts the position of Dr. Covach. Everett Report (ECF 179-5) ¶ B.1-3; Covach Report (ECF 179-1) ¶ 15.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  It is undisputed that Dr. Covach disagrees with Dr. Everett on this point.  Critically, SAS's Response underscores that its experts were not comparing the Deposit Copy with TOL, as it admits they were "transcribing from audio recordings."  The LGO Recording is not at issue in this case, and SAS's experts should have been relying on the LGO Deposit Copy.

65.    The pitch sequences of "Upper Voice" Melody Phrase 2 are:

| LGO | b3 | b3 | 2 | b3 | 2 | 2 | 2 | 2 | 1 | 6 | b3 | 2 | 1 | 6 |
|-----|----|----|---|----|---|---|---|---|---|---|----|---|---|---|
| TOL | 3  | 5  | 6 | 5  | 3 | 3 | 2 | 1 | 1 |   |    |   |   |   |

(Ferrara II Report ¶ 40).

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 64, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  Dr. Ferrara's transcription is consistent with the Deposit Copy and the published sheet music for TOL.  SAS's purported "dispute" lacks any factual basis given that Dr. Everett failed to transcript TOL into musical notation.

**FOOTNOTE 11: For ease of reference, Dr. Ferrara refers to these melodies in the Ferrara II Report as "Upper Voice" Melody Phrase 1 and "Upper Voice" Melody Phrase 2, which is the terminology Defendants use herein and in the accompanying papers. (Ferrara II Report ¶¶ 30-49).**

*SAS Response: Undisputed.*

**66.    For both "Upper Voice" Melody Phrase 1 and "Upper Voice" Melody Phrase 2, the range of the lowest to the highest pitches is different. (Ferrara II Report ¶¶ 31-34, 42-43).**

*SAS Response: Undisputed, but disputed that these differences have relevance to the musicological analysis at issue here.*

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed. All else is irrelevant.

**67.    For both "Upper Voice" Melody Phrase 1 and "Upper Voice" Melody Phrase 2, the specific highest and lowest pitches are different. (*Id.*).**

*SAS Response: Undisputed, but disputed that these differences have relevance to the musicological analysis at issue here.*

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed. All else is irrelevant.

**68.    For both "Upper Voice" Melody Phrase 1 and "Upper Voice" Melody Phrase 2, the melodic motions are different. (*Id.*).**

*SAS Response: Undisputed, but disputed that these differences have relevance to the musicological analysis at issue here. Also disputed as to the implications of the term "melodic motion," which means nothing more than two notes in sequence.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed.  All else is irrelevant.

69.    **For both "Upper Voice Melody" Phrase 1 and "Upper Voice" Melody Phrase 2, the metric placements on or within beats and the rhythmic durations of the pitches are different. (*Id.* ¶¶ 28, 37, 45).**

*SAS Response: Undisputed, but disputed that these differences have relevance to the musicological analysis at issue here.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed.  All else is irrelevant..

70.    **The Everett Reports omit any analysis of the metric placements on or within beats and the rhythmic durations of the pitches for both "Upper Voice" Melody Phrase 1 and "Upper Voice" Melody Phrase 2. (*Id.*).**

*SAS Response: Undisputed, but disputed that these differences have relevance to the musicological analysis at issue here.*

**DEFENDANTS' REPLY:**  SAS has admitted that the statement is undisputed.  All else is irrelevant.

71.    **The objective differences between "Upper Voice" Melody Phrase 1 in each work can be heard by the naked ear on Track 1 of Audio Exhibit 1 to the Ferrara II Report.**

*SAS Response: Disputed, as the idea of what an unspecified person can detect with his or her "naked ear" is either a subjective musicological determination or a subjective legal determination, neither of which is subject to resolution under Fed. R. Civ. P. 56.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.   The Audio Exhibits to the Ferrara II Report speak for themselves.

72.     **The objective differences between "Upper Voice" Melody Phrase 2 in each work can be heard by the naked ear on Track 2 of Audio Exhibit 1 to the Ferrara II Report.**

*SAS Response: Disputed, as the idea of what an unspecified person can detect with his or her "naked ear" is either a subjective musicological determination or a subjective legal determination, neither of which is subject to resolution under Fed. R. Civ. P. 56.*

**DEFENDANTS' REPLY:**  Defendants respectfully refer the Court to their Reply to Paragraph 71.

73.     **Pages 25 and 27 of the Ricigliano Report also include visual graphs of "Upper Voice" Melody Phrase 1 and "Upper Voice" Melody Phrase 2, which further illustrate the objective differences between each melody in each work.**

*SAS Response: Undisputed that the Ricigliano Report includes graphs, but disputed as to the idea of what those graphs do or do not illustrate, which is either a subjective musicological determination or a subjective legal determination, neither of which is subject to resolution under Fed. R. Civ. P. 56.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed.  All else is irrelevant. The visual graphs in the Ricigliano Report speak for themselves, and SAS's experts never contested the accuracy of the visual graphs or the objective differences they illustrate.

**FOOTNOTE 12: The cited Audio Exhibit may be accessed at the URL provided in Footnote 9.**

*SAS Response: Undisputed.*

**FOOTNOTE 13: The cited Audio Exhibit may be accessed at the same URL cited in Footnote 9.**

*SAS Response: Undisputed.*

### B.    Dr. Everett's Fourth Summary Bullet

**74.    Dr. Everett claims that both songs emphasize certain notes – scale degrees 5 and 3 – over the "iii" chord, and he opines that it would be more "usual" to emphasize scale degree 7 over the "iii" chord. (Everett Report at 10, 20).**

*SAS Response: Undisputed.*

**75.    With respect to Dr. Everett's claim about TOL not emphasizing scale degree 7 over the "iii" chord, Dr. Ferrara, Mr. Ricigliano <u>and even Dr. Covach all agree</u> that there is no "iii" chord in TOL (Ferrara I Report ¶ 39; Ricigliano Report at 8; Covach Report ¶ 6), so Dr. Everett's assertion regarding the fact that TOL does not emphasize scale degree 7 over a nonexistent "iii" chord has no meaning. (Ferrara II Report ¶ 51).**

