ORIGINAL

```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - X

STRUCTURED ASSET SALES, LLC,

                Plaintiff,                18 Civ. 5839 (LLS)

     - against -                          ORDER

EDWARD CHRISTOPHER SHEERAN, p/k/a
ED SHEERAN, SONY/ATV MUSIC
PUBLISHING, LLC, ATLANTIC RECORDING
CORPORATION d/b/a ATLANTIC RECORDS,
BDI MUSIC LTD., BUCKS MUSIC GROUP LTD.,
THE ROYALTY NETWORK, INC., DAVID
PLATZ MUSIC (USA) INC., AMY WADGE,
JAKE GOSLING and DOES 1 THROUGH 10,

                Defendants.
- - - - - - - - - - - - - - - - X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/22

## BACKGROUND

The Court assumes the parties' familiarity with the facts and prior proceedings, including Structured Asset Sales, LLC v. Sheeran, 433 F. Supp. 3d 608, 609 (S.D.N.Y. 2020) (granting in part and denying in part plaintiff's motion to compel) (Dkt. No. 144); Structured Asset Sales, LLC v. Sheeran, 559 F. Supp. 3d 172, 173 (S.D.N.Y. 2021) (Opinion & Order on defendants' Motion in limine) (Dkt. No. 197); and Griffin v. Sheeran, 351 F. Supp. 3d 492, 494 (S.D.N.Y. 2019) (asserting a claim that TOL infringes the copyright in LGO).

In response to this Court's September 9, 2021 Order, SAS's expert musicologists, Dr. Covach and Dr. Everett, filed amended reports: (1) a Revised Covach Report, (2) a Revised Covach

Rebuttal Report, and (3) a Revised Everett Report (collectively, the "Revised Reports"). Dkt. No. 200 Exs. 3, 5, & 7. The September 9th Order held that "the Deposit Copy is the sole definition of the elements included in the protection of copyright" and, consequently, the LGO Sound Recording "is inadmissible in any way which might confuse the jury into thinking it represents what is protected by copyright." Dkt. No. 197 at 2-3. The Order directed the experts to delete "all references to the Gaye sound recording," all references to prior art, as "the proof as to the existence of prior art shall be only that submitted by defendants," and all "opinions unsupported by facts, or suggesting legal conclusions." Id. at 3-4.

## DISCUSSION

### A. Renewed Motion to Exclude SAS's Experts Dr. Covach and Dr. Everett

Issues raised in Sheeran's renewed application for in limine rulings are disposed of as follows.

1. The Revised Reports may use the terms "common," "uncommon," "noteworthy," and "stylistically commonplace." These are not legal conclusions but epithets characterizing a work's place on a scale of originality.

2. The term "appropriates" is stricken from Paragraph 20 of the Revised Covach Report because the term has a legal meaning in

the copyright field. An unlawful appropriation is one where "the second work bears 'substantial similarity' to protected expression in the earlier work." Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc., 150 F.3d 132, 137 (2d Cir. 1998). An expert may not opine that a defendant's work is substantially similar to that of the plaintiff. That is for the jury to decide.

3. All references to the Gaye sound recording are to be stricken because they violate the Court's Order that SAS "must delete all references to the Gaye sound recording" as "comparisons of elements in Thinking Out Loud which are similar to elements in the Gaye sound recording (but not the Deposit Copy) will not be allowed." Dkt. No. 197 at 3. There is no ambiguity in that direction, and it is the lawyer's responsibility to see that his client, and retained experts, comply with it. A report containing such references will be excluded.

4. Sheeran raises several issues alleging that SAS's experts did not remove all references to prior art in compliance with the Court's Order that "[o]ne of plaintiffs experts having ignored the issue of prior art, and the other having only made inquiries so superficial as to amount to no research at all, the proof as to the existence of prior art shall be only that submitted by defendants." Dkt. No. 197 at 4.

References to prior art will not be accepted when used to prove that an element of LGO is unusual or similar to that of TOL. Thus, the prior art examples listed on Pages 9-10, Paragraph 7 of the Revised Everett Report, are stricken, except for "Hurdy Gurdy Man" by Donovan, which is admissible because it is offered into evidence by Sheeran's expert.

References to prior art are acceptable when they are used to illustrate general principles of musicology. The Revised Everett Report can mention the prior art on Pages 12-13, Paragraph 3 because the songs are being used as examples of the different functions a chord progression may have within the formal structure of the song. The only song that is used to show the similarity between LGO and TOL is the Commodores' "Easy," which is introduced by Sheeran's expert and may thus also be discussed in the Revised Everett Report.

