UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| STRUCTURED ASSET SALES, LLC, | Case No. 1:18-cv-5839 (LLS) |
| Plaintiff, | |
| v. | |
| EDWARD CHRISTOPHER SHEERAN, *p/k/a* ED SHEERAN, SONY/ATV MUSIC PUBLISHING, LLC, ATLANTIC RECORDING CORPORATION *d/b/a* ATLANTIC RECORDS, BDI MUSIC LTD., BUCK MUSIC GROUP LTD., THE ROYALTY NETWORK, INC., DAVID PLATZ MUSIC (USA) INC., AMY WADGE, JAKE GOSLING and DOES 1 THROUGH 10 | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
THEIR MOTION FOR RECONSIDERATION, OR IN THE
ALTERNATIVE, CERTIFICATION OF AN INTERLOCUTORY APPEAL**

PRYOR CASHMAN LLP
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith
7 Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward
Christopher Sheeran, Sony/ATV Music
Publishing LLC, Atlantic Recording
Corporation, BDi Music Ltd., Bucks Music
Group Ltd., The Royalty Network, Inc.,
David Platz Music (USA) Inc., Amy Wadge
and Jake Gosling*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ ii

ARGUMENT ...................................................................................................................1

I.  LEGAL STANDARD.............................................................................................1

II.  THE COURT SHOULD RECONSIDER ITS NUMEROSITY RULING;
IN THE ALTERNATIVE, CERTIFICATION SHOULD BE GRANTED ......................2

III.  SAS'S EXPERTS CONCEDED THAT THE COMBINATION
OF ELEMENTS WAS NOT "NEW" AND PREEXISTED LGO ...................................6

IV.  THE SOLE EVIDENCE CITED IN THE ORDER SUGGESTING AN
ISSUE OF FACT DOES NOT ACTUALLY SUPPORT THAT FINDING ....................7

V.  THE ORDER OVERLOOKED THAT SAS *ADMITTED* THE
HARMONIC RHYTHMS ARE NOT REMOTELY IDENTICAL ................................8

VI.  DR. EVERETT'S "STUDY" OF PRIOR SONGS *IS* "PRIOR
ART" ABOUT WHICH HE IS BARRED FROM TESTIFYING ...................................9

VII.  THE COURT SHOULD RECONSIDER OR, AT A MINIMUM,
CLARIFY ITS RULING REGARDING TOURING PROFITS.....................................10

A.  Profits From Concert Ticket Sales Are Indirect, Not Direct .......................................11

B.  In The Event The Court Adheres To Its Ruling That Profits
From Concert Ticket Sales Are Direct, SAS Still Failed
To Satisfy Its Burden To Offer Actual Evidence Of A Causal Nexus ........................13

C.  Defendants Should Be Permitted To Rebut Any Presumption Of
A Causal Nexus Between Concert Ticket Sales
And Sheeran's Performance Of TOL ........................................................................16

CONCLUSION...............................................................................................................18

## <u>TABLE OF AUTHORITIES</u>

<u>CASES</u>                                                                                          <u>PAGE(s)</u>

*Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*,
    No. 12-cv-8852 (JMF), 2014 WL 1881075 (S.D.N.Y. May 9, 2014) ......................................1

*Beyond Blond Prods., LLC v. Heldman*,
    479 F. Supp. 3d 874 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods.,*
    *LLC v. ComedyMX, LLC*, No. 21-55990,
    2022 WL 1101756 (9th Cir. Apr. 13, 2022) ............................................................3

*Cottrill v. Spears*,
    No. 02-cv-3646 (BMS), 2003 WL 21223846 (E.D. Pa. May 22, 2003), *aff'd*,
    87 F. App'x 803 (3d Cir. 2004) ............................................................................3

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
    36 F.3d 1147 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier v.*
    *Muchnick*, 559 U.S. 154 (2010) .........................................................................13

*In re Dynex Capital, Inc. Securities Litig.*,
    No. 05-cv-1897 (HB), 2006 WL 1517580 (S.D.N.Y. Jun. 2, 2006) .........................................2

*Erickson v. Blake*,
    839 F. Supp. 2d 1132 (D. Or. 2012) ......................................................................3

*Gray v. Perry*,
    No. 15-cv-05642 (CAS), 2020 WL 1275221 (C.D. Cal. Mar. 16, 2020),
    *aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022) .........................................9

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
    808 F. Supp. 2d 542 (S.D.N.Y. 2011), *aff'd sub nom. Jovani Fashion, Ltd. v.*
    *Fiesta Fashions*, 500 F. App'x. 42 (2d Cir. 2012) ...............................................6, 8

*Lawton v. Melville Corp.*,
    116 F.3d 1472 (2d Cir. 1997) ............................................................................13

*Lois v. Levin*,
    No. 2:22-cv-926 (SVW), 2022 WL 4351968 (C.D. Cal. Sept. 16, 2022) ...............................4

*Mei Xing Yu v. Hasaki Rest., Inc.*,
    319 F.R.D. 111 (S.D.N.Y. 2017), *rev'd on other grounds*,
    944 F.3d 395 (2d Cir. 2019) ............................................................................1

*Morrill v. Stefani*,
    338 F. Supp. 3d 1051 (C.D. Cal. 2018) .................................................................3

## TABLE OF AUTHORITIES

**CASES**                                                                 **PAGE(s)**

*Pearson Educ., Inc. v. Liu*,
   No. 08-cv-6152 (RJH), 2010 WL 623470 (S.D.N.Y. Feb. 22, 2010).......................................2

