UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

STRUCTURED ASSET SALES, LLC,

                Plaintiff,

    v.

EDWARD CHRISTOPHER SHEERAN,
*p/k/a* ED SHEERAN, SONY/ATV MUSIC
PUBLISHING, LLC, ATLANTIC
RECORDING CORPORATION *d/b/a*
ATLANTIC RECORDS, BDI MUSIC
LTD., BUCK MUSIC GROUP LTD., THE
ROYALTY NETWORK, INC., DAVID
PLATZ MUSIC (USA) INC., AMY
WADGE, JAKE GOSLING and DOES 1
THROUGH 10

                Defendants.

Case No. 1:18-cv-5839 (LLS)

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN FURTHER
SUPPORT OF THEIR MOTION FOR RECONSIDERATION, OR IN
THE ALTERNATIVE, CERTIFICATION OF AN INTERLOCUTORY APPEAL**

PRYOR CASHMAN LLP
    Donald S. Zakarin
    Ilene S. Farkas
    Andrew M. Goldsmith 7
Times Square
New York, NY 10036
(212) 421-4100

*Attorneys for Defendants Edward
Christopher Sheeran, Sony/ATV Music
Publishing LLC, Atlantic Recording
Corporation, BDi Music Ltd., Bucks Music
Group Ltd., The Royalty Network, Inc.,
David Platz Music (USA) Inc., Amy Wadge
and Jake Gosling*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ....................................................................................... ii

I.    SUMMARY JUDGMENT SHOULD HAVE BEEN GRANTED ON
      LIABILITY FOR AT LEAST FOUR INDEPENDENT REASONS........................... 1

      A.  The Court Has Overlooked, And SAS Completely Ignores And Has
          Thus *Admitted* That The Harmonic Rhythms Are Not Remotely Identical............. 1

      B.  SAS *Admitted* That The Two-Element Combination Was Not "New"
          To LGO ................................................................................................ 3

      C.  The Order *Eliminated* The "Numerous" Requirement ............................................. 5

      D.  No Evidence Exists From Which A Properly Instructed Jury Could
          Find An Issue Of Fact As To Whether The Two-Element Combination
          Was Uncommon....................................................................................... 7

II.   DR. EVERETT'S "STUDY" OF PRIOR SONGS *IS* A "PRIOR ART"
      ANALYSIS ABOUT WHICH HE HAS BEEN BARRED FROM
      TESTIFYING ........................................................................................... 9

III.  THE COURT SHOULD RECONSIDER ITS TOURING PROFITS
      RULING ................................................................................................ 10

      A.  Profits From Concert Ticket Sales Are Indirect, Not Direct .................................. 11

      B.  Regardless Of Whether Touring Profits Are Direct Or Indirect,
          SAS Still Failed To Satisfy Its Burden To Offer Evidence Of A
          Causal Nexus ........................................................................................ 14

      C.  At A Minimum, Defendants Should Be Permitted To Rebut Any
          Presumption Of A Causal Nexus ........................................................... 16

CONCLUSION.......................................................................................................... 17

i

## **TABLE OF AUTHORITIES**

**CASES**                                                                                   **Page(s)**

*Beaudin v. Ben & Jerry's Homemade, Inc.*,
   95 F.3d 1 (2d Cir. 1996)..................................................................................6

*Beyond Blond Prods., LLC v. Heldman*,
   479 F. Supp. 3d 874 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods.,*
   *LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13,
   2022) ...............................................................................................................6

*Data Gen. Corp. v. Grumman Sys. Support Corp.*,
   36 F.3d 1147 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier v.*
   *Muchnick*, 559 U.S. 154 (2010) ..............................................................14, 16

*Disabled in Action v. City of N.Y.*,
   360 F. Supp. 3d 240 (S.D.N.Y. 2019)...................................................................9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc*,
   499 U.S. 340 (1991) ..........................................................................................1

*Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*,
   772 F.2d 505 (9th Cir. 1985) .........................................................................14, 15

*Gen. Elec. Co. v. Joiner*,
   522 U.S. 136 (1997)...........................................................................................9

*Estate of Jaquez v. City of N.Y.*,
   104 F. Supp. 3d 414 (S.D.N.Y. 2015), *aff'd*, 706 F. App'x. 709 (2d Cir. 2017).......8

*Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*,
   808 F. Supp. 2d 542 (S.D.N.Y. 2011), *aff'd sub nom. Jovani Fashion, Ltd. v.*
   *Fiesta Fashions*, 500 F. App'x. 42 (2d Cir. 2012)..................................................6

*Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*,
   71 F.3d 996 (2d Cir. 1995)...................................................................................6

*Lowry's Reps., Inc v. Legg Mason, Inc.*,
   271 F. Supp. 2d 737 (D. Md. 2003) ....................................................................13

*Major League Baseball Props. Inc., v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008)..................................................................................8

*Mattel, Inc. v. Goldberger Doll Mfg. Co.*,
   365 F.3d 133 (2d Cir. 2004)..................................................................................3