*SAS Response: Disputed. Defendants and their experts are misreading or misinterpreting Dr. Everett. As he explains on page 10 (¶ B.7), "The Gaye - Townsend composition's upper-voice emphasis on ^5 and ^3 shown throughout the deposit copy is unusual when supported by the iii chord, which is more characteristic with ^7 in the upper voice." The "iii chord" here refers to the second chord of the progression in the songs at issue. The unusual nature of this pairing is further melodic evidence that the iii and I6 are musicologically equivalent chords in LGO and TOL. Everett Report (ECF 179-5) ¶¶ B.7 & I.*

**DEFENDANTS' REPLY:** Defendants misread nothing. In his Report (which SAS pastes into its opposition papers at page 27 of its Memorandum of Law), Dr. Everett specifically opines that it is significant that LGO and TOL are not "interested in the upper-voice ^7," which

supposedly marks LGO and TOL as "deviant from the most common vocalization against iii in this specific progression." (Everett Report at 10). However, as Defendants have shown, Dr. Everett's opinion makes no sense as it is undisputed that: (i) TOL does not include a "iii" chord (and thus it does not matter what vocal notes appear in conjunction with a "iii" chord) (*supra* ¶ 33), (ii) avoiding scale degree 7 is consistent with Sheeran's style and earlier works (*infra* ¶ 80), (iii) Defendants identified nearly two-dozen prior songs that use a I-iii chord progression while avoiding scale degree 7 (Ricigliano Report at 29-30), and (iv) it is common for songs that use the basic building block of predominantly pentatonic scales, like TOL and LGO, to avoid scale degree 7. (*Infra* ¶ 81).

In addition, as Dr. Ferrara has explained (and as Dr. Everett has failed to rebut), Dr. Everett's Report identifies no similarity at all in the pitch sequences, rhythmic durations or metric placements between the objectively dissimilar vocal melodies that are concurrent with a "iii" chord in LGO and a "I6" chord in TOL. (*Infra* ¶ 78; Ferrara II Report ¶¶ 50-57).

**76.     It is undisputed that TOL does not include a "iii" chord. (Ricigliano Report at 28-20; Ferrara II Report ¶ 51).**

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 33, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:**  SAS's "Response" to Paragraph 33 specifically admits that TOL includes a "I6" chord, not a "iii" chord, and that a "I6" chord is a "variant," *i.e.*, different from, a "iii" chord. In short, SAS's reference to Paragraph 33 therefore admits that this Statement is undisputed.

77.    **Even if TOL did include a "iii" chord, which it does not, there is nothing unusual about omitting scale-step 7 in songs that use a I-iii chord progression. (Ricigliano Report at 28-29; Ferrara II Report ¶ 51).**

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 33, which is incorporated in full into this SAS Response. Dr. Everett's opinion is that this pairing is in fact unusual. Everett Report (ECF 179-5) ¶¶ B.7 & I.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  SAS does not dispute the fact in issue with any admissible evidence.  Mr. Ricigliano, who identified nearly two-dozen prior songs that use a I-iii chord progression while avoiding scale degree 7, directly contradicted Dr. Everett's naked opinion that the pairing is supposedly "unusual."  There was no denial by Dr. Everett.(Ricigliano Report at 29-30).

78.    **The melodies "concurrent" with the second chord of the chord sequence in each song are different. (Ferrara II Report ¶¶ 52-57).**

*SAS Response: Disputed, as the concept of "different" melodies is either a subjective musicological determination or a subjective legal determination, neither of which is subject to resolution under Fed. R. Civ. P. 56.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  Consistent with the Deposit Copy and the published sheet music for TOL, Dr. Ferrara demonstrated the melodies concurrent with the second chord in each work to be different, and SAS has not cited any admissible evidence refuting this objective fact.  (Ferrara II Report ¶¶ 52-57; *see also id.* ¶¶ 31-32,

79.    The supposed "similarity" that Dr. Everett claims regarding the absence of scale degree 7 over the non-existent "iii" chord in TOL (which has no "iii" chord) comprises matter that is not expressed rather than what is expressed. (*Id.*)

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 33, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  Defendants otherwise refer the Court to their Reply to Paragraphs 33 and 76.

80.    Avoiding scale degree 7 is consistent with Sheeran's general style and his earlier works. (Ricigliano Report at 30-31).

*SAS Response: Undisputed, but disputed that this has relevance to the musicological analysis at issue here.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed.  All else is irrelevant.

81.    It is common for songs that use the basic building block of a pentatonic scale, like LGO and TOL, to avoid scale-step 7. (*Id.*).

*SAS Response: Disputed that either TOL or LGO are purely major pentatonic scale compositions. Covach Report (ECF 179-1) ¶ 15.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed SAS's "Response" is evasive and nonresponsive.  Mr. Ricigliano opined that LGO and TOL were "predominantly" pentatonic scales, and that it is common for songs that use "predominantly" pentatonic scales to avoid scale-step 7.  (Ricigliano Report at 30-31).

82.    **TOL and LGO express their melodic phrases in different ways.  (Ricigliano Report at 35-36).**

*SAS Response: Disputed, as the idea of how two songs "express their melodic phrases," and whether they are "different," is either a subjective musicological determination or a subjective legal determination, neither of which is subject to resolution under Fed. R. Civ. P. 56.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  At pages 35-36 of his Report, Mr. Ricigliano details the many ways in which the melodic phrases in issue are expressed in different ways.

### C.    Dr. Everett's Fifth Summary Bullet

83.    **Dr. Everett claims that both songs end melodic phrases on the same note – a "non-resolving" scale degree 1. (Everett Report at 20).**

*SAS Response: Disputed, and disputed that this has relevance to the musicological analysis at issue here. Defendants and their experts are misreading or misinterpreting Dr. Everett. As he explains on page 8 (¶ B.4.d.), "Perhaps most tellingly, both melodies end with an ornamented ^1 in the vocal despite the fact that all phrases end on V (which is normally most characteristic in withholding ^1), making for the same tension-filled, non-resolving non-chord tones in the phrases' climaxes." A review of the notation clearly shows that ^1 (E-flat) is the last primary note of the melody. Indeed, in the excerpt from the sheet music Dr. Everett annotates "final ^1 is ornamented here with upper neighbor ^2." Everett Report (ECF 179-5) ¶¶ B.4-5.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  Dr. Everett specifically opines – incorrectly – in his Report that both songs end <u>melodic</u> phrases on the same

note – a "non-resolving" scale degree 1.  (*See* Everett Report at 20 ("Both songs end cadential phrases on a non-resolving upper-voice ^1")).