The study on Pages 3-4, Paragraphs 6-7 of the Everett Report is acceptable, for it describes chord progressions, not prior art.

### B. Motion for Summary Judgment

#### 1) General Legal Standards

Summary judgment is warranted if, based upon admissible evidence, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Celotex Corp. v.

Catrett, 477 U.S. 317, 322 (1986). In deciding a motion for summary judgment, a Court must "construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor." Dickerson v. Napolitano, 604 F.3d 732, 740 (2d Cir. 2010).

### 2) Legal Standard Applied to Copyright Infringement

To establish a claim of copyright infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010). The issue of substantial similarity "is frequently a fact issue for jury resolution." Warner Bros. Inc. v. Am. Broad. Companies, Inc., 720 F.2d 231, 239 (2d Cir. 1983). Even so, on a motion for summary judgment, a court may determine non-infringement as a matter of law, "either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar." Id. at 240 (citations omitted).

### 3) Copyright Infringement

SAS's infringement claim is based on Sheeran's alleged copying of the combination of two elements from LGO's Deposit Copy into TOL: (1) the chord progression; and (2) the particular way in which anticipation is used in connection with the chord progression ("Harmonic Rhythm") (collectively the "Backing Pattern"). The parties agree that those elements, standing alone, are commonplace and unprotectable. Accordingly, Sheeran argues that summary judgment dismissing the claim is appropriate as a matter of law because (i) the combination of two unprotectable elements is not sufficiently numerous or original to constitute an original work entitled to copyright protection under the "selection and arrangement" theory of liability; and (ii) LGO's backing pattern is not identical or nearly identical to that in TOL.

### i) Copyrightability of the combination of the chord progression and harmonic rhythm

The law does not support Sheeran's contention that the combination of LGO's chord progression and harmonic rhythm is insufficiently original to warrant it copyrightable. There is no bright-line rule that the combination of two unprotectable elements is insufficiently numerous to constitute an original work. Cf. Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1003-04 (2d Cir. 1995) ("a work may be copyrightable even though it is entirely a compilation of unprotectable elements. What is protectable then is 'the author's original contributions'-the

- 6 -

original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work." (citations omitted)); Rose v. Hewson, No. 17 CV 1471, 2018 WL 626350, at *3 (S.D.N.Y. Jan. 30, 2018) ("compilations of generally unprotectable elements can be afforded copyright protection."). Moreover, Courts "treat the question whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection as a question for the factfinder." Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 674, 681 (2d Cir. 1998). Therefore, "the question whether those elements in LGO demonstrate 'sufficient originality and creativity to warrant copyright protection' is a factual question to be determined at trial." Griffin v. Sheeran, 351 F. Supp. 3d 492, 497 (S.D.N.Y. 2019).

Moreover, where, as here, the parties' experts disagree as to whether a particular musical element is original, summary judgment is inappropriate. See Ulloa v. Universal Music & Video Distribution Corp., 303 F. Supp. 2d 409, 413-14 (S.D.N.Y. 2004) ("It would be improper for this Court, on a motion for summary judgment, to draw its own conclusions from this competing evidence regarding the originality of the Vocal Phrase."). The parties' experts disagree as to whether the combination of the chord progression and harmonic rhythm present in both compositions is original and thus protectable. They squarely

- 7 -

dispute whether that combination was commonplace before LGO: SAS's experts opined that "the progression class shared between [the songs] is uncommon," Dkt. No. 200 Ex. 7 ¶¶ A.6-7, whereas Sheeran's expert opined "that the combination of commonplace elements in LGO . . . is found in prior art," Dkt. No. 179 Ex. 10 ¶ 26.