*Schoolcraft v. City of New York*,
   298 F.R.D. 134 (S.D.N.Y. 2014) ..............................................................................................1

*Shrader v. CSX Transp., Inc.*,
   70 F.3d 255 (2d Cir. 1995).........................................................................................................1

*Skidmore v. Led Zeppelin*,
   952 F.3d 1051 (9th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 145 (2020),
   *reh'g denied*, 208 L. Ed. 2d 482 (2020).................................................................................2, 3

*Smith v. Weeknd*,
   19-cv-2507 (PA), 2020 WL 4932074 (C.D. Cal. July 22, 2020), *aff'd sub nom.*
   *Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021)....................................................3

*Stoliarov v. Marshmello Creative, LLC*,
   No. 19-cv-3934 (PSG), 2021 WL 2514167 (C.D. Cal. Apr. 8, 2021) .....................................13

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000) ......................................................................................................3

*Threeline Imports, Inc. v. Vernikov*,
   No. 15-cv-2333(AMD) (RML), 2016 WL 11472749 (E.D.N.Y. Oct. 28, 2016) ......................3

*Viktor v. Top Dawg Ent. LLC.*,
   No. 18-cv-1554, 2018 WL 5282886 (S.D.N.Y. Oct. 24, 2018).................................................3

## STATUTES & RULES

17 U.S.C. § 504(b) ..........................................................................................................................18

28 U.S.C. § 1292(b) ..........................................................................................................................1

## TREATISE

6 *Patry on Copyright* § 22:145 (September 2022 Update) ...........................................................18

## CONSTITUTION

U.S. CONST. art. 1 § 8 ......................................................................................................................4

Defendants respectfully submit this memorandum of law in support of their motion to reconsider certain rulings made by the Court in its Order dated September 29, 2022 (the "Order") or, in the alternative, to certify an interlocutory appeal to the Court of Appeals for the Second Circuit to determine whether the combination of two admittedly commonplace musical elements can satisfy the "numerous" requirement under the selection and arrangement test for infringement.[1]

## ARGUMENT

## I.    LEGAL STANDARD

On a motion for reconsideration, the movant must "demonstrate that the Court overlooked controlling decisions or material facts that were before it on the original motion, [which] might materially have influenced its earlier decision." *Schoolcraft v. City of New York*, 298 F.R.D. 134, 136 (S.D.N.Y. 2014) (citations & quotations omitted); *accord Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).

With respect to certification of an interlocutory appeal, "[i]t is well established that a district court has discretion to certify an order for interlocutory appeal if the moving party shows that the order (1) involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation." *Atlantica Holdings, Inc. v. Sovereign Wealth Fund Samruk-Kazyna JSC*, No. 12-cv-8852 (JMF), 2014 WL 1881075, at *1 (S.D.N.Y. May 9, 2014) (quoting 28 U.S.C. § 1292(b); other citations omitted); *accord Mei Xing Yu v. Hasaki Rest., Inc.*, 319 F.R.D. 111, 117 (S.D.N.Y. 2017), *rev'd on other grounds*, 944 F.3d 395 (2d Cir. 2019). Where, as here, "substantial resources may be expended in vain both by the parties and this Court if [this Court's]

---

[1] Undefined capitalized terms have the meanings given to them in the Rule 56.1 Statement Of Undisputed Facts dated November 15, 2021.  *See* ECF 201.

initial conclusion [regarding a controlling question of law] proves incorrect," certification should be granted. *In re Dynex Cap., Inc. Sec. Litig.*, No. 05-cv-1897 (HB), 2006 WL 1517580, at *3 (S.D.N.Y. June 2, 2006); *accord Pearson Educ., Inc. v. Liu*, No. 08-cv-6152 (RJH), 2010 WL 623470, at *2 (S.D.N.Y. Feb. 22, 2010).

## II.    THE COURT SHOULD RECONSIDER ITS NUMEROSITY RULING; IN THE ALTERNATIVE, CERTIFICATION SHOULD BE GRANTED

It is undisputed and the Order acknowledges that "SAS's infringement claim is based on [Defendants'] alleged copying of the combination of two elements … (1) the chord progression; and (2) the particular way in which anticipation is used in connection with the chord progression." Order at 6.  The Order also acknowledges that "[t]he parties agree that those elements, standing alone, are <u>commonplace and unprotectable</u>." *Id.* (emphasis added).

There is thus no dispute that SAS's claim is a "selection and arrangement" copyright claim, which extends copyright protection, not to the constituent commonplace and unprotectable elements of a work, but only to an original combination of those unprotectable elements.  And to prevent any author from monopolizing commonplace musical elements, the law requires, among other things, that the "combination" of commonplace and individually unprotectable elements be both: (i) sufficiently numerous; and (ii) sufficiently original to qualify for copyright protection.