*Matthew Bender & Co. v. W. Publ'g. Co.*,
  158 F.3d 674 (2d Cir. 1998)...................................................................................9

*Rose v. Hewson*,
  No. 17cv1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018) ...........................6

*Skidmore v. Led Zeppelin*,
  952 F.3d 1051 (9th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 145 (2020), *reh'g
  denied*, 208 L. Ed. 2d 482 (2020) ...................................................................1, 2, 3

*Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*,
  338 F.3d 127 (2d Cir. 2003)................................................................................2, 3

*Zalewski v. Cicero Builder Dev., Inc.*,
  754 F.3d 95 (2d Cir. 2014)..................................................................................2, 6

## **TREATISE**

6 *Patry on Copyright* § 22:145 (September 2022 Update) ...........................................16

## I.     SUMMARY JUDGMENT SHOULD HAVE BEEN GRANTED ON LIABILITY FOR AT LEAST FOUR INDEPENDENT REASONS

SAS has never disputed that it must satisfy three necessary legal requirements for its selection and arrangement claim: (i) the combination of <u>numerous</u> unprotectable elements, (ii) arranged in an original and <u>new</u> fashion, and (iii) <u>identical</u>, or near identical, copying by the defendant.  *See, e.g. Skidmore v. Led Zeppelin*, 952 F.3d 1051, 1076 n.13 (9th Cir. 2020), *cert. denied*, 208 L. Ed. 2d 145 (2020), *reh'g denied*, 208 L. Ed. 2d 482 (2020).  Put differently, to satisfy the requirements for a "selection and arrangement" claim, a plaintiff must demonstrate that "the works share, in <u>substantial amounts</u>, the 'particular,' *i.e.*, the '<u>same</u>,' combination of unprotectible elements."  *Id.* at 1075 (quoting *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc*, 499 U.S. 340, 349 & 350-51 (1991) (emphasis added)).  Moreover, "only the <u>new</u> combination, that is the <u>novel</u> arrangement, and not <u>any</u> combination of unprotectible elements qualifies for copyright protection."  *Id.* (emphasis in original; citations, quotations & ellipsis omitted).  Here, SAS has not satisfied a single element required for a selection and arrangement claim.  As such, this Court should grant Defendants' motion for reconsideration and/or certify an interlocutory appeal to the Court of Appeals for the Second Circuit.

### A.     The Court Has Overlooked, And SAS Completely Ignores And Has Thus *Admitted* That The Harmonic Rhythms Are Not Remotely Identical

In three rounds of briefing, SAS has not <u>once</u> addressed or disputed that one of the only two claimed unprotectable elements at issue – the harmonic rhythm – is expressed significantly different in each work, as identified at Paragraphs 46-50 of the Renewed 56.1 Statement.

The anticipated chords in each song have <u>different</u> durations, they occur on <u>different</u> beats, and they anticipate <u>different</u> beats of <u>different</u> measures.  Further, LGO features a four-bar chord progression while TOL features a  two-bar chord progression.  None of those differences has ever

been disputed.  Syncopation (*i.e.*, anticipation) is a commonplace musical device (effectively a musical idea) that is unprotectable and, here, the <u>expression</u> of that musical device in TOL and LGO is not even substantially similar let alone identical or virtually identical.

Defendants raised those marked differences on their original summary judgment motion, on their renewed summary judgment motion and again on this motion.  (ECF 181 at 12-13, ECF 188 at 17-18, ECF 202 at 27-28, ECF 206 at 17-18, ECF 213 at 8-9).  And because it cannot dispute that TOL expresses the commonplace and unprotectable musical device of syncopation in a different manner than LGO, all three times, SAS has remained mute on this subject.  (*See generally* ECF 186, 205 and 214).  In fact, SAS's opposition ignores Section V of Defendants' moving papers entirely.

Standing alone, SAS's concession bars SAS's selection and arrangement claim and entitles Defendants to summary judgment.  The Order acknowledges that, for selection and arrangement claims, wrongful copying – *i.e.*, substantial similarity – <u>only</u> exists where the defendant's work features "the <u>same</u> selection and arrangement."  Order at 8-9 (quoting *Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc.*, 338 F.3d 127, 136 (2d Cir. 2003) (emphasis added; other citation omitted)); *accord Skidmore*, 952 F.3d at 1076 n.13 ("the defendant's work would necessarily have to be '<u>virtually identical</u>' to the plaintiff's work in order to be substantially similar") (emphasis added; citations omitted); *Zalewski v. Cicero Builder Dev., Inc.*, 754 F.3d 95, 100, 103 & 107 (2d Cir. 2014) (because plaintiff had "thin copyright," "[o]nly very close copying would have taken whatever actually belonged to Plaintiff") (citation & quotation omitted).