84.    **However, as objectively demonstrated in the Ferrara II Report, the phrases do not, in fact, both end on scale degree 1. (Ferrara Report II ¶¶ 59-63; *see also* Ricigliano Report at 32-33).**

*SAS Response: Disputed, and disputed that this has relevance to the musicological analysis at issue here. Please see Plaintiff's SAS Response to paragraph 83, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.

85.    **Moreover, the notes and rhythmic values of these melodies are different. (Ferrara II Report ¶¶ 26-47; Ricigliano Report at 22-28).**

*SAS Response: Undisputed that the notes and rhythmic values are not identical. Otherwise disputed, as the idea of whether and how they are "different" is either a subjective musicological determination or a subjective legal determination, neither of which is subject to resolution under Fed. R. Civ. P. 56.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed.  All else is irrelevant.

86.    **Countless songs that are totally different end on the same note. (Ricigliano Report at 33).**

*SAS Response: Undisputed.*

87.    **Ending phrases in this manner is a common melodic technique, which Sheeran has employed in his earlier works. (*Id.*).**

*SAS Response: Paragraph 87 is vague as to what "in this manner" refers to, and is therefore disputed. Sheeran's and/or Wadge's use of one or more elements found in TOL prior to creating TOL has no bearing on whether TOL infringes LGO. Neither Ferrara nor Ricigliano claim (and neither Covach nor Everett concede) that any prior Sheeran or Wadge composition includes what Dr. Covach refers to as the "backing pattern." Ferrara I Report, passim; Ferrara II Report, passim; Ferrara Rebuttal Report, passim; Ricigliano Report, passim.*

**DEFENDANTS' REPLY:** SAS's "Response" is not responsive to the Statement. It does not otherwise dispute that ending phrases in this manner is a common melodic technique and that Sheeran has employed this common technique in his prior works. Hence, this Statement is undisputed.

### D.    Dr. Everett's Eight Summary Bullet

**88.    Dr. Everett opines that both songs begin in a "weak metrical location." (Everett Report at 20).**

*SAS Response: Undisputed*

**89.    However, Dr. Everett obscures that both songs begin on different beats. (Ferrara II Report II ¶¶ 79-83).**

*SAS Response: Disputed. Dr. Everett obscures nothing, and Dr. Ferrara does not so claim. Everett Report (ECF 179-5), passim; Ferrara II Report ¶¶ 79-83.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed. Dr. Ferrara specifically concluded, based on the Deposit Copy and published sheet music for TOL, that the two songs begin on different beats. (Ferrara II Report ¶¶ 79-83).

90.    Moreover, it is commonplace for vocal melodies to begin in weak metrical positions. (*Id.*; Ricigliano Report at 34).

*SAS Response: Undisputed that the technique, standing alone, is unprotectible. The combination of elements in LGO and TOL, however, is similar and distinctive. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim.*

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed. All else is irrelevant and, as to distinctiveness, untrue and beyond the competence of an expert.

91.    Countless songs begin after a rest on a weak metrical position. (*Id.*).

*SAS Response: Undisputed that the technique, standing alone, is unprotectible. The combination of elements in LGO and TOL, however, is similar and distinctive. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim.*

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed. All else is irrelevant.

### E.    Dr. Everett's Ninth Summary Bullet

92.    Dr. Everett notes that both songs make use of "melisma." (Everett Report at 17, 20).

*SAS Response: Undisputed.*

93.    Melisma (an unprotectable commonplace technique) is a vocal technique that occurs when a vocalist sings a single lyrical syllable over multiple notes (as opposed to one note per syllable). (Ricigliano Report at 34).

*SAS Response: Undisputed.*

94.    Melisma has been used for centuries and is commonplace in popular music. (Ferrara Report II ¶¶ 85, 90).

*SAS Response:* Undisputed that the technique, standing alone, is unprotectible. The combination of elements in LGO and TOL, however, is similar and distinctive. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim.

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed. All else is irrelevant. Defendants otherwise refer the Court to their Reply to Paragraph 90.

95. **Sheeran frequently used melisma in his prior songs. (Ricigliano Report at 34-35).**

*SAS Response:* Undisputed. Sheeran's and/or Wadge's use of one or more elements found in TOL prior to creating TOL has no bearing on whether TOL infringes LGO. Neither Ferrara nor Ricigliano claim (and neither Covach nor Everett concede) that any prior Sheeran or Wadge composition includes what Dr. Covach refers to as the "backing pattern." Ferrara I Report, passim; Ferrara II Report, passim; Ferrara Rebuttal Report, passim; Ricigliano Report, passim.

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed. All else is irrelevant. The undisputed fact that Sheeran frequently used melisma in his prior songs reinforces that Sheeran, in co-authoring TOL, was not copying from LGO but using basic musical building blocks already in his musical toolbox.

96. **The two songs use the technique of melisma in significantly different ways, in different segments of the songs and in connection with different lyrics. (Ferrara II Report ¶¶ 88, 90).**

*SAS Response:* Undisputed that the two songs do not have identical segments or identical lyrics, which means – tautologically – that they cannot be said to use melisma in connection with their segments and lyrics in the exact same way. Otherwise disputed, as the concept of

48

*"significantly different" use of melisma is either a subjective musicological determination or a subjective legal determination, neither of which is subject to resolution under Fed. R. Civ. P. 56.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed.  All else is irrelevant.  Melisma is extremely common and used by "almost all vocalists," as Mr. Ricigliano explained.  (Ferrara II Report ¶¶ 88, 90; Ricigliano Report at 34-35).  Further, as Dr. Ferrara explained (and as SAS fails to address), Dr. Everett did not even attempt to identify similarities in the ways in which melisma is used in both works; Dr. Everett only offered the meaningless observation that both works happen to use the exceedingly common vocal technique.  (Ferrara II Report ¶ 88).