Sheeran's expert alleges the existence of three prior works—"Downtown," "Since I Lost My Baby," and "Georgy Girl"—that use the chord progression in LGO, a I-iii-IV-V chord progression, together with the same anticipation of chord changes on the second and fourth chords as used in LGO. Dkt. No. 179 Ex. 10 ¶¶ 26-38. SAS's expert opposes the characterization of those songs as prior art of LGO. He argues that LGO's backing pattern is not present in "Downtown," its chord progression is different from that in "Since I Lost My Baby," and its harmonic rhythm is on an alternative beat compared to the one in "Georgy Girl." Dkt. No. 200 Ex. 5 ¶¶ 10-12. The experts' disagreement on whether the backing pattern is sufficiently uncommon to warrant copyright protection is a genuine dispute as to a material fact, preventing summary judgment. Fed. R. Civ. P. 56(a)

### ii) Substantial Similarity between LGO and TOL

When a copyright claim is "limited to the particular selection or arrangement" of elements, the "protection given is

'thin,'" becuase a "'subsequent [author] remains free to use [the public domain elements] to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 136 (2d Cir. 2003) (quoting Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 349 (1991)) (alteration in original). Thus, substantial similarity in selection and arrangement cases "will be established only by very close copying" of the plaintiff's work. Beaudin v. Ben & Jerry's Homemade, Inc., 95 F.3d 1, 2 (2d Cir. 1996); Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 107 (2d Cir. 2014). In determining the substantial similarity of works that have both protectable and unprotectable elements, the Court's analysis must be "discerning" and we "must attempt to extract the unprotectable elements from our consideration and ask whether the protectable elements, standing alone, are substantially similar." Knitwaves, Inc., 71 F.3d at 1002. Even so, the Court is principally guided "by comparing the contested design's 'total concept and overall feel' with that of the allegedly infringed work," Tufenkian Import/Export Ventures, Inc., 338 F.3d at 133; Knitwaves, Inc., 71 F.3d at 1003.

The parties' expert musicologists have opined on the similarity between the musical elements in LGO's and TOL's backing patterns and have come to competing conclusions. SAS's

experts opine that the backing patterns are "harmonically equivalent," Dkt. No. 200 Ex. 3 ¶ 6, whereas Sheeran's expert maintains that they are objectively different, Dkt. No. 179 Ex. 8 ¶ 14. Although the two musical compositions are not identical, a jury could find that the overlap between the songs' combination of chord progression and harmonic rhythm is very close. Accordingly, questions remain that are not resolvable by summary judgment, but require trial.

**Chord Progression**

The LGO Deposit Copy features a I-iii-IV-V7 (or a 1-3-4-5) chord progression. Dkt. No. 208 (Defendants' Rule 56.1 Reply to Plaintiff's Rule 56.1 Response) ¶ 32. TOL features a I-I6-IV-V7 chord progression. Id. ¶ 33. The "I6" chord is a major chord and the "iii" chord is a minor chord. Id. ¶ 35.

The parties dispute the effect of that slight adjustment between the chord patterns. SAS alleges that these chord progressions are harmonically equivalent because, as illustrated by music textbooks, the "I6" chord may substitute for the "iii" chord "without affecting the function of the progression." Id. ¶ 33; Dkt. No. 200 Ex. 5 ¶ 6; Dkt. No. 200 Ex. 7 ¶ 4. Sheeran maintains that the chord progressions are different and none of the chord progressions in TOL are I-iii-IV-V7. Dkt. No. 208 ¶ 33; Dkt. No. 179 Ex. 2 ¶ 39.

Sheeran also argues that there is a significant harmonic difference between the chord progressions because the "I6" chord is a major chord, and the "iii" chord is a minor chord. Dkt. No. 208 ¶ 35; Dkt. No. 179 Ex. 8 ¶ 14. But SAS's expert Dr. Everett contends that the minor "iii" chord could be equivalent to the major "I6" because of the "interchangeability of the two triads." Dkt. No. 200 Ex. 7 ¶¶ A.4-5.

### Harmonic Anticipation of Chord Changes

The LGO Deposit Copy sets the I-iii-IV-V7 chord progression to extend over two measures (or bars) according to a "slow" 4/4 time signature. Dkt. No. 208 ¶ 41. TOL sets the I-I6-IV-V7 chord progression to a "fast" 4/4 time signature. Id.

The parties dispute whether the songs' harmonic rhythms, the timing of the chord changes in the songs, are substantially similar. SAS claims that the harmonic rhythms are the same but are notated using two different time signatures. Id.; Dkt. No. 3 ¶¶ 10-11. In Sheeran's view, the harmonic rhythms are different because the chord progression in LGO is played over four bars as compared to two bars in TOL and LGO's Deposit Copy does not notate a fast or slow 4/4 time, which refers to the tempo of the song. Dkt. No. 179 Ex. 2 ¶ 49. SAS dismisses any arguments that the difference in notation makes the rhythmic pattern dissimilar because, it claims, the rhythms are identical in sound. Dkt. No. 200 Ex. 5 ¶ 5. It also argues that syncopated chord changes,

occurring on a weak beat, are in both songs. Dkt. No. 200 Ex. 7 ¶ D.1.