SAS conceded that the "selection and arrangement" test requires that the combination must consist of <u>numerous</u> unprotectable elements, and that those numerous elements must be arranged in an original and <u>new</u> fashion.  *See, e.g.*, *Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1074 (9th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 145 (2020), *reh'g denied*, 208 L. Ed. 2d 482 (2020) ("We have extended copyright protection to a combination of unprotectable elements only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship") (citation, quotation & ellipsis omitted); *id.* at 1075

2

("We have explained that only the <u>new</u> combination, that is the <u>novel</u> arrangement, and not <u>any</u> combination of unprotectable elements qualifies for copyright protection") (internal citations, quotations & ellipsis omitted; emphasis in original). *See also Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 552 n.3 (S.D.N.Y. 2011), *aff'd sub nom. Jovani Fashion, Ltd. v. Fiesta Fashions*, 500 F. App'x. 42 (2d Cir. 2012) ("the bar for copyrightability due solely to selection and arrangement is quite high") (citation & quotation omitted); *Threeline Imps., Inc. v. Vernikov*, No. 15-cv-2333 (AMD) (RML), 2016 WL 11472749, at *13 (E.D.N.Y. Oct. 28, 2016).

While the Order concluded that no "bright-line" test exists and that two elements could therefore potentially qualify as sufficiently numerous, the overwhelming weight of authority holds that there must be <u>at least</u> four or five distinct elements combined together in a coherent, purposeful fashion (and even four or five elements may not suffice). *See, e.g.*, *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 485 (9th Cir. 2000) (combination of five elements qualified for protection); *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 883 (C.D. Cal. 2020) (combination of two elements did <u>not</u> qualify for protection), *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13, 2022); *Smith v. Weeknd*, No. 19-cv-2507 (PA), 2020 WL 4932074, at *7 (C.D. Cal. July 22, 2020), *aff'd sub nom. Clover v. Tesfaye*, 2021 WL 4705512 (9th Cir. Oct. 8, 2021) (combination of three elements did <u>not</u> qualify for protection); *Morrill v. Stefani*, 338 F. Supp. 3d 1051, 1061 (C.D. Cal. 2018) (combination of five elements did <u>not</u> qualify for protection); *Erickson v. Blake*, 839 F. Supp. 2d 1132, 1139 (D. Or. 2012) (combination of four elements qualified for protection); *Cottrill v. Spears*, No. 02-cv-3646 (BMS), 2003 WL 21223846, at *9 (E.D. Pa. May 22, 2003), *aff'd*, 87 F. App'x

803 (3d Cir. 2004) (combination of four elements did <u>not</u> qualify for protection).[2]

Although the Order's statement that there is "no bright-line rule" is, on its face, consistent with the above cited cases (where combinations of four or five elements in different cases both did and did not satisfy the numerosity requirement), it is inconsistent with the definition of "numerous" and the intentionally "thin" copyright protection afforded for selection and arrangement claims. Affording copyright protection to a combination of only two unprotectable basic musical building blocks, such as the ones at issue here, would undermine a central purpose of copyright law – which is to encourage the creation of new works (U.S. CONST. art. 1 § 8) – and would instead strangle creation. And, here, the two unprotectable elements at issue are essentially one element, which is the admittedly unremarkable and commonplace manner in which the commonplace chord progression is performed, a form of syncopation in use for hundreds of years.

To be clear, there are only a limited number of ways in which a commonplace chord progression can be performed, and one of those ways is to utilize the commonplace technique of

---

[2] The sole case of which counsel is aware to reach a contrary conclusion is both procedurally inapposite and relies on a misreading of the District Court's dicta in *Gray v. Perry* regarding the numerosity requirement. *See Lois v. Levin*, No. 2:22-cv-926 (SVW), 2022 WL 4351968, at *6 (C.D. Cal. Sept. 16, 2022). To begin, in *Lois*, unlike here, the Court confronted the issue on a Rule 12(b)(6) motion to dismiss. Moreover, also unlike here, the parties had not conducted expert discovery or submitted expert musicology reports to the Court, and the plaintiffs had not conceded (and the Court had not yet ruled) that both of the elements at issue were commonplace (whereas, with respect to the two distinct elements at issue here, SAS concedes they are commonplace, and the Court already has so ruled). Thus, in that context, the Court in *Lois* declined to hold, on a motion to dismiss, that the two specific elements at issue could not satisfy the "numerous" requirement. The Court also predicated its holding on dicta from *Gray* suggesting that "the number of elements" was a "less material" consideration than originality. However, the dicta in *Gray* did not suggest that two unprotectable elements could ever be sufficient for a selection and arrangement claim, as the Court made that observation in discussing that the combination of <u>five</u> or <u>six</u> unprotectable elements sometimes could and sometimes could not suffice. Finally, also unlike here, the issue of originality, which the Court in *Lois* held to be critically important, had not yet been developed whereas here, as discussed below, SAS cannot establish originality under the selection and arrangement test.

4

anticipation (and to do so in the manner utilized by LGO and in many other songs). To find that the combination of an exceedingly common chord progression with an exceedingly common anticipation technique – and it is undisputed that these elements are commonplace – could satisfy the numerosity requirement for a selection and arrangement copyright claim would effectively read both the numerosity and originality requirements out of the law. Two commonplace musical building blocks – especially two that are directly connected, occur simultaneously and have been used in music for centuries, alone and together – simply cannot satisfy the numerosity requirement (nor can the combination satisfy the originality requirement). No one can or should be able to claim the exclusive right to a chord progression and the unremarkable and unprotectable manner in which it is performed. Defendants respectfully submit that the Order overlooked these critically important legal considerations and the requirements for selection and arrangement claims, requirements that courts have imposed thoughtfully to cabin the copyright protection afforded for selection and arrangement claims as a narrow exception to the non-protectability of commonplace musical elements. Respectfully, the Court should reconsider its ruling and grant Defendants summary judgment.[3]

In the alternative, certification should be granted because (a) whether the combination of two commonplace elements can qualify for copyright protection involves a controlling question of law, (b) there appears to be grounds for a substantial difference of opinion (this Court's assessment is at odds with other authorities cited above and in Defendants' motion for summary judgment, including rulings that the Ninth Circuit already has left standing in *Beyond Blond Prods.* and *Clover* , and the Order also lowers the bar for selection and arrangement claims, contrary to Second

---

[3] The numerosity requirement itself is a legal question, not a factual question to be decided by the trier of fact. It is a gating question, and whether or not a bright line test exists for numerosity does not convert the issue into a factual question.