Here, the second element of the claimed two-element combination – the harmonic rhythm – comprises the unprotectable musical device of syncopation, which SAS concedes is expressed differently in TOL and LGO.  By ignoring the significant differences between the harmonic

rhythms identified in Paragraphs 46-50 of the Renewed 56.1 Statement, SAS has <u>admitted</u> that the two-element combination, one element of which is an unprotectable musical device and the other an unprotectable chord progression, is <u>not</u> identical or virtually identical in each work.[1]

Because SAS has not challenged and cannot dispute that the two-element combination is not identical or virtually identical (owing to the differences in the harmonic rhythm) there is no triable issue for a jury.  The Court's denial of summary judgment overlooked well-settled Second Circuit and Ninth Circuit authority that, especially in selection and arrangement cases, it is the specific <u>expression of an idea, not the idea itself</u> – here a commonplace chord progression with a syncopated rhythm – that is afforded copyright protection.  *See, e.g.*, *Tufenkian*, 338 F.3d at 136; *Skidmore*, 952 F.3d at 1075-76; *see also Mattel, Inc. v. Goldberger Doll Mfg. Co.*, 365 F.3d 133, 135-36 (2d Cir. 2004) ("The protection that flows from [a compilation of unprotected elements] is, of course, quite limited," and "protects only the author's particularized expression of the idea") (citations omitted).  In this case, the <u>expression</u> of the syncopated rhythm is admittedly different and does not satisfy the virtual identity requirement.

### B.    SAS *Admitted* That The Two-Element Combination Was Not "New" To LGO

As the Court explained in *Skidmore*, "only the <u>new</u> combination, that is the <u>novel</u> arrangement, and not <u>any</u> combination of unprotectible elements qualifies for copyright protection." *Skidmore*, 952 F.3d at 1075 (emphasis in original; citations, quotations & ellipsis omitted). However, in holding that no bright-line test exists for the number of elements necessary to allege a selection and arrangement claim (Order at 6), the Order appears to have conflated the numerosity

---

[1] SAS's admission has not been made in the *Griffin* case (as yet, even though it is indisputably true), which makes this case significantly different from *Griffin*.  The fact that the Court denied summary judgment in *Griffin* (albeit before it ruled on the deposit copy question and before it issued *in limine* rulings barring a substantial amount of Dr. Stewart's testimony) has no bearing on this case where SAS has made admissions that bar its claims as a matter of law.

and originality requirements.  The "new" and "novel" requirement is distinct from – and in addition to – the requirement of numerous unprotectable elements.  *Id.* at 1074 (a combination of unprotectable elements qualifies for protection "<u>only if</u> those elements are numerous enough <u>and</u> their selection and arrangement original enough that their combination constitutes an original work of authorship") (citation & quotation omitted; emphasis added).  Here, SAS admitted in its opposition to the renewed summary judgment motion (and it confirms its concession in its opposition to this motion) that the two-element combination was not "new" to LGO but preexisted LGO.

SAS again admits that Dr. Covach <u>agreed</u> that the versions of "Since I Lost My Baby" and "Georgy Girl" identified by Dr. Ferrara preexisted LGO and include the same combination of the two elements at issue.  Because the Order does not address this admission, which bars any claim that LGO's use of the two elements was new or novel, SAS theorizes that the Court recognized the admission but chose to ignore it.  (ECF 214 at 8-9).  Whether recognized and ignored or overlooked, Dr. Covach's admission that LGO does not feature a "new" or "novel" selection and arrangement means that SAS also cannot satisfy a second of the three requirements for a selection and arrangement claim.  There simply is no "disagreement" on this issue.  As a result, there is no triable issue for the jury to decide.

SAS also tries to divert attention from the fact that Dr. Everett also admitted that at least one song predates LGO that includes the same combination of two elements, arguing that Defendants cited language "deleted" from Dr. Everett's original Report.  But both Everett Reports include the same dispositive admission: that at least one song preexisted LGO that uses the same exact combination of elements.  The original Everett Report (the one dated May 6, 2020) concedes that "Georgy Girl" "us[es] the I-iii-IV-V chord progression" and "share[s] the same pattern of

syncopated [*i.e.*, anticipated] chord changes" (ECF 179-5 at page 15), and the revised Everett Report (the one dated October 8, 2021) concedes that LGO and TOL "are among the only <u>three</u> songs to share the same syncopation of the repeated four-chord progression." (ECF 200-11 at page 16; emphasis added). The third song to which Dr. Everett alludes in his revised Report is, of course, "Georgy Girl" (and, as Dr. Covach has admitted, there are, in fact, multiple songs that preexist LGO that share the same combination).[2]

Thus, both of SAS's experts have admitted that the combination at issue is not "new" or "novel" to LGO. Because a selection and arrangement claim only protects unprotectable elements arranged in a new or novel way, there is no triable issue for a jury to decide.

Moreover, even without SAS's admissions, the Court overlooked that, on its direct case, SAS cannot prove that the two-element combination is "original" or "new" to LGO because the Court has barred SAS's experts from opining on prior art, except to "illustrate general principles of musicology" and to <u>respond</u> to the proper prior art studies conducted by Dr. Ferrara and Mr. Ricigliano. At the close of evidence on SAS's direct case, it necessarily will have failed to prove a required element of its selection and arrangement claim: that the two-element combination was new or novel to LGO. For this further reason, there is no triable issue for a jury.