97.    **As detailed in the accompanying Memorandum of Law, melisma is so commonplace a technique that case law confirms it is not protectable or copyrightable.**

*SAS Response: Disputed, as the paragraph expresses a legal position, not a purported undisputed fact.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.

### *Song Structures*

98.    **LGO and TOL both incorporate generic structural building blocks of music through the use of verse and chorus sections; yet, beyond the general commonplace musical building blocks of structure used by millions of songs, TOL and LGO are not structurally similar. (Ferrara I Report ¶¶ 26-28; Ricigliano Report at 11).**

*SAS Response: Disputed. Differences in interpretation in popular music song form are common among scholars who work in this field. Covach Report (ECF 179-1) ¶ 8. Please see Plaintiff's SAS Response to paragraph 41, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed. Neither Paragraph 41 of SAS's 56.1 Response nor Paragraph 8 from the Covach Report addresses the factual statement in question.

**99.    TOL includes two pre-chorus sections; LGO has none. (Ferrara I Report ¶ 27).**

*SAS Response: Disputed. Differences in interpretation in popular music song form are common among scholars who work in this field. Covach Report (ECF 179-1) ¶ 8.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed. Paragraph 8 from the Covach Report does not address the fact in question; Paragraph 8 addresses the nonexistent bass line in LGO.

**100.    LGO includes two bridge sections; TOL has none. (*Id.*).**

*SAS Response: Disputed. Differences in interpretation in popular music song form are common among scholars who work in this field. Covach Report (ECF 179-1) ¶ 8.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed. Paragraph 8 from the Covach Report does not address the fact in question; Paragraph 8 addresses the nonexistent bass line in LGO.

**101.    TOL includes an interlude; LGO has none. (*Id.*).**

*SAS Response: Disputed. Differences in interpretation in popular music song form are common among scholars who work in this field. Covach Report (ECF 179-1) ¶ 8.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed. Paragraph 8

from the Covach Report does not address the fact in question; Paragraph 8 addresses the nonexistent bass line in LGO.

**102.    Even as charted by Dr. Covach, structural differences exist between the two songs. (*Id.* ¶¶ 124-26).**

*SAS Response: Disputed. Differences in interpretation in popular music song form are common among scholars who work in this field. Covach Report (ECF 179-1) ¶ 8.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed. Paragraph 8 from the Covach Report does not address the fact in question; Paragraph 8 addresses the nonexistent bass line in LGO.

**103.    Looping (i.e., repeating) a chord progression both generally, and in more than one section of a composition, is common in popular music. (Ferrara II Report ¶ 20; Ricigliano Report at 17-19, 35).**

*SAS Response: Undisputed that the technique, standing alone, is unprotectible. The combination of elements in LGO and TOL, however, is similar and distinctive. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim.*

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed.  All else is irrelevant.

**104.    Sheeran's prior works frequently utilize looping. (Ricigliano Report at 17-19, 35).**

*SAS Response: Undisputed, but Sheeran's and/or Wadge's use of one or more elements found in TOL prior to creating TOL has no bearing on whether TOL infringes LGO. Neither Ferrara nor Ricigliano claim (and neither Covach nor Everett concede) that any prior Sheeran or*

*Wadge composition includes what Dr. Covach refers to as the "backing pattern." Ferrara I Report, passim; Ferrara II Report, passim; Ferrara Rebuttal Report, passim; Ricigliano Report, passim.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed.

**105.    TOL does not use the same chord progression throughout its choruses. (Ferrara II Report ¶¶ 20-21, 24-25; Ricigliano Report at 17).**

*SAS Response: Disputed. Please see Plaintiff's SAS Responses to paragraphs 33 and 41, which are incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed. SAS's "Response" to Paragraphs 33 and 41 do not address the fact in question; it remains undisputed and unrebutted that TOL does not use the same chord progression throughout its choruses, *i.e.*, the chord progressions in TOL change. (Ferrara II Report ¶¶ 20-21, 24-25; Ricigliano Report at 17).

**106.    The duration of the "looped" chord progressions is different in each work. (Ferrara II Report ¶¶ 20-21, 24-25).**

*SAS Response: Disputed. Please see Plaintiff's SAS Response to paragraph 41, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed. SAS's "Response" to Paragraph 41 does not address the fact in question; it remains undisputed and unrebutted that the duration of the "looped" chord progressions is different in each work. (Ferrara II Report ¶¶ 20-21, 24-25).

107.    The final two measures of the TOL choruses use a different chord progression that "breaks away" from the basic I-I6-IV-V progression. (*Id.*).

*SAS Response:* *Undisputed, but disputed that these differences have relevance to the musicological analysis at issue here.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed.  All else is irrelevant.

108.    Dr. Everett's conclusion – that both songs "share the same formal structure at sub-phrase, phrase, section, and multi-section levels" – is demonstrably incorrect. (*Id.* ¶¶ 66-72).

*SAS Response:* *Disputed. Differences in interpretation in popular music song form are common among scholars who work in this field. Covach Report (ECF 179-1) ¶ 8.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed. Paragraph 8 from the Covach Report does not address the fact in question; Paragraph 8 addresses the nonexistent bass line in LGO.  SAS has not disputed, let alone addressed, the facts established at Paragraphs 66-72 of the Ferrara II Report.

### *The Alleged "Combination" Or "Backing Pattern"*

109.    Beyond the foregoing factually baseless attempt to fabricate alleged melodic and structural similarities that do not exist, which are commonplace musical techniques, including techniques which were previously employed by both Sheeran and Wadge in their prior songs and are a part of both Sheeran's and Wadge's musical toolkits, SAS infringement claim is based essentially exclusively on what Dr. Covach alleges is a "backing pattern" that he claims exists in each song. (Covach Report ¶¶ 3, 17-22).