As evidenced by the differences in opinions of the parties' experts, the question of whether TOL is substantially similar to LGO cannot be resolved summarily and is left for trial.

**4) Touring Profits Damages**

As a remedy for infringement, a copyright owner is entitled to recover statutory damages or "actual damages and any additional profits of the infringer." 17 U.S.C.A. § 504(a) (2018). SAS seeks a damages award in the amount of actual damages plus profits, including all profits relating to touring revenue, such as concert ticket and concert merchandise sales. Dkt. No. 102 (Third Amended Complaint).

In the event that the complaint is not dismissed, both parties seek partial summary judgment on various issues related to profits. Sheeran moves for summary judgment to dismiss SAS's claim that the damages award can include touring profits. SAS opposes the motion and cross moves for summary judgment that

> (i) to the extent there is any burden on Plaintiff to establish a link between the separate acts of infringement that arose when Sheeran performed TOL at concerts and the direct profits from the concerts, that burden has been satisfied;
> (ii) the numerous references throughout Mr. Massarsky's report to Plaintiff's purported failure to meet its causal burden should be struck as

>inappropriate (as Mr. Massarsky is not a legal expert) and wrong;[1] and
>(iii) if Plaintiff prevails on its copyright infringement claim, it will be entitled – at a minimum – to the "straight-line" apportionment of direct profits arising from the direct infringements advanced by Mr. Massarsky, based on the number of songs Mr. Sheeran performed at each Ed Sheeran concert.

In other words, if TOL is found to infringe LGO, the parties disagree over whether touring profits—the sale of concert tickets and concert merchandise—can be recovered and in what amount. SAS alleges that it can recover revenue generated from concert tickets and merchandise because they are direct profits. SAS argues it does not need to prove a causal nexus between the separate acts of infringing public performances and the direct revenues collected from them. Rather, the burden is on Sheeran to prove the proper apportionment of those direct profits to the TOL infringements.

Sheeran contends that all the touring profits are indirect profits. Nonetheless, regardless of how the profits are classified, Sheeran argues SAS must prove a causal nexus between the infringement and the profits and SAS has not adduced any evidence that shows TOL specifically caused concertgoers to purchase Sheeran concert tickets and merchandise sold at his concerts.

---

[1] SAS's motion to strike is denied. There is nothing improper about Massarsky opining that there is no evidence of a causal link between tour profits and the alleged infringement.

- 13 -

### 1) Classification of Profits

Depending on how attenuated profits are from the infringing act, an infringer's profits may be direct or indirect. Complex Sys., Inc. v. ABN Ambro Bank N.V., No. 08 CIV. 7497 KBF, 2013 WL 5970065, at *2 (S.D.N.Y. Nov. 8, 2013). Direct profits arise from the sale of the infringing good. Cohen v. G & M Realty L.P., 320 F. Supp. 3d 421, 446 (E.D.N.Y. 2018), aff'd sub nom. Castillo v. G&M Realty L.P., 950 F.3d 155 (2d Cir. 2020); Garcia v. Coleman, No. C-07-2279 EMC, 2009 WL 799393, at *2 (N.D. Cal. Mar. 24, 2009) (quoting Mackie v. Rieser, 296 F.3d 909, 914 (9th Cir. 2002). Indirect profits are "derived from the use of the copyrighted work to promote sales of other products." Graham v. Prince, 265 F. Supp. 3d 366, 388 (S.D.N.Y. 2017).

Profits that arise from the performance of a song are direct whereas profits that may have come about because the performance acted as a draw for other profit centers are indirect. Accordingly, profits from the sale of concert tickets are direct. The profit is arising because the artist was paid to perform songs and there is an expectation, although not a guarantee, that an artist will play their most popular ballads. In comparison, profits from the sale of concert merchandise are indirect because the source of profits is from the sale of another good separate from the infringing performance.

### 2) Causal Nexus

A copyright owner is entitled to recover "any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504 (2018). The Copyright Act goes on to describe a burden-shifting analysis: "In establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." Id.