Circuit authority as expressed in *Jovani Fashion*, *supra*), and (c) an immediate appeal of this issue will materially advance the ultimate termination of this litigation (as well as the companion *Griffin* case where the identical issue has been raised) since it is outcome determinative.

### III.    SAS'S EXPERTS CONCEDED THAT THE COMBINATION OF ELEMENTS WAS NOT "NEW" AND PREEXISTED LGO

As noted above, a selection and arrangement claim requires, among other things, the combination of numerous unprotectable elements arranged in an <u>original</u> and <u>new</u> fashion.  The Court found an issue of fact on this discrete point, concluding "SAS's expert [Dr. Covach] opposes the characterization of [certain] songs as prior art of LGO."  Order at 8 (citing ECF 200, Ex. 5 ¶¶ 10-12).  However, the Order overlooked that SAS's other expert (Dr. Everett) <u>conceded</u> that the exact combination at issue preexisted LGO (and, in fact, Dr. Covach did not actually dispute that the same combination preexisted LGO).

Specifically, Dr. Everett admitted that "Georgy Girl" also "us[ed] the I-iii-IV-V chord progression" and "share[d] the same pattern of syncopated [*i.e.*, anticipated] chord changes."  ECF 200, Ex. 7 at page 19.  As for Dr. Covach (the expert whose report the Court cited at page 8 of the Order), it appears that the Order relied on SAS's distortion of Dr. Covach's opinions rather than what Dr. Covach actually said.  In his report, Dr. Covach <u>did not dispute</u> that the versions of "Since I Lost My Baby" and "Georgy Girl" cited by Dr. Ferrara – the 1966 Ray French version of "Since I Lost My Baby," and the 1967 101 Strings Orchestra version of "Georgy Girl" – include the exact same combination of chords and anticipation as LGO.  *See generally* ECF 200 Ex. 5 ¶¶ 11-12; ECF 200 Ex. 10 ¶¶ 30, 35-36.  Instead, Dr. Covach merely noted that there were other versions of

those songs that did not include the same combination.  *Id.*[4]

As such, beyond the question of numerosity, SAS cannot establish a *prima facie* selection and arrangement infringement claim because it cannot satisfy the originality requirement.  For this additional, independent reason, the Court overlooked that SAS failed to raise an issue of fact as to whether the combination of the two elements at issue was "new" to LGO and, thus, summary judgment should have been granted to Defendants.[5]

## IV.    THE SOLE EVIDENCE CITED IN THE ORDER SUGGESTING AN ISSUE OF FACT DOES NOT ACTUALLY SUPPORT THAT FINDING

Even assuming, *arguendo*, that there could be some unique instance in which a combination of only two unprotectable elements could satisfy both the numerosity and originality requirements, Defendants' motion for summary judgment still should have been granted because the sole evidence cited in the Order does not actually address the question of whether the combination **in this case** was "commonplace" prior to LGO.

At page 7 of the Order, the Court found an issue of fact because "[t]he parties' experts disagree as to whether the combination of the chord progression and harmonic rhythm present in both compositions is original and thus protectable."  In the next sentence, the Court explained that the experts "squarely dispute whether that combination was commonplace before LGO," with "SAS's experts opin[ing] that 'the progression class shared between [the songs] is uncommon.'"

---

[4] For the avoidance of doubt, the published sheet music cited by Dr. Covach for each song corresponds to the other versions of "Since I Lost My Baby" and "Georgy Girl," not the versions cited by Dr. Ferrara that include the identical combination of chord progression and anticipation.

[5] Beyond the fact that Dr. Covach did not actually dispute that the exact combination of elements appears in the prior art identified by Dr. Ferrara, the Order also appears to have overlooked that this Court's earlier, September 9, 2021 Order foreclosed Dr. Covach (and Dr. Everett) from testifying as to the originality or novelty of the combination of the two unprotectable elements.

Order at 7-8 (citing ECF 200, Ex. 7 ¶¶ A.6-7; emphasis added).[6]

However, the cited "progression class" analysis in the Everett Report solely addresses the chord progression in isolation (*i.e.*, the sequence of the chords, I-iii-IV-V). It does not address the combination of the chord progression and harmonic rhythm. Thus, the very evidence cited by the Order does not address whether the combination at issue here is uncommon. As such, no evidence exists from which an issue of fact can be found as to whether the combination at issue is "uncommon." For this reason alone, summary judgment should have been granted.[7]

## V.    THE ORDER OVERLOOKED THAT SAS *ADMITTED* THE HARMONIC RHYTHMS ARE NOT REMOTELY IDENTICAL

The Order recognizes that "[w]hen a copyright claim is limited to the particular selection or arrangement of elements, the protection given is thin because a subsequent author remains free to use the public domain elements to aid in preparing a competing work, so long as the competing work does not feature the same selection and arrangement." Order at 8-9 (citations, quotations & brackets omitted; emphasis added).[8] Put differently, to find substantial similarity in such instances, "the defendant's work would necessarily have to be 'virtually identical' to the plaintiff's work."