C.    <u>The Order *Eliminated* The "Numerous" Requirement</u>

As noted above, the Order conflates the "numerous" requirement with the <u>distinct</u> "new" and "original" requirement, thereby eliminating the "numerous" requirement from the selection and arrangement test. However, the numerosity requirement exists for a reason: a limited number

---

[2] Dr. Everett has issued multiple reports which conflict with one another. He modified his original Report without leave of Court and without the consent of Defendants and later amended it a second time in response to the Court's September 9, 2021 Order (ECF 197); and he now has amended his Report a third time in response to the Court's September 29, 2022 Order. (ECF 211, 215-5). But all three of his reports contain this admission.

of unprotectable elements should not be monopolized and removed from the body of available musical building blocks.

Defendants do not dispute that a "bright-line" rule may not exist with respect to numerosity. But the "numerous" requirement exists, and the overwhelming weight of authority requires the combination of at least four or five distinct elements in a coherent, purposeful fashion.  (ECF 213 at 3-4 (citing authorities)).  Neither SAS nor the Order addresses <u>any</u> of the authorities Defendants cited on this point.  Nor do either of the cases the Order cites hold – or even insinuate – that the combination of two unprotectable elements can qualify for protection.  *See Knitwaves, Inc. v. Lollytogs Ltd. (Inc.)*, 71 F.3d 996 (2d Cir. 1995); *Rose v. Hewson*, No. 17cv1471 (DLC), 2018 WL 626350 (S.D.N.Y. Jan. 30, 2018).  And contrary to SAS's assertion that "[n]either party identified a case that addressed or ruled upon the two-element question" (ECF 214 at 17), Defendants cited *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 883 (C.D. Cal. 2020), *aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC*, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13, 2022), which held that the combination of only two unprotectable elements did not qualify for protection.  (ECF 213 at 3).[3]

The authorities Defendants have cited finding two, three, four and even five elements insufficient are consistent with the dictionary definition of "numerous," which has been defined to mean "great in number, many," "very many, being or existing in great quantity" and "consisting of great numbers of units or individuals."  (ECF 207-1).  In addition, *Merriam-Webster* identifies

---

[3] That Defendants quoted the District Court opinion and not the Second Circuit's affirmance in *Jovani*, and that *Jovani* itself cited a California case is insignificant.  *See Jovani Fashion, Ltd. v. Cinderella Divine, Inc.*, 808 F. Supp. 2d 542, 552 n.3 (S.D.N.Y. 2011), *aff'd sub nom. Jovani Fashion, Ltd. v. Fiesta Fashions*, 500 F. App'x. 42 (2d Cir. 2012).  Moreover, *Jovani* is consistent with Second Circuit precedent establishing a high bar for selection and arrangement claims more generally.  *See, e.g.*, *Zalewski*, 754 F.3d at 103; *Beaudin v. Ben & Jerry's Homemade, Inc.*, 95 F.3d 1, 2 (2d Cir. 1996).

"few" as an antonym for "numerous" and correspondingly defines "few" to mean "a small number of units or individuals." *See* www.merriam-webster.com/dictionary/numerous#synonyms and www.merriam-webster.com/dictionary/few, last accessed November 3, 2022. Two elements are few, the <u>opposite</u> of numerous.

The Order, respectfully, overlooked that the "numerous" requirement is distinct from the "original" requirement and by conflating these two separate inquiries, lowered the bar for selection and arrangement claims in a way that would allow authors to obtain a chokehold on future creation by removing basic musical building blocks from songwriters' toolkits. The Court should reconsider its ruling; however, in the event the Court declines to do so, the chilling effect its ruling will have on creativity and its importance to copyright law should be addressed now by the Second Circuit.[4]

### D.    No Evidence Exists From Which A Properly Instructed Jury Could Find An Issue Of Fact As To Whether The Two-Element Combination Was Uncommon

Not only do Defendants request that the Court reconsider its ruling that two elements can be sufficiently numerous, but Defendants seek reconsideration regarding the particular two elements at issue here.

SAS concedes that the sole evidence cited in the Order suggesting an issue of fact as to

---

[4] SAS's opposition to Defendants' renewed summary judgment motion and its opposition here, both admit that its infringement claim is limited to the two-element selection and arrangement claim, consisting of the commonplace chord progression and commonplace harmonic rhythm. While SAS's experts' reports continue to assert some alleged melodic similarities, SAS never even suggested that the supposed melodic similarities – which do not in fact exist – presented a basis for denying summary judgment. Only two explanations for SAS's silence exist: either SAS, recognizing that the melodies are not substantially similar, has abandoned any claim of infringement based on the supposed similarity of the melodies or, recognizing that the melodies are so indisputably different, SAS understood that to invoke the melody as part of a selection and arrangement claim would, standing alone, require the dismissal of its infringement claim because the melodies are not remotely close to being identical or virtually identical.

whether the two-element combination is uncommon does not actually address the two-element combination, but only the chord progression in isolation. SAS, instead, contrives that if Dr. Everett believes the chord progression to be uncommon in isolation, then he also "surely" believes the combination of the chord progression with the anticipation (syncopation) device to be uncommon. (ECF 214 at 10). But Dr. Everett's contention that the chord progression is "uncommon" is both wrong and irrelevant because this Court has already ruled that the chord progression is commonplace and unprotectable and, in fact, both Dr. Covach (and by Dr. Everett before he unilaterally modified his original Report) have admitted it is commonplace and unprotectable. In short, the evidence cited to support an "issue of fact" does not actually support one.