*SAS Response: Undisputed that the commonalities between LGO and TOL is reflected in the "backing pattern," which forms a part of Dr. Covach's conclusion that the two songs are similar. Disputed as to the remainder of the characterizations in this paragraph, which are nothing more than attorney hyperbole and argument. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim.*

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed. SAS has not disputed (either in its "Response" to Paragraph 109 or in its Memorandum of Law) that SAS's infringement claim is based on Dr. Covach's "backing pattern."

**110.    This alleged "backing pattern," as identified by Dr. Covach, is comprised of a "coordination of harmony (chord progression), bass line, and rhythm." (Covach Report ¶ 3).**

*SAS Response: Undisputed.*

**111.    Dr. Covach's Report specifically requires that the combination include all three of these elements for the alleged infringement claim to exist; without all three elements, Dr. Covach admits that his conclusion of copying has no foundation. (*Id.* ¶¶ 3, 17-22).**

*SAS Response: Disputed. Dr. Covach identifies three elements in the "backing pattern," but never states that all three elements are required for a finding of similarity. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim. As discussed in the accompanying Memorandum of Law, this Court has concluded – in its decision in the Griffin matter that is binding on Defendants – that the disputed material questions of fact concerning purported commonality of two elements requires that the Court deny Defendants' motion for summary judgment of infringement. Griffin ECF 93 (Jan. 3, 2019) at 2, 10-13, 18.*

**DEFENDANTS' REPLY**: While again invoking the word "disputed," SAS then provides not a single fact to show any dispute. As such, the Statement remains undisputed. Dr. Covach's

Reports make plain that each of the three elements is, in fact, required for his opinion to exist. (*See, e.g.*, Covach Rebuttal Report ¶ 2 ("My report does not argue that any of these elements taken in isolation is unique.  Rather, I argue that it is the <u>precise</u> combination of these <u>three</u> elements … that constitutes [LGO's] distinctiveness") (emphases added); Covach Report ¶ 22 (opining that it is the "combination of three specific elements" in LGO that supposedly renders LGO "distinctive"); *id.* ¶ 19 (opining that "it is the distinctive combination of these elements that forms the basis for a claim of originality"); *id.* ¶ 20 (opining that "the combination" of these three elements in TOL "appropriates distinctive material" from LGO)).

**112.    It is undisputed – and this Court has already found – that the Deposit Copy does not notate a bass-line, and a bass-line is not part of LGO's copyright. (Ferrara I Report ¶¶ 23-24, 109; Covach Report ¶ 8; Covach Report ¶ 6; *Griffin* v. Sheeran, No. 17-cv-5221 (LLS), 2020 U.S. Dist. LEXIS 52908, at \*2-3 (S.D.N.Y. Mar. 24, 2020)).**

**SAS Response:** *As discussed in the accompanying Memorandum of Law, the "deposit copy" decision in Griffin (Griffin ECF 121) is not binding on Plaintiff. However, this Court has concluded – in its decision in the Griffin matter that <u>is binding</u> on Defendants – that the disputed material questions of fact concerning purported commonality of <u>two</u> elements requires that the Court deny Defendants' motion for summary judgment of infringement. Griffin ECF 93 (Jan. 3, 2019) at 2, 10-13, 18.*

**DEFENDANTS' REPLY:**  SAS does not dispute that there is no bass line notated in the Deposit Copy, as there plainly is not.  Its argument here is purely one of law and on that, Defendants respectfully refer the Court to their accompanying Reply Memorandum of Law.

113.    As a result, the three element alleged "backing pattern," claimed by Dr. Covach, which requires a "bass-line" is not reflected in the Deposit Copy, which does not include any bass-line, much less the specific bass-line claimed by SAS. (*Id.*).

*SAS Response: As discussed in the accompanying Memorandum of Law, the "deposit copy" decision in Griffin (Griffin ECF 121) is not binding on Plaintiff. However, this Court has concluded – in its decision in the Griffin matter that is binding on Defendants – that the disputed material questions of fact concerning purported commonality of two elements requires that the Court deny Defendants' motion for summary judgment of infringement. Griffin ECF 93 (Jan. 3, 2019) at 2, 10-13, 18. Please see Plaintiff's SAS Response to paragraph 22, which is incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:**  Defendants refer the Court to their Reply to Paragraph 112.

114.    As detailed above, Dr. Covach admits that LGO's I-iii-IV-V chord progression and its rhythmic anticipation of chord changes are both commonplace musical elements. (*Supra* ¶¶ 36, 42).

*SAS Response: Undisputed that each element, standing alone, is unprotectible. The use of the combination of elements in LGO and TOL, however, is similar and distinctive. Covach Report (ECF 179-1), passim; Covach Rebuttal (ECF 179-7), passim; Everett Report (ECF 179-5), passim.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed and, as Defendants' moving papers demonstrated, a combination of two unprotectable elements does not, as a matter of law, suffice to satisfy the "numerous" requirement under the "selection and arrangement" test.  (Mov. Mem. at 20-23).  Further, it is indisputable TOL does not use or arrange either of the two unprotectable "backing pattern" elements in LGO in an identical or near identical manner (*a fortiori*, it does not replicate the alleged combination in an identical or near identical

manner) – representing an independently dispositive reason why SAS's "selection and arrangement" claim fails as a matter of law.

**115.    Indeed, even without having performed any prior art search – itself a flaw that warrants exclusion of Dr. Covach's Reports – Dr. Covach has admitted that there may be songs prior to LGO that employ both of these elements. (Covach Report ¶ 22).**

*SAS Response: Disputed that Dr. Covach was required to conduct a prior art search. Everett Report (ECF 179-5), passim. Disputed that "Dr. Covach has admitted that there may be songs prior to LGO that employ both of these elements." What he actually wrote was "perhaps even two of them together." Covach Report (ECF 179-1) ¶ 22.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  It is undisputed that Dr. Covach did not conduct a prior art search and the pretense that he was relying on Dr. Everett whose report he never mentioned in his report and whose report was dated weeks later is baseless.  As to whether a prior art search is required, the law is clear that it is.   *See Johannsongs-Publishing Ltd. v. Rolf Lovland*, No. 18-cv-100009 (AB), 2020 WL 2315805, at *5 (C.D. Cal. Apr. 3, 2020); *Smith v. Weeknd*, 19-cv-2507 (PA), 2020 WL 4932074, at *2, *6 (C.D. Cal. July 22, 2020).