A plaintiff thus has the burden of showing a causal nexus between the infringement and the gross revenue. Lawton v. Melville Corp., 116 F.3d 1472 (2d Cir. 1997) (Because "only those profits attributable to the use of the infringed work" can be awarded, a copyright owner "must show some nexus between the gross revenues and the infringement."); Viktor v. Top Dawg Ent. LLC, No. 18 CIV. 1554, 2018 WL 5282886, at *1 (S.D.N.Y. Oct. 24, 2018) ("Significant here, before the burden shifts to the infringer, a plaintiff must first demonstrate a causal relationship between the infringement and the defendants' revenues."). It is insufficient for a copyright owner to "simply show gross revenues from the sale of everything the defendant sells." Id. "[T]he term 'gross revenue' under the statute means gross revenue reasonably related to the infringement, not

unrelated revenues." On Davis v. The Gap, Inc., 246 F.3d 152, 160 (2d Cir. 2001) (holding plaintiff failed to discharge its burden by submitting evidence of the defendant's gross revenues when the revenue included sales that were in no way promoted by the infringing advertisement). In cases of direct profits, the burden to satisfy the nexus requirement is minimal and may be obvious. See Lowry's Reps., Inc. v. Legg Mason, Inc., 271 F. Supp. 2d 737, 751 (D. Md. 2003) ("In the case of 'direct profits,' such as result from the sale or performance of copyrighted material, the nexus is obvious."); Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1173 (1st Cir. 1994), abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick, 559 U.S. 154 (2010) ("In the context of infringer's profits, the plaintiff must meet only a minimal burden of proof in order to trigger a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement.").

### Concert Tickets

SAS has the burden of producing evidence that shows revenue from the sale of tickets to concerts where TOL was performed. SAS put forward such evidence in the form of an expert report, which calculated that the portion of concert ticket revenue attributable to the live performance of TOL ranged from 13.3%, based on a method of calculating according to the Spotify

streaming statistics, to 23.97%, based on calculating according to the RIAA certified sales. Dkt. No. 205 Ex. 1 at 9-10.

Sheeran disputes this method of calculation. They put forward a competing expert report that calculates TOL's share of the profits by dividing the Adjusted Show Profits (a figure provided by them that subtracts expenses from the total live income) by the number of songs performed by Ed Sheeran, or, in the alternative, by the number of songs performed by Mr. Sheeran and by the opening act(s). Dkt. No. 205 Ex. 2 at 6, 15-20.

SAS disputes Sheeran's method of calculation and Sheeran's deduction of business management fees, management commissions, and UK taxes from the Adjusted Gross Profits figure on the grounds that those items are not directly attributable to TOL. Dkt. No. 205 Ex. 1 at 8.

In light of the dispute between the parties, the proper calculation of damages should be determined by trial rather than on summary judgment.

### Concert Merchandise

SAS has not identified any admissible evidence that ties the alleged infringement, the live performance of TOL, to the revenues generated by the sale of concert merchandise.

Without a showing of "any causal connection between the infringement and the defendant's profits," it is only speculative whether the revenue is reasonably related to the

infringement. On Davis v. The Gap, Inc., 246 F.3d 152, 159 (2d Cir. 2001). Copyright law does not allow for speculative recovery, and we can surmise a myriad of reasons why a concertgoer would purchase concert merchandise, reasons that have nothing to do with the live performance of TOL.

Accordingly, if TOL is found to be an infringement of LGO, the jury cannot take into account the revenue from concert merchandise sales when making the damages calculation. See Bayoh v. Afropunk LLC, No. 18 CV 5820, 2020 WL 6269300, at *7 (S.D.N.Y. Oct. 26, 2020) ("In cases that involve indirect profit claims, the district court opinions have underscored that "the decision to 'send[ ] such claims to a jury should be extremely rare.'" (alteration in original)).

## CONCLUSION

Sheeran's motion for summary judgment dismissing SAS's claim for infringement is denied. Sheeran's motion in the alternative to dismiss SAS's claim to include concert merchandise revenue in a calculation of damages is granted, but its motion to dismiss the inclusion of concert ticket sales is denied.

Sheeran's motion to exclude Dr. Covach's and Dr. Everett's Revised Reports and testimony is granted conditionally on their present submissions. If, within thirty days from the date of entry of this Order, they submit reports which comply strictly

with this Order and the September 9, 2021 Order, their reports will be received in evidence and they may testify. Those of Sheeran's objections and disputes with their reports which have not been specifically addressed by the Court are left to be dealt with on cross-examination.

SAS's summary judgment motion for a finding that if the jury finds TOL infringes LGO, SAS has established a link between the infringing concert performances of TOL and profits arising from concert ticket sales is granted. It is denied in all other respects.

So Ordered.

Dated: New York, New York
September 29, 2022

*Louis L. Stanton*
LOUIS L. STANTON
U.S.D.J.