---

[6] Critically, this finding also overlooks that the Court already barred SAS's experts from opining on prior art "to prove that an element of LGO is unusual." Order at 4 (emphasis added). SAS cannot establish a *prima facie* case without proving originality, and it cannot prove originality.

[7] Despite Dr. Everett's unsupported assertion that the chord progression is "uncommon" – an assertion this Court explicitly barred him from offering because, having failed to conduct a proper prior art analysis, no basis for such an assertion exists – SAS's other expert conceded that the progression is "very common" (ECF 200, Ex. 3 ¶ 6), and the Court recognized that the parties "agree" that the chord progression, standing alone, is "commonplace" and "unprotectable." Order at 6. Further discrediting Dr. Everett's improper assertion, Dr. Everett submitted an earlier opinion in this case in which he admitted that this chord progression at issue was one of the "most common" to begin with a I chord. *See* ECF 183-3, Ex. 3 ¶ A.6.

[8] This statement in the Order refers only to substantial similarity but does not address the other undisputed requirements for a selection and arrangement claim: numerosity and originality.

*Gray v. Perry*, No. 2:15-cv-05642 (CAS), 2020 WL 1275221, at *3 (C.D. Cal. Mar. 16, 2020), *aff'd sub nom. Gray v. Hudson*, 28 F.4th 87 (9th Cir. 2022) (emphasis added; quoting *Skidmore*, 952 F.3d at 1076 n.13).

While recognizing the necessity that the allegedly infringing work be identical or virtually identical, the Order appears to have been misled by SAS's fabrication of a nonexistent disagreement regarding the identity of the harmonic rhythms.    Defendants identified key differences between the harmonic rhythms.    While SAS's experts professed to dispute certain of the differences identified by Defendants – as the Court noted at pages 11-12 of the Order – SAS completely failed to address the significant differences between the harmonic rhythms identified at Paragraphs 46-50 of the Renewed 56.1 Statement.    While SAS purported to "dispute" these Paragraphs by incorporating by reference its Response to Paragraph 41, SAS's Response to Paragraph 41 does not address any of the differences actually identified in Paragraphs 46-50.    In short, SAS admitted that these differences exist – as they indisputably do.

Selection and arrangement copyright claims are to be carefully circumscribed to avoid granting one author a monopoly over the use of unprotectable elements and thereby removing them from the body of musical building blocks available to subsequent songwriters.    That limitation is accomplished by requiring, among other things, that the commonplace elements be used in a virtually identical manner.    Here, SAS admitted that the harmonic rhythms are not identical or virtually identical, which the Court overlooked.    For this additional, independent reason, summary judgment should have been granted.

## VI.    DR. EVERETT'S "STUDY" OF PRIOR SONGS *IS* "PRIOR ART" ABOUT WHICH HE IS BARRED FROM TESTIFYING

In its September 9, 2021 Opinion & Order, the Court ruled that "the proof as to the existence of prior art shall be only that submitted by defendants."    ECF 197 at 4.    In its recent

Order, the Court nevertheless ruled that "[t]he study on Pages 3-4, Paragraphs 6-7 of the Everett Report is acceptable, for it describes chord progressions, not prior art." Order at 5.[9]

The cited "study" is a highly constricted and incomplete study of <u>prior</u> songs using certain chord progressions. The mere fact that Dr. Everett: (a) limited his analysis to "chord progressions" (without analyzing the entirety of the songs he "studied") and (b) did not identify the titles of the prior songs he supposedly "studied" does not convert his "study" into anything other than a patently noncompliant analysis of "prior art." This Court already carefully considered and rejected Dr. Everett's prior art "study" as infirm and impermissible in its September 9, 2021 Order. SAS simply ignored that earlier ruling in its opposition to Defendants' summary judgment motion, transparently attempting to navigate around this Court's earlier Order. Unfortunately, in denying summary judgment, based in part on its reliance on the "study," this Court's Order rewarded SAS for its violation of the Court's September 9, 2021 Order.

Accordingly, the Order overlooked that the "study" <u>is</u> a patently infirm "prior art" analysis that the Court already barred, and all references to and reliance on that "study" should be excluded.

## VII.  THE COURT SHOULD RECONSIDER OR, AT A MINIMUM, <u>CLARIFY ITS RULING REGARDING TOURING PROFITS</u>

With respect to the Court's ruling regarding profits from the sale of concert tickets, Defendants ask the Court to reconsider and/or clarify the following matters.

*First*, the Court should rule that profits arising from concert ticket sales are <u>not</u> direct, but indirect, and because SAS has not offered any evidence to support a causal nexus between those profits and any alleged infringement, Defendants are entitled to summary judgment dismissing any

---

[9] Notably, as alluded to above in Section IV., that is the same evidence – and the sole evidence – that the Court cited to find an issue of fact as to whether the "combination" of elements was "uncommon." As detailed above, this evidence does not even address the "combination," but only the chord progression (*i.e.*, chord sequence) in isolation.

claim for Defendants' profits derived from the sale of concert tickets.

*Second*, in the alternative and even assuming that profits from the sale of concert tickets are "direct," established case law cited in the Order confirms that it remains SAS's burden to establish a causal nexus between the sale of concert tickets and the alleged infringing performance – and although that burden may be minimal, it is not nonexistent.  Because SAS offered no evidence to support a causal nexus, Defendants are entitled to summary judgment on this issue.