SAS then tries to support the Order's finding of an issue of fact by pointing to other "evidence," not cited by the Court, claiming that Dr. Everett <u>did</u> opine that the two-element combination was <u>uncommon</u>. However, the cited opinion of Dr. Everett is rank *ipse dixit*. Not having performed a proper prior art analysis, the Court already ruled that Dr. Everett cannot opine on prior art to show that the LGO elements are "uncommon" or "unusual." Order at 4. SAS cannot manufacture an issue of fact based on an opinion that Dr. Everett is incompetent to offer and one he has been barred from providing.

Thus, no evidence exists from which a properly instructed jury could find an issue of fact as to whether this two-element combination was "uncommon" prior to LGO. *See, e.g.*, *Major League Baseball Props. Inc., v. Salvino, Inc.*, 542 F.3d 290, 311 (2d Cir. 2008) ("[a]n expert's opinions that are without factual basis and are based on speculation or conjecture are similarly inappropriate") (citation omitted); *Estate of Jaquez v. City of N.Y.*, 104 F. Supp. 3d 414, 426 (S.D.N.Y. 2015), *aff'd*, 706 F. App'x. 709 (2d Cir. 2017) ("even otherwise qualified experts may not simply offer conclusory opinions" because "[c]onclusory opinions are a form of '*ipse dixit*,'

and often provide an insufficient basis upon which to assess reliability") (citations omitted); *Disabled in Action v. City of N.Y.*, 360 F. Supp. 3d 240, 244 (S.D.N.Y. 2019) ("nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert") (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).[5]

Accordingly, summary judgment should have been granted to Defendants on liability.

## II.    DR. EVERETT'S "STUDY" OF PRIOR SONGS *IS* A "PRIOR ART" ANALYSIS ABOUT WHICH HE HAS BEEN BARRED FROM TESTIFYING

The Court has ruled that "proof as to the existence of prior art shall be only that submitted by defendants," and that "[r]eferences to prior art [by SAS] will not be accepted when used to prove that an element of LGO is unusual or similar to that of TOL." (ECF 197 at 4 and ECF 211 at 4). That is law of the case. Dr. Everett's supposed "study" of "prior songs" *is* the very inadequate study of and reference to prior art that this Court has barred. To be very clear, a "study" of "prior songs" is, necessarily, a study of prior art. It cannot be anything else.

Even SAS does not seriously dispute that the "study" is a proscribed reference to "prior art." Instead, in an effort to contort into the Court's new exception, SAS simply quotes back the Court's Order, claiming "[i]t would seem that the Court believes" the study "is either not an example of 'prior art' at all, or a statement of 'general principles of musicology." (ECF 214 at 12). Either or both of those "explanations" would be erroneous. The "study" *is* the very same materially

---

[5] The Order recites that "Courts 'treat the question of whether particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection as a question for the factfinder." Order at 7 (quoting *Matthew Bender & Co. v. W. Publ'g. Co.*, 158 F.3d 674, 681 (2d Cir. 1998)). But there is no such factual dispute here, as it is law of the case that the individual elements are unprotectable, and the only admissible evidence in the record shows this combination is not new to LGO. Where there is no admissible evidence from which a properly instructed jury could rule in favor of the plaintiff, summary judgment should be awarded.

flawed prior art analysis barred by the Court, and it does not remotely reflect a "statement of 'general principles of musicology.'"  All references to and reliance on Dr. Everett's supposed "study" should be excluded in accordance with this Court's prior Orders.[6]

## III.    THE COURT SHOULD RECONSIDER ITS TOURING PROFITS RULING

When SAS moved to compel discovery of Defendants' revenues and costs relating to ticket sales for Ed Sheeran's live concerts, its motion correctly and repeatedly admitted that those profits were "indirect." (ECF 130 at 7-15).  It also admitted that it had to prove a causal nexus between those claimed profits and the alleged infringement.  The Court's Order granting discovery as to ticket revenue and costs, which, consistent with SAS's admission, were considered indirect, held that revenues and expenses from concert tickets were germane "if sufficiently causally related to an infringing performance." (ECF 144 at 7).

Having obtained the discovery it sought, in opposition to Defendants' motion for summary judgment, SAS tried to retract its admission, claiming instead that touring profits were "direct" and that a causal nexus was "obvious."  And instead of offering <u>any</u> evidence showing a causal nexus between the sale of tickets and the alleged infringing performance of TOL, SAS pointed solely to its "expert," who offered no evidence of any causal nexus but presumed the existence of a nexus and offered only a (deeply flawed) method for allocating tour revenues.