**116.    In fact, multiple works exist that use a I-iii-IV-V chord progression (or a I-I6-IV-V chord progression) together with anticipation of chord changes on the second and fourth chords. (Ferrara I Report ¶¶ 56-65, 107; *see also* Covach Report ¶¶ 11-13; Ferrara Rebuttal ¶¶ 30-38).**

*SAS Response: Disputed. Dr. Everett explains that based on his study, the sixth most popular chord progression beginning with I is the progression at issue here: "I - iii - IV - V (or its*

bass-line equivalent, I - I6 - IV - V)." He goes on to explain: "the progression class shared between our exhibits by Marvin Gaye - Edward Townsend and Ed Sheeran, I - iii - IV - V, is uncommon, with far fewer examples than any of those progressions listed above it." Everett Report (ECF 179-5) ¶¶ A.6-7.

Dr. Everett identifies 12 songs released <u>before</u> LGO with the same "combined upper voice and chord progression" as LGO and TOL, but then makes the point that LGO and TOL depart in a critical way:

> Because neither the Gaye - Townsend composition nor Sheeran in his performance are interested in the upper-voice ^7, the melodies in the Gaye - Townsend deposit copy and the Sheeran recording are marked as deviant from the most common vocalization against iii in this specific progression, further supporting the connection of class members I - iii - IV - V and I - I6 - IV - V in these exhibits.

Everett Report (ECF 179-5) ¶ B.7.

Dr. Everett also takes note of common but unusual features of TOL and LGO, identifying only one other song that is potentially similar:

> It is very unusual to repeat the I - iii - IV - V progression as a loop without contrast, and beyond rare to do so throughout the entirety of both verses and choruses; the Commodores' "Easy" is the only such example known to me other than our Gaye - Townsend and Sheeran exhibits.

Everett Report (ECF 179-5) ¶ C.3.

On the topic of harmonic rhythm or syncopation, Dr. Everett once again opines that few songs using the same or equivalent chord progression also have syncopated chord changes, and only one other song has the <u>same</u> syncopation as LGO and TOL: "Thus, the Gaye - Townsend and Sheeran exhibits are two of only three songs in our 6,000-song sample using the I - iii - IV - V chord progression class that share the same pattern of syncopated chord changes, the third being 'Georgy Girl.'" Everett Report (ECF 179-5) ¶ D.1.

Dr. Everett summarizes his prior art findings as follows:

> *In summary, comparison of the Gaye - Townsend deposit copy with the Sheeran recording yields a number of correspondences: both songs share the same repeated four-chord progression. Both feature melodies based on the same distinctive structural shape, including similar relations between vocal tones and underlying chords, and both display the same rhythmic freedom. Both songs share the same formal structures at all levels, from surface phrases to largest sections. Both are among the only three known songs to share the same syncopation of the repeated four-chord pattern. The sharing of all of these elements strongly evidence copying by Sheeran of Gaye - Townsend.*

*Everett Report (ECF 179-5) ¶ E.4.*

Dr. Ferrara opines on the topic of prior art, arguing that although there are many songs that use the I – iii – IV – V chord progression (about which there is no real debate), and claiming that he found three pre-1973 songs that have the same combination of elements identified by Dr. Covach. Dr. Covach meets Dr. Ferrara with respect to all three songs, explaining why – in his expert opinion – they do not share the combination of elements and are not "prior art" to LGO. Regarding "Downtown" he says that Dr. Ferrara – who did not provide musical transcription to back up his claim – is simply incorrect:

> *As indicated by the example, the chord progression moves from I to IV and then to V, with all three harmonies occurring over a repeated D note in the bass (a centuries-old technique called "pedal point"), indicated by the label "tonic pedal" in Example 1. As least as far as concerns the published sheet music, <u>the backing pattern as I have defined it is not present</u>.*

*Covach Rebuttal (ECF 179-7) ¶ 10.*

As for "Since I Lost My Baby," Dr. Covach points out that Dr. Ferrara chose an obscure version of the song recorded by Ray French, as opposed to the mainstream version recorded by the Temptations that reached Number 17 on the U.S. pop music charts, which – based on the sheet music – does not use the same combination of elements:

> *Example 2 provides the opening measures to the verse section as it appears in the published sheet music for "Since I Lost My Baby." Note that while the bass part and harmonic rhythm from the backing pattern are present in "Since I Lost My Baby," the final chord differs: instead of the V chord that is part of the LGO and TOL patterns, a I chord is used here with a C in the bass (traditionally referred to as a "I64 chord").*

*Covach Rebuttal (ECF 179-7) ¶ 11.*

Dr. Covach identifies the same problem with Dr. Ferrara's use of "Georgy Girl" – Dr. Ferrara points an obscure "easy listening" orchestral version of the song, rather than the global hit version recorded by The Seekers. When compared to the mainstream version, Dr. Covach explains, the combination of elements is not there:

> Note that while the four-chord progression is the same as the one in LGO, and the bass line shares a common underlying structure as that of LGO (though there is some variation), the harmonic rhythm does not match the one found in LGO, since the chords all change directly on the beats one and three, and thus lacking the element of syncopation or "anticipation," as Dr. Ferrara labels it.

*Covach Rebuttal (ECF 179-7) ¶ 13.*

**DEFENDANTS' REPLY:** While again invoking the word "disputed," SAS then provides not a single fact to show any dispute but only parrots lengthy portions of its expert reports, which fail to address the specific point. As such, the Statement remains undisputed. It is undisputed that Dr. Ferrara identified at least two songs released prior to LGO that feature the same combination of chords and harmonic rhythm: (i) *Since I Lost My Baby* by Ray French (1966) and (ii) *Georgy Girl* by 101 Strings Orchestra (1967). (Ferrara I Report ¶¶ 56-65, 107). Dr. Covach <u>does not dispute</u> that these two songs feature the same combination of unprotectable elements. (Covach Rebuttal Report ¶¶ 11-13; Ferrara Rebuttal Report ¶¶ 30, 35) but notes that other recordings of these songs do not feature the exact same combination of elements, which is irrelevant. (*Id.*).