*Third*, in the alternative, if the Court adheres to its ruling that profits arising from concert ticket sales are direct and that SAS satisfied its burden in that regard, Defendants seek clarification that any such presumption of a causal nexus is one which Defendants still may <u>rebut</u> at trial.

### A.    Profits From Concert Ticket Sales Are Indirect, Not Direct

As the Order provides, "[d]irect profits arise from the sale of the infringing good," and "[i]ndirect profits are derived from the use of the copyrighted work to promote sales of other products."  Order at 14 (citing authorities; quotations omitted).  As the Order further provides, "[p]rofits that arise from the performance of a song are direct whereas profits that may have come about because the performance acted as a draw for other profit centers are indirect."  *Id.*

Defendants agree that profits "from the <u>performance</u>" of TOL at Sheeran's concerts are direct.  Consistent with the foregoing, Sheeran's performances of TOL (and every other song performed at his concerts) generate the payment of performance income to his Performing Rights Organization (BMI) and to that of Sheeran's co-writer, Amy Wadge (ASCAP), and their respective United States publishers.  That performance income, directly linked to the performance of TOL during Sheeran's concerts, is direct revenue, and Defendants always have acknowledged that point and provided full disclosure of TOL's United States performance income.  However, ticket sales that occur weeks or months before Sheeran's concerts are not directly linked to the <u>performance</u>

11

of TOL, even if some ticket buyers may hope or expect that Sheeran will perform TOL in concert. Rather, concert tickets are "other profit centers" for which the performance of the song may act "as a draw."

Consistent with the cases cited by the Order, profits derived from the performance of TOL on the radio (and the purchase of single recordings of TOL, record albums on which TOL is one track or streaming revenues from TOL) represent "direct" profits because the profit center is the sale or actual performance of the song (like the BMI and ASCAP performance income discussed above). In stark contrast, and also consistent with the cases cited by the Order, profits from the sale of concert tickets fall squarely within the definition of "indirect" profits because the potential (or even presumed or supposedly "guaranteed") performance of a song at a concert *is a draw to sell another product*: the concert tickets themselves.

Moreover, the mere fact that there may be an "expectation" (or even "guarantee") that Sheeran will perform TOL as one of many songs performed live during his concerts – and SAS provided no evidence showing any nexus between the number or identification of the songs to be performed and the price charged for the tickets – does not render the ticket sale profits "direct." The concert tickets still represent a separate and distinct good being sold, separate and apart from the allegedly infringing song. Although concert tickets – distinct goods – <u>may</u> have been purchased by some unknown number of concertgoers because of an expectation that TOL would be performed as one of many songs (and SAS failed to meet its burden to submit any evidence on its motion to demonstrate any such "expectation" or any such number or proportion of concertgoers who purchased tickets to see Sheeran perform TOL live), TOL, at most, "acted as a draw" for the sale of tickets. And that "other good" is not the song, or the performance of a song (the performance income for which already is included in the gross revenues of TOL); it is a

concert ticket.

The Order's conclusion that "profits from the sale of concert tickets are direct" is not consistent with the cases cited in the Order and prevailing law. Those profits are, in fact, "indirect," as the sole case to consider this question previously recognized. *See Stoliarov v. Marshmello Creative, LLC*, No. 19-cv-3934 (PSG), 2021 WL 2514167, at *2 (C.D. Cal. April 8, 2021). Defendants respectfully request that the Court reconsider its ruling and find that profits from the sale of concert tickets are indirect. And, as discussed above and more fully below, because SAS has failed to offer <u>any</u> proof that a single concertgoer purchased a ticket <u>because of</u> TOL, summary judgment should be granted to Defendants dismissing SAS's touring profits claim.[10]

### B. In The Event The Court Adheres To Its Ruling That Profits From Concert Ticket Sales Are Direct, SAS Still Failed <u>To Satisfy Its Burden To Offer Actual Evidence Of A Causal Nexus</u>

The Order – and the cases it cites – acknowledge that a copyright plaintiff "has the burden of showing a causal nexus between the [alleged] infringement and [an alleged infringer's] gross revenue." Order at 15 (citing *Lawton v. Melville Corp.*, 116 F.3d 1472 (2d Cir. 1997); *Viktor v. Top Dawg Ent. LLC.*, No. 18-cv-1554, 2018 WL 5282886, at *1, (S.D.N.Y. Oct. 24, 2018)). Further, the Order also cites *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1173 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier v. Muchnick*, 559 U.S. 154 (2010), which makes clear that, while a plaintiff must meet only "a <u>minimal</u> burden of proof" where profits are found to be "direct," it still bears the burden of offering actual <u>evidence</u> of a causal nexus. (Emphasis added). Put simply, the burden on SAS may have been minimal, but it was not

---

[10] While cases, including this one, have authorized discovery as to concert revenues, there is no case of which counsel is aware, prior to this Court's Order, that has held that a plaintiff may seek to recover concert ticket revenues in an infringement case, much less that such profits are "direct." And the reason is clear: ticket sales are indirect, and no plaintiff, including SAS, has ever provided any evidence showing that any concertgoer purchased tickets because of a particular song.

nonexistent.  Thus, Defendants seek clarification and/or reconsideration of the ruling in the Order that SAS satisfied its burden of proof solely because of the determination that profits from the sale of concert tickets are "direct."  To be clear, even if profits from the sale of concert tickets are "direct," that does not create a presumption that a causal nexus exists or satisfy the requirement that SAS establish – with actual admissible evidence – a causal nexus between the sale of tickets and the alleged infringement.