This Court's summary judgment Order's finding that profits from ticket sales are "direct" thus overlooked both SAS's prior admission that such profits are "indirect" and that the Court recognized SAS's prior admission in its prior discovery Order.  (Compare *id.* with ECF 211 at 14).

---

[6] SAS remarks that Defendants' arguments regarding Dr. Everett's improper prior art study are "strange[]" given that Defendants extensively discuss the "commonality" of chord progressions in their summary judgment briefing.  (ECF 214 at 12).  There is nothing "strange" about Defendants relying on established law, including this Court's Orders, and citing the well-founded, properly researched prior art analyses of their experts.

Further, the recent summary judgment Order (ECF 211) also eliminated any requirement that SAS establish a causal nexus between the sale of concert tickets and the alleged infringing performance of a particular song, TOL – a nexus that SAS correctly admitted was necessary and which the Court's own discovery Order held was required.  Alternatively, if the Court believed that SAS's expert had offered evidence of a causal nexus between ticket sales and the alleged infringing performance of TOL, it misunderstood that SAS's expert did not, in fact, offer any such evidence or identify any such evidence in the record – because there is none.

Summary judgment should have been granted to Defendants because (a) touring profits are "indirect" and no causal nexus has been shown, and (b) even if touring profits were "direct," SAS still had a burden (even if minimal) to adduce actual evidence showing a causal nexus, and it admittedly has none.  In the alternative, and at a bare minimum, the Court should clarify that, assuming SAS has satisfied its burden to prove a causal nexus, the burden has shifted to Defendants, and they still may rebut SAS's alleged showing of a causal nexus at trial.

### A.    <u>Profits From Concert Ticket Sales Are Indirect, Not Direct</u>

In its opposition to this motion, SAS ignores its prior admissions and the Court's discovery Order and also fails to address any of the points Defendants made that confirm that profits from the sale of concert tickets are properly classified as "indirect" profits.  SAS's opposition largely block-quotes the Order and, having managed to obscure that it improperly retracted its prior admissions made on its discovery motion by arguing the exact opposite in its cross-motion for summary judgment, credits the Court with having properly apprehended everything.

To start, SAS ignores the Order itself, which holds: "[d]irect profits arise from the sale of the infringing good," and "[i]ndirect profits are derived from the use of the copyrighted work ***to promote sales of other products***."  Order at 14 (citing authorities; emphasis added; quotations

11

omitted).  Nor does SAS attempt to address the Court's holding that "[p]rofits that arise from the performance of a song are direct **_whereas profits that may have come about because the performance acted as a draw for other profit centers are indirect_**."  _Id._ (emphasis added).  SAS's silence on these points is not an oversight; profits from the sale of concert tickets cannot possibly fit into the Court's own definition of direct profits.

SAS does not dispute that the sale of concert tickets is <u>not</u> the sale of the "copyrighted work" itself but rather the sale of "other products."  Profits from the sale of the "copyrighted work" itself would be the performance income generated by the performance of TOL during each concert and paid to PROs.  Nor does SAS dispute that TOL, at most, merely acts "as a draw for other profit centers," _i.e._, the sale of concert tickets.  Consistent with the Court's own definition of "direct" and "indirect," the profits from the sale of concert tickets are (at most), indirect, because they do not derive from the sale of the "copyrighted work" itself but from the sale of other products.  And, irrespective of whether the "copyrighted work" acted as "a draw" for this "other profit center," the concert tickets themselves are "another product" distinct from the copyrighted work.  Indeed, the varied reasons why a ticket buyer may have purchased tickets to a concert underscore precisely why profits from the sale of concert tickets can only be "indirect."  There is no "direct" connection between the performance of the allegedly infringing song and the ticket sale, unlike the direct connection between the sale of a recording containing the allegedly infringing song or the actual performance of the song during concerts for which performance income is paid to PROs.

Thus, while profits from the <u>performance</u> of TOL <u>during</u> Sheeran's concerts are direct – and Defendants have produced to SAS the public performance income paid to PROs for every single performance of TOL in concert – the sale of concert tickets, which occurs weeks or months before the performance of TOL at concerts, is not directly linked to the <u>performance</u> of TOL (or

any other song), even if some consumers may hope or expect that Sheeran will perform TOL in concert.  Concert tickets represent a separate and distinct good being sold; they do not represent the sale of the alleged infringing good itself (*i.e.*, TOL).