As for the prior art example, *Downtown*, Dr. Ferrara was clear in his Report that *Downtown*, while extremely similar to LGO, did <u>not</u> include the same exact combination of elements since anticipation in *Downtown* only occurs on the second chord (whereas it occurs on both the second and fourth chords in LGO). (Ferrara I Report ¶ 59 n.20). SAS is plain wrong when it claims that Dr. Ferrara did not transcribe *Downtown*. (*Compare* 56.1 Response ¶ 116, *with* Ferrara Rebuttal Report ¶ 29).

117.    As noted above, TOL co-author Amy Wadge co-authored a song prior to co-authoring TOL that includes a I-I6-IV-V chord progression that anticipates chord changes on the second, third and fourth chords (i.e., the only difference between TOL and this prior work by Amy Wadge is that the prior work also happens to anticipate the third chord change). (*Supra* ¶ 53).

*SAS Response: Undisputed, but Sheeran's and/or Wadge's use of one or more elements found in TOL prior to creating TOL has no bearing on whether TOL infringes LGO. Neither Ferrara nor Ricigliano claim (and neither Covach nor Everett concede) that any prior Sheeran or Wadge composition includes what Dr. Covach refers to as the "backing pattern." Ferrara I Report, passim; Ferrara II Report, passim; Ferrara Rebuttal Report, passim; Ricigliano Report, passim.*

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed and all else is irrelevant.

118.    As noted above, prior to releasing the album x (which includes TOL), Sheeran used anticipation in at least twenty songs that he wrote or co-wrote, and in ten of those twenty songs, anticipation occurs on the second and fourth chords of a chord progression (as in TOL and LGO). (*Supra* ¶ 52).

*SAS Response: Undisputed, but Sheeran's and/or Wadge's use of one or more elements found in TOL prior to creating TOL has no bearing on whether TOL infringes LGO. Neither Ferrara nor Ricigliano claim (and neither Covach nor Everett concede) that any prior Sheeran or Wadge composition includes what Dr. Covach refers to as the "backing pattern." Ferrara I Report, passim; Ferrara II Report, passim; Ferrara Rebuttal Report, passim; Ricigliano Report, passim.*

**DEFENDANTS' REPLY:** SAS has admitted that the Statement is undisputed and all else is irrelevant.

119.    In addition to the fact that Dr. Covach's three element backing pattern does not actually exist in the Deposit Copy (because one of the three required elements does not exist), with respect to the two remaining commonplace elements, TOL does not use the two elements in an identical or virtually identical manner to LGO. (Ferrara Rebuttal Report ¶ 26).

*SAS Response: Disputed. Please see Plaintiff's SAS Responses to paragraphs 22, 33, 41 and 116, which are incorporated in full into this SAS Response.*

**DEFENDANTS' REPLY:**  While again invoking the word "disputed," SAS then provides not a single fact to show any dispute.  As such, the Statement remains undisputed.  The cited Paragraphs do not refute that TOL does not replicate the elements in question in an identical or virtually identical manner.  (*Supra* ¶¶ 41, 46-51).

## V.    Indirect Touring And Merchandising Profits

120.    SAS has no evidence showing that Sheeran's touring and merchandising profits have any causal nexus to the alleged infringement. (Zakarin Decl. ¶¶ 116-120).

*SAS Response: As discussed in the accompanying Memorandum of Law, Defendants are laboring under an incorrect legal premise, as this Court has already ruled that Mr. Sheeran's performances of TOL – if TOL infringes LGO – were direct infringements, giving rise to direct profits, for which no showing of nexus is required, or if required has already been satisfied and/or is "obvious," shifting the burden to Defendants to prove a proper apportionment of their profits.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed, and all else is irrelevant.

121.    SAS did not serve requests for production that bear upon whether a causal nexus exists between Sheeran's touring and merchandising profits and TOL's alleged infringement of LGO. (*Id.* at Exhibit 18).

*SAS Response:* Undisputed, but as discussed in the accompanying Memorandum of Law, Defendants are laboring under an incorrect legal premise, as this Court has already ruled that Mr. Sheeran's performances of TOL – if TOL infringes LGO – were <u>direct infringements</u>, giving rise to <u>direct profits</u>, for which no showing of nexus is required, or if required has already been satisfied and/or is "obvious," shifting the burden to Defendants to prove a proper apportionment of their profits.

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed, and all else is irrelevant.

122.    **Defendants served requests for production on SAS seeking documents and other tangible items that support SAS's claim of a causal nexus between Sheeran's touring and merchandising profits and TOL's alleged infringement of LGO. (*Id.* at Exhibit 19, Request Nos. 33, 35, 36, 44, 61, 86).**

*SAS Response:* Undisputed, but as discussed in the accompanying Memorandum of Law, Defendants are laboring under an incorrect legal premise, as this Court has already ruled that Mr. Sheeran's performances of TOL – if TOL infringes LGO – were <u>direct infringements</u>, giving rise to <u>direct profits</u>, for which no showing of nexus is required, or if required has already been satisfied and/or is "obvious," shifting the burden to Defendants to prove a proper apportionment of their profits.

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed, and all else is irrelevant.

123.    **SAS has not produced any documents or tangible items responsive to the above-mentioned requests. (Zakarin Decl. ¶ 119).**

*SAS Response: Undisputed, but, as discussed in the accompanying Memorandum of Law, Defendants are laboring under an incorrect legal premise, as this Court has already ruled that Mr. Sheeran's performances of TOL – if TOL infringes LGO – were <u>direct infringements</u>, giving rise to <u>direct profits</u>, for which no showing of nexus is required, or if required has already been satisfied and/or is "obvious," shifting the burden to Defendants to prove a proper apportionment of their profits. Moreover, SAS would not have access to any such documents, which – if they exist – would be in the exclusive possession of Defendants.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed, and all else is irrelevant.  .