Although the Court, at page 15 of the Order, recognized that a copyright plaintiff must prove a "causal nexus between the [alleged] infringement and gross revenue," that requirement was then jettisoned on page 16 of the Order, when the Court ruled that SAS need only "produc[e] evidence that <u>shows revenue</u> from the sale of tickets to concerts where TOL was performed." Order at 16 (emphasis added).  The Court moved directly from a determination that profits from the sale of concert tickets were "direct" to a finding that SAS had somehow, without any evidence, satisfied its burden of proving a causal nexus between the sale of concert tickets and the alleged infringement.  The cases cited by the Order show that the law is clearly to the contrary: a finding that profits are direct does not create a presumption of a causal nexus.  Instead, evidence must be offered by the plaintiff to show that a causal nexus exists, even if the plaintiff's evidentiary burden is minimal in that regard.  Here, SAS must do <u>more</u> than merely show the <u>amount</u> of gross revenue; it also must show a <u>causal nexus between that revenue and the alleged infringement</u>.

Yet, in opposition to Defendants' motion for summary judgment and in support of its cross-motion, SAS did not provide <u>any</u> evidence showing a causal nexus.  SAS provided no evidence that a single prospective concertgoer bought a ticket because of TOL or because he or she wanted to see Sheeran perform TOL live.  Had there been such evidence, no doubt SAS would have provided it.  Of course, dozens of reasons exist for why a person may buy a ticket to see a concert:

14

to see a beloved artist perform live; to be entertained; to have a night out at a show with friends or loved ones; to be part of a group experience with an audience; to see the supporting act perform; and many other possible reasons.  However, regardless of whether the profits at issue are direct or indirect, SAS still had the burden to provide some admissible evidence showing that at least some portion of ticket buyers bought their tickets because of TOL.  That necessary causal nexus is nonexistent in the record.

Instead of requiring SAS to provide any evidence showing a causal nexus – and despite the cases cited in the Order which make unambiguously clear that even claims for "direct" profits require a plaintiff to establish a causal nexus with actual admissible evidence – the Order simply assumes that such nexus exists based on the further assumption that TOL would be played at concerts.  And instead of requiring SAS to provide some modicum of evidence showing a causal nexus between the purchase of concert tickets and the prospect (or even supposed certainty) that TOL would be performed, the Order provides that SAS need only show gross revenues from the sale of tickets and then shifts the burden to Defendants to provide evidence to reduce the gross revenues attributable to the alleged infringement.  Thus, the Court's determination that the profits at issue are "direct" seems to have served double-duty, filling a hole in SAS's evidence by creating a presumption, unsupported by any evidence offered by SAS, that also substituted for any requirement of SAS having to offer proof of a causal nexus.

To be clear, the mere expectation (or even supposed "guarantee") that Sheeran would perform TOL does not mean that a single concertgoer purchased tickets because of TOL, much less because of the chord progression and harmonic rhythm alleged to be infringing.  Concertgoers typically understand that a given artist will perform certain songs, but that does not mean they purchased tickets because of that song (or that they even wanted to see that song performed live).

15

Nor does it mean that that they would <u>not</u> have purchased a ticket to see Sheeran perform live if they knew that TOL would not be performed.  Here, SAS offered no evidence on any of these matters, failing to show that a single ticket was purchased because of TOL (or more pointedly, because of the two commonplace elements claimed by SAS to be similar) and failing to rule out that tickets would have been purchased regardless of whether Sheeran performed TOL.

Finally, the "expert report" that the Court cited on page 16 of the Order (ECF 186-2) as supplying the necessary proof of "gross revenue" does not even purport to opine that a causal nexus exists between concert ticket sales and the alleged infringement.  Instead, SAS's expert report – like the Order – simply presumes the existence of a causal nexus and then opines on the proper <u>allocation</u> of profits based on TOL streaming data and RIAA sales (two things that have nothing to do with the sale of concert tickets or a causal nexus).

Defendants respectfully submit that the Order improperly eliminated SAS's burden of showing a causal nexus between the purchase of concert tickets and the alleged infringement and, instead, substituted in its place an assumption for which no evidentiary support exists in the record.  Because SAS has not adduced <u>any</u> evidence of a causal nexus, summary judgment should have been granted to Defendants dismissing SAS's claim for touring profits (and that remains true even if the Court adheres to its ruling that such profits are "direct").[11]

### C.    Defendants Should Be Permitted To Rebut Any Presumption Of A Causal Nexus Between Concert Ticket Sales And Sheeran's Performance Of TOL

Even if the Court adheres to its determination that profits from the sale of concert tickets are "direct," and even if the Court concludes that SAS satisfied its burden of showing a causal nexus by virtue of a presumption derived from the conclusion that such profits are "direct" –

---

[11] Moreover, if any evidence of concert revenues is permitted at trial, SAS should be required to prove the required nexus before the burden of proof shifts to Defendants to rebut such nexus.

despite SAS's failure to provide any admissible evidence showing such causal nexus – then Defendants request that the Court clarify that such findings create, at most, a presumption of a causal nexus which Defendants still may rebut at trial.