In distorting Defendants' argument about performance income paid by concert venues to ASCAP and BMI (ECF 214 at 15), SAS has unwittingly provided a compelling explanation why song-by-song performance income is direct and profits from ticket sales are indirect.  SAS suggests that Defendants' argument would result in zero performance income being paid to ASCAP and BMI from concert performances of TOL (and every other song).  In fact, Defendants' argument was the exact opposite.  Defendants <u>agree</u> that the <u>performance</u> of TOL <u>during</u> Sheeran's concerts generate direct revenue in the form of performance income payable by ASCAP and BMI (subject to deduction for costs).  There is a direct connection between the performance income produced and the performance of the alleged infringing work.  However, the concert ticket is a <u>distinct</u> good that, at best, has a tenuous and indirect connection to the performance of any Sheeran song – a point SAS wholly ignores.  The Order explains exactly why there is a distinction between direct and indirect profits and what that distinction is, but having done so, the Order then failed to properly apply that distinction.[7]

Also omitted from SAS's opposition is any attempt to address the indisputable fact that consumers purchase concert tickets for a multitude of reasons.  Some may be fans of the artist or the supporting act.  Some may want to experience a live show.  Some may want to enjoy an evening out with friends or family.  But SAS provided no evidence whatsoever to show that a single ticket

---

[7] There is nothing remotely "notable" about Defendants omitting mention in their moving memorandum of *Lowry's Reps., Inc v. Legg Mason, Inc.*, 271 F. Supp. 2d 737 (D. Md. 2003).  That case stands for the unremarkable proposition that a causal nexus between the alleged infringement and profits may be "obvious" for "direct profits."  The burden of showing a causal nexus may be slight when the nexus is obvious, but it is not nonexistent.

was bought by a single person because they wanted to hear TOL performed (and the reason SAS offered no such evidence is that it is highly unlikely that anyone bought a ticket solely to hear the performance of a single song that is readily available on every streaming service on demand and can be played endlessly on some services for free).  Again, SAS's "expert" provided no evidence showing any link between the alleged infringing performance of TOL and the purchase of a single concert ticket.

The Court should reconsider its ruling and find that profits from the sale of concert tickets are indirect.  Because SAS has failed to submit <u>any</u> proof that a single concertgoer purchased a ticket <u>because of</u> TOL, summary judgment should be granted to Defendants.

**B.    Regardless Of Whether Touring Profits Are Direct Or Indirect, SAS <u>Still Failed To Satisfy Its Burden To Offer Evidence Of A Causal Nexus</u>**

As Defendants explained, the Order acknowledges established case authority holding that while a plaintiff must meet only "a <u>minimal</u> burden of proof" where profits are found to be "direct," it still bears the burden of offering some actual <u>evidence</u> of a causal nexus.  *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1173 (1st Cir. 1994), *abrogated on other grounds by Reed Elsevier v. Muchnick*, 559 U.S. 154 (2010) (emphasis added).  The burden may be "minimal," but it is not nonexistent.  But here, SAS did not even meet that minimal burden.  SAS offered <u>no</u> evidence whatsoever to show – or even suggest – that a single concertgoer purchased a ticket <u>due to</u> TOL.  Instead, SAS's expert presumed the existence of a causal nexus and offered only a (flawed) methodology for <u>allocating</u> the gross amount of touring profits to TOL based on irrelevant streaming and RIAA data.  If the Court believed that SAS's expert provided some causal nexus evidence or identified any in the record, it was misled by SAS and mistaken.

Contrary to SAS's assertion, *Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc.*, 772 F.2d 505 (9th Cir. 1985) does not support the Order's conclusion.  In *Frank Music*, the Ninth Circuit

recognized that a prevailing plaintiff can recover an infringer's profits but <u>only</u> "to the extent they are attributable to the infringement." *Id.* at 514 (citations omitted). The Ninth Circuit did not eliminate the requirement of a causal nexus. In addition, the Ninth Circuit ruled that the "visual representations" accompanying the musical compositions during the performances of the musical *Kismet* (the work at issue in *Frank*) "place[d] the songs' use beyond the scope of the ASCAP license." *Id.* at 512. Unlike here, where Sheeran's performance of TOL at concerts produced performance income directly attributable to the performances of TOL, there were <u>no</u> direct profits generated from the performance of the compositions themselves during *Kismet* that were payable by PROs; instead, direct profits flowed from the fact that *Kismet* included set musical numbers to be performed at each and every performance of *Kismet*, which were guaranteed as part of the price of admission.

Moreover, as noted above, there is nothing "obvious" or direct about the supposed connection between the sale of concert tickets (a product distinct from the allegedly infringing work) and the eventual performance of TOL (or any other song) at a concert. SAS does not even attempt to address the fact that there are dozens of reasons why a person may buy a ticket to see a concert having nothing to do with a desire to see one single song performed. While seeing an artist perform a particular song live may have been part of the "draw" for some ticket buyers, the ticket itself is a product separate from the allegedly infringing performance of TOL, and the ticket purchase is, at most, only indirectly related to the alleged infringing performance. Yet, SAS provided nothing to link the ticket buying decision to the performance of TOL.

Because the Order altogether eliminated SAS's burden to adduce even a modicum of evidence supporting a causal nexus, and because SAS concededly offered no proof whatsoever of a causal nexus, the Court should grant reconsideration and, upon granting reconsideration, it

should dismiss SAS's claim for touring profits.