124.    **Instead, SAS produced a total of 403 pages of documents, which fall under the following seven categories: (1) documents from and correspondence with ASCAP, BMI, SoundExchange and The Harry Fox Agency concerning public performance income, interactive streaming income and mechanical royalties; (2) hearsay articles from print publications and the Internet; (3) probate records for the Estate of Ed Townsend; (4) sheet music; (5) excerpts from a book on Marvin Gaye's "Greatest Hits"; (6) email correspondence between SAS's principal and others regarding this matter and other music infringement cases; and (7) royalty statements for LGO. (*Id.*).**

*SAS Response: Undisputed but, as discussed in the accompanying Memorandum of Law, Defendants are laboring under an incorrect legal premise, as this Court has already ruled that Mr. Sheeran's performances of TOL – if TOL infringes LGO – were <u>direct infringements</u>, giving rise to <u>direct profits</u>, for which no showing of nexus is required, or if required has already been satisfied and/or is "obvious," shifting the burden to Defendants to prove a proper apportionment*

*of their profits. Moreover, SAS would not have access to any such documents, which – if they exist – would be in the exclusive possession of Defendants.*

**DEFENDANTS' REPLY:**  SAS has admitted that the Statement is undisputed, and all else is irrelevant.

### PART III: DEFENDANTS' REPLY TO SAS'S COUNTER-STATEMENT OF FACTS

**125.    On May 31, 2020, Plaintiff served the Expert Report on Damages and Profits, authored by Gary Cohen, CPA ("Cohen Report"), on Defendants. Parness Cert. Ex. 1.**

*Defendants' Reply*: *Undisputed.*

**126.    On July 7, 2020, Defendants served the Amended Expert Report of Barry M. Massarsky ("Massarsky Report"), on Plaintiff. Parness Cert. Ex. 2.**

*Defendants' Reply*: *Undisputed.*

**127.    According to Plaintiff, a proper apportionment of the profits arising from Mr. Sheeran's 94 concert performances of TOL on or after June 28, 2015 ranged from 13.13% (based on Chartmasters Spotify data) to 23.97% (using Recording Industry Association of America certified sales data). Cohen Report (Parness Cert. Ex. 1) at 9-10.**

*Defendants' Reply*: *Undisputed that the Cohen Report includes the cited statements, but dispute that the cited statements are proper and accurate, or that they have any evidentiary or foundational basis.  Further, SAS has admitted that it has no evidence of a causal nexus, which precludes it from recovering touring and merchandising profits as a matter of law.*

**128.    Defendants admit that if TOL infringes LGO, sales of multi-track albums containing single recordings of TOL are direct infringements. Massarsky Report (Parness Cert. Ex. 2) at 4-5.**

*Defendants' Reply*: *Disputed.  The cited evidence does not support the cited proposition. Whether or not an act is a "direct" infringement (as opposed to vicarious or contributory*

*infringement) is a legal question.  Further, SAS conflates the concept of "direct infringement" with "direct profits."  Whether or not an act amounts to a "direct infringement" has nothing to do with whether profits derived from such an act constitute "direct profits" or "indirect profits."*

129.    **Defendants admit that if TOL infringes LGO, profits arising from sales of record albums containing recordings of TOL are direct profits. Massarsky Report (Parness Cert. Ex. 2) at 4-5.**

*Defendants' Reply*:  *Disputed.  The cited evidence does not support the cited proposition. Whether or not profits derived from an infringing activity represent "direct" profits (as opposed to "indirect" profits) is a legal question.  Further, where a recording appears on a physical album or a digital album, the purchase of the physical or digital album necessarily includes the recording that is allegedly infringing.  Thus, an allocable share of the album's profits are properly considered in connection with the infringement.  The measure of the allocable share depends on factors which may reduce the share below a straight line.*

130.    **Defendants admit that if TOL infringes LGO, there is a causal nexus between the infringing TOL, and the profits arising from sales of record albums containing recordings of TOL. Massarsky Report (Parness Cert. Ex. 2) at 4-5.**

*Defendants' Reply*:  *Disputed.  The cited evidence does not support the cited proposition. Nevertheless, Defendants do not dispute that if TOL infringes LGO, then SAS may recover a portion of the profits arising from sales of record albums containing recordings of TOL.*

131.    **Defendants argue that if TOL infringes LGO, the profits arising from sales of record albums containing recordings of TOL should be apportioned on a "straight-line" basis, by which they mean total profits divided by the number of tracks on the album. Massarsky Report (Parness Cert. Ex. 2) at 4-5.**

*Defendants' Reply*:  *Undisputed; however, Defendants clarify that various configurations of the album X (the album containing TOL) exist, with different numbers of tracks on each, and that one must divide by the weighted average of the various configurations of the album sold to calculate the appropriate figure.  And, in addition, a less than straight line allocation may also be proper depending on the success of other singles from the album and whether the allegedly infringing work was the first or a later single.*

**132.    Defendants argue that if TOL infringes LGO, the profits arising from live performances of TOL should be apportioned on a "straight-line" basis, by which they mean total profits divided by the number of songs performed. Massarsky Report (Parness Cert. Ex. 2) at 21.**

*Defendants' Reply*:  *Disputed.  SAS misrepresents the Massarsky Report.  Massarsky specifically and repeatedly stated that he put forth a straight-line analysis solely to counter the massively inflated and baseless Cohen Report, but that he disagreed that any basis existed for SAS to recover any touring or merchandise income because nothing connected ticket or merchandise sales to TOL.  (ECF 186-3 at 6, 15, 18, 22).  Thus, contrary to SAS's misrepresentation of the Massarsky Report, only in the event that SAS could establish such nexus (and it cannot because it has no such evidence, produced none in discovery and waived the right to provide any evidence if it had any by failing to oppose this motion with any admissible evidence), then, and only then, was it Massarsky's view that the only proper basis to apportion touring profits would be on a straight-line basis.  (Id. at 21, 23, 29-32).*

Dated: New York, New York
June 4, 2021

PRYOR CASHMAN LLP

By: */s/ Donald S. Zakarin*
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward Christopher Sheeran, Sony/ATV Music Publishing LLC, Atlantic Recording Corporation, BDi Music Ltd., Bucks Music Group Ltd., The Royalty Network, Inc., David Platz Music (USA) Inc., Amy Wadge and Jake Gosling*