In its cross-motion for summary judgment, SAS sought only an Order that "to the extent there is any burden on [SAS] to establish a link between the separate acts of [alleged] infringement that arose when Sheeran performed TOL at concerts and the direct profits from the concerts, that burden has been satisfied." (ECF 205 at 32-33; emphasis added). Nowhere did SAS contend that any such presumed finding would be conclusive or preclude Defendants from rebutting any alleged causal link between the alleged infringement and profits arising from the sale of concert tickets.

Despite SAS's narrow request for relief, page 19 of the Order could be interpreted to have granted more than what SAS sought. Specifically, the Court ruled: "SAS's summary judgment motion for a finding that if the jury finds TOL infringes LGO, SAS has established a link between the infringing concert performances of TOL and profits arising from concert ticket sales is granted."

However, even assuming that SAS had satisfied its burden to establish a causal nexus, that only shifts the burden of proof to Defendants to rebut the presumption of such causal nexus. *See* Order at 16 (citing *Data Gen.*, 36 F.3d at 1173 ("the plaintiff must meet only a minimal burden of proof in order to trigger a rebuttable presumption that the defendant's revenues are entirely attributable to the infringement")). In fact, the Order itself recognized that there is nothing improper about Defendants' expert opining that no evidence of a causal link exists between touring profits and the alleged infringement. Order at 13 n.1.

Yet, at the same time, the Order seems to suggest that a causal nexus has been established and that the only question (if liability is proved) is what portion of the profits is attributable to the alleged infringement, which would foreclose Defendants from offering evidence to rebut the

presumption of a causal nexus.  However, consistent with Section 504(b) of the Copyright Act and prevailing case law, Defendants still should be permitted to <u>rebut</u> the presumption that a causal link exists and, thus, prove that SAS has no entitlement to any profits from concert tickets (not merely to challenge the portion of profits allegedly awardable to SAS).

As the Patry treatise explains, a "defendant may attempt to prove that consumers would have purchased its goods even if it had not infringed," and that "line of attack goes, usually, to the existence" – or absence – "of <u>any</u> profits attributable to the infringement."  6 *Patry on Copyright* § 22:145 (September 2022 Update) (emphasis added).  Here, too, even if there is a finding that concert ticket sales constitute "direct profits" and that SAS satisfied its burden of proof, Defendants still should be permitted to challenge the presumption of a causal nexus so that the jury can determine whether there is, in fact, any evidentiary basis on which profits from the sale of concert tickets are fairly and properly attributable to the alleged infringement.  Because SAS only sought summary judgment declaring that its initial burden to establish a causal link "ha[d] been satisfied," and because the law unambiguously permits Defendants to disprove such causal link, the Court should grant clarification and/or reconsideration on this point.

<u>**CONCLUSION**</u>

Defendants respectfully submit as follows:

(i)    the Court should grant reconsideration of the portion of the Order addressing liability and, upon granting reconsideration, grant summary judgment to Defendants for at least one of the following four independent reasons: (a) the combination of two admittedly commonplace elements cannot, as a matter of law, suffice to satisfy the "numerous" requirement under the selection and arrangement test; (b) SAS's experts conceded that the combination of elements at issue in LGO was not "new," novel or original but, instead, preexisted LGO; (c) the

sole evidence the Court cited to find an issue of fact regarding whether the combination of the elements at issue was "uncommon" does not actually support that finding; and/or (d) SAS admitted that the harmonic rhythms are not identical or virtually identical, which precludes SAS from satisfying the "virtual identity" requirement of the selection and arrangement test;

(ii)      in the alternative, the Court should certify an interlocutory appeal to the Court of Appeals for the Second Circuit as to whether the combination of only two admittedly commonplace musical elements – a chord progression and harmonic rhythm – can suffice, as a matter of law, to satisfy the "numerous" requirement under the selection and arrangement test

(iii)     in the event this case is not dismissed, the Court should grant reconsideration of the portion of the Order addressing the expert report of Dr. Everett and, upon granting reconsideration, consistent with its September 9, 2021 Order, exclude all references to the "study" conducted by Dr. Everett which is, in fact, an improper and noncompliant "prior art" study; and

(iv)     in the event this case is not dismissed, the Court should grant reconsideration of the portion of the Order addressing profits from the sale of concert tickets and, upon granting reconsideration, it should rule that: (a) profits arising from concert ticket sales are <u>not</u> direct, but indirect, and that summary judgment dismissing SAS's claim for touring profits is appropriate because SAS has not offered any evidence to support a causal nexus; (b) in the alternative, if the Court adheres to its ruling that profits arising from concert ticket sales are direct, SAS still failed to satisfy its burden of proving that a causal nexus exists, which entitles Defendants to summary judgment dismissing SAS's claim for touring profits; or (c) in the alternative, if the Court adheres to its ruling that profits arising from concert ticket sales are direct and that SAS satisfied its burden of proving a causal nexus, Defendants still may <u>rebut</u> that any causal nexus exists.

Dated: New York, New York
   October 13, 2022

           PRYOR CASHMAN LLP

           By: */s/ Donald S. Zakarin*
             Donald S. Zakarin
             Ilene S. Farkas
             Andrew M. Goldsmith
           7 Times Square
           New York, NY 10036
           (212) 421-4100

           *Attorneys for Defendants Edward*
           *Christopher Sheeran, Sony/ATV Music*
           *Publishing LLC, Atlantic Recording*
           *Corporation, BDi Music Ltd., Bucks Music*
           *Group Ltd., The Royalty Network, Inc.,*
           *David Platz Music (USA) Inc., Amy Wadge*
           *and Jake Gosling*