**C.    At A Minimum, Defendants Should Be Permitted
To Rebut Any Presumption Of A Causal Nexus**

Plainly surprised that it (a) dodged its own prior admissions that concert ticket profits were indirect and required that SAS establish a causal nexus with the alleged infringing song and (b) also obtained greater relief than it sought, SAS carefully omits mentioning that it <u>never</u> asked the Court to find, conclusively, that it was entitled to recover touring profits and that Defendants were barred from rebutting an alleged causal nexus.  In its cross-motion for summary judgment, SAS sought only an Order that "to the extent there is any burden on [SAS] to establish a link between the separate acts of [alleged] infringement that arose when Sheeran performed TOL at concerts and the direct profits from the concerts, <u>that burden has been satisfied</u>."  (ECF 205 at 32-33 (emphasis added)).  Even assuming a party satisfies its burden of proof – in this instance without the benefit of any evidence – the burden then shifts to the opposing party to <u>rebut</u> such showing.

However, SAS now has seized on what appears to be a lack of clarity in the Order to claim that its supposed satisfaction of showing a causal nexus is irrebuttable.  SAS never sought such relief and having never provided evidence of a causal nexus, Defendants had no reason to rebut such nonexistent evidence.  It would be manifestly inequitable to bar Defendants from offering such proof at trial when SAS never sought any such preclusive finding.  Consistent with settled law, if the Court adheres to its Order which dispenses with any necessity of SAS showing a causal nexus between profits and the alleged infringement, Defendants should be permitted to challenge any alleged causal nexus at trial by showing, for example, "that consumers would have purchased [concert tickets] even if [they] had not infringed."  6 *Patry on Copyright* § 22:145 (September 2022 Update); *accord Data Gen.*, 36 F.3d at 1173 (a "<u>rebuttable</u> presumption" of a causal nexus may arise) (emphasis added).

16

**CONCLUSION**

Defendants respectfully submit as follows:

(i)      the Court should grant reconsideration of the portion of the Order addressing liability and, upon granting reconsideration, grant summary judgment to Defendants on any one of the following four independent grounds: (a) SAS admitted that the use of the musical device or idea of syncopation (harmonic rhythm) in TOL and LGO is neither identical nor virtually identical but instead distinctly different, which alone precludes SAS from satisfying a necessary requirement for a selection and arrangement infringement claim; (b) the combination of two admittedly commonplace elements cannot, as a matter of law, suffice to satisfy the "numerous" requirement for a selection and arrangement claim, which is a requirement separate from and in addition to the originality requirement; (c) SAS's experts conceded that the combination of elements at issue in LGO was not "new," novel or original but, instead, preexisted LGO; and/or (d) the sole evidence the Court cited to find an issue of fact regarding whether the combination of the elements at issue was "uncommon" does not actually support that finding, and the alternative "evidence" cited by SAS is inadmissible because, having been barred from offering such "evidence," it is rank *ipse dixit*.

(ii)      in the alternative, the Court should certify an interlocutory appeal to the Court of Appeals for the Second Circuit as to whether the combination of the only two admittedly commonplace musical elements at issue here – a chord progression and harmonic rhythm – can suffice, as a matter of law, to satisfy the "numerous" requirement for a selection and arrangement claim;

(iii)      in the event this case is not dismissed, the Court should grant reconsideration of the portion of the Order addressing the expert report of Dr. Everett and, upon granting reconsideration,

consistent with its September 9, 2021 Order, exclude all references to the "study" conducted by Dr. Everett which is, in fact, an improper and noncompliant "prior art" study; and

(iv)     in the event this case is not dismissed, the Court should grant reconsideration of the portion of the Order addressing profits from the sale of concert tickets and, upon granting reconsideration, it should rule that: (a) profits arising from concert ticket sales are <u>not</u> direct, but indirect, and that summary judgment dismissing SAS's claim for touring profits is appropriate because SAS has not offered any evidence to support a causal nexus; (b) in the alternative, if the Court adheres to its ruling that profits arising from concert ticket sales are direct, SAS still failed to satisfy its burden of proving that a causal nexus exists, which entitles Defendants to summary judgment dismissing SAS's claim for touring profits; or (c) in the alternative, if the Court adheres to its ruling that profits arising from concert ticket sales are direct and that SAS satisfied its burden of proving a causal nexus, Defendants still may <u>rebut</u> that any causal nexus exists.

Dated: New York, New York
          November 3, 2022

                                        PRYOR CASHMAN LLP

                                        By: <u>*/s/ Donald S. Zakarin*</u>
                                             Donald S. Zakarin
                                             Ilene S. Farkas
                                             Andrew M. Goldsmith
                                        7 Times Square
                                        New York, NY 10036
                                        (212) 421-4100

                                        *Attorneys for Defendants Edward*
                                        *Christopher Sheeran, Sony/ATV Music*
                                        *Publishing LLC, Atlantic Recording*
                                        *Corporation, BDi Music Ltd., Bucks Music*
                                        *Group Ltd., The Royalty Network, Inc.,*
                                        *David Platz Music (USA) Inc., Amy Wadge*
                                        *and Jake Gosling*