ORIGINAL

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __5/16/23__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - X

STRUCTURED ASSET SALES, LLC,

               Plaintiff,              18 Civ. 5839 (LLS)

   - against -              OPINION & ORDER

EDWARD CHRISTOPHER SHEERAN, p/k/a
ED SHEERAN, SONY/ATV MUSIC
PUBLISHING, LLC, ATLANTIC RECORDING
CORPORATION d/b/a ATLANTIC RECORDS,
BDI MUSIC LTD., BUCKS MUSIC GROUP LTD.,
THE ROYALTY NETWORK, INC., DAVID
PLATZ MUSIC (USA) INC., AMY WADGE,
JAKE GOSLING and DOES 1 THROUGH 10,

               Defendants.
- - - - - - - - - - - - - - X

    This case presents the question of whether the song

"Thinking Out Loud" infringes the copyright of "Let's Get It

On." On September 29, 2022, the Court denied defendants' Renewed

Motion for Summary Judgment dismissing the case. Defendants now

move for reconsideration of that Order.

    For the following reasons, defendants' Motion for

Reconsideration is granted and the complaint is dismissed.

### Background

    The Court assumes the parties' familiarity with this case

and recounts only what is necessary to decide defendants' Motion

for Reconsideration.

    Ed Townsend and Marvin Gaye Jr. wrote and internationally

released the song "Let's Get It On" in 1973. Dkt. No. 102

("Third Amended Complaint") ¶ 1; Dkt. No. 201 ("Defendants' Rule 56.1 Statement") ¶ 17.  On July 17, 1973, Townsend applied to copyright the song with the U.S. Copyright Office. Dkt. No. 201 ¶ 19. In support of that application, he deposited with the Copyright Office a copy of the sheet music. Id. ¶ 20. The sheet music, which is known as the "Deposit Copy," was subsequently registered under Registration No. EP 314589.[1] Id. ¶ 21. Plaintiff, Structured Assets Sales, LLC ("SAS") has an 11.11% beneficial interest in the right to receive royalties from the copyright of "Let's Get It On."  Dkt. No. 102 ¶ 18; Dkt. No. 201 ¶ 18.

In February 2014, defendants Ed Sheeran and Amy Wadge co-authored the song "Thinking Out Loud." Dkt. No. 201 ¶ 24. Days later, Sheeran recorded, and co-defendant Jack Gosling produced, what would become the commercially released version of the song. Id.  ¶ 26; Dkt. No. 102 ¶ 25. "Thinking Out Loud" was released to great commercial and critical success, including a Grammy Award for Song of the Year. Dkt. No. 102 ¶ 17. Co-defendants SONY/ATV Music Publishing, Atlantic Recording Company d/b/a Atlantic Records, BDi Music Ltd., Bucks Music Group Ltd., The Royalty Network, Inc., and David Platz Music (USA) Inc., as

---

[1] Marvin Gaye Jr. created a Sound Recording of "Let's Get It On," which was commercially released. The Sound Recording was never copyrighted and is not at issue in this dispute.

publishers and distributors of "Thinking Out Loud," facilitated and assisted with its distribution, promotion, and sales.

SAS alleges that "Thinking Out Loud" infringes on the copyright of the sheet music of "Let's Get It On." Defendants moved for Summary Judgment dismissing the case and SAS cross-moved for Summary Judgment granting it profits from Sheeran's live performance of "Thinking Out Loud."[2] Dkt. No. 202; Dkt. No. 205.

In its Order denying defendant's Motion for Summary Judgment, the Court recognized that this Circuit treats the question of whether "particular elements of a work demonstrate sufficient originality and creativity to warrant copyright protection as a question for the factfinder." Matthew Bender & Co. v. W. Pub. Co., 158 F.3d 67, 681 (2d Cir. 1998). With this in mind, the Court held that the parties' dispute over the originality of the selection and arrangement of the combination of two commonplace musical building blocks—the chord progression and harmonic rhythm-in "Let's Get It On" was a genuine dispute necessitating denial of defendants' motion.

---

[2] The parties' initial motions for summary judgment were denied with leave to renew after SAS amended its Experts' Reports. Dkt. No. 198. The parties thereafter filed Renewed Motions for Summary Judgment, which the Court denied in part and granted in part. Dkt. No. 211. It is that denial which defendants urge the Court to reconsider.

Defendants filed a motion for reconsideration urging the Court to reconsider its findings on liability and grant Summary Judgment dismissing the case, or in the alternative to certify the question of how to satisfy the numerosity requirement under the selection and arrangement test for infringement. Dkt. No. 212. SAS promptly opposed the Motion for Reconsideration. Dkt. No. 214.

### Legal Standards

#### 1. Motion for Reconsideration

Under Rule 54 of the Federal Rules of Civil Procedure, the Court has the inherent power to reconsider any of its decisions prior to the entry of a final judgment adjudicating all claims at issue. Fed. R. Civ. P. 54(b). A motion for reconsideration is "an extraordinary remedy to be employed sparingly in the interests of finality." Drapkin v. Mafco Consol. Grp., Inc., 818 F. Supp. 2d 678, 695 (S.D.N.Y. 2011). Reconsideration is warranted where there is an "intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." DiLaura v. Power Auth. of New York, 982 F.2d 73, 76 (2d Cir. 1992). The decision as to whether to grant a motion for reconsideration lies squarely within the court's discretion. Analytical Survs., Inc. v. Tonga Partners, L.P., 684 F.3d 36, 52 (2d Cir. 2012).

#### 2. Copyright Infringement

4

To establish a claim of copyright infringement, "a plaintiff with a valid copyright must demonstrate that: (1) the defendant has actually copied the plaintiff's work; and (2) the copying is illegal because a substantial similarity exists between the defendant's work and the protectable elements of plaintiff's." Peter F. Gaito Architecture, LLC v. Simone Dev. Corp., 602 F.3d 57, 63 (2d Cir. 2010). The Court can decide as a matter of law that there is no substantial similarity between the works because "the similarity between two works concerns only non-copyrightable elements of the plaintiff's work." Warner Bros. Inc. v. Am. Broad. Cos., 720 F.2d 231, 240 (2d Cir. 1983).

The test for substantial similarity in music infringement cases is whether a plaintiff can prove that "defendant took from plaintiff's works so much of what is pleasing to the ears of lay listeners, who comprise the audience for whom such . . . music is composed, that defendant wrongfully appropriated something which belongs to the plaintiff." Repp v. Webber, 132 F.3d 882, 889 (2d Cir. 1997) (alteration in original). When, as here, the song's aesthetic appeal is due largely to unprotectable elements, the Court's analysis of substantial similarity "must be more discerning, and ignore those aspects of a work that are unprotectable ... lest [courts] conflate mere copying with wrongful copying." Zalewski v. Cicero Builder Dev., Inc., 754 F.3d 95, 102 (2d Cir. 2014).

In doing so, the Court is not required to "compare only those elements which are themselves copyrightable." Peter F. Gaito Architecture, LLC, 602 F.3d at 66. Instead, the court is "'principally guided by comparing the contested work's total concept and overall feel with that of the allegedly infringed work.'" Nwosuocha v. Glover, No. 21 CIV. 04047, 2023 WL 2632158, at *4 (S.D.N.Y. Mar. 24, 2023) (quoting Peter F. Gaito Architecture, LLC, 602 F.3d at 66). "This is so because 'the defendant may infringe on the plaintiff's work not only through literal copying of a portion of it, but also by parroting properties that are apparent only when numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of unprotectible components—are considered in relation to one another.'" Peter F. Gaito Architecture, LLC, 602 F.3d at 66 (quoting Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134 (2d Cir. 2003)); see also McDonald v. West, 138 F. Supp. 3d 448, 456 (S.D.N.Y. 2015), aff'd, 669 F. App'x 59 (2d Cir. 2016) (same). "[W]here a work relies on the compilation or arrangement of unprotectible elements, it is only eligible for copyright protection 'if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship.'" Threeline Imports, Inc. v. Vernikov, No. 15 Civ. 02333, 2016 WL 11472749, at *13

(E.D.N.Y. Oct. 28, 2016) (quoting <u>Satava v. Lowry</u>, 323 F.3d 805, 811 (9th Cir. 2003)).

## Analysis

### 1. Reconsideration is Warranted

Defendants argue that reconsideration is proper to avoid clear error because the Court overlooked the numerosity requirement for selection and arrangement claims of infringement. Dkt. No. 213 at 5. SAS responds that defendants have not identified any controlling decisions that the Court has overlooked or any intervening change of controlling law. Dkt. No. 214 at 1.

The Court denied Defendant's Renewed Motion for Summary Judgment, in part, because its sister action <u>Griffin v. Sheeran</u>, which arose from the same nucleus of facts and asserted the same claim of infringement, was proceeding to trial. Summary Judgment dismissing the claim was denied in <u>Griffin</u> in January 2019. <u>Griffin v. Sheeran</u>, 351 F. Supp. 3d 492, 494 (S.D.N.Y. 2019). Afterward, the Ninth Circuit decided <u>Skidmore as Tr. for Randy Craig Wolfe Tr. v. Led Zeppelin</u>, 952 F.3d 1051, 1064 (9th Cir. 2020), which is one of the clearest articulations of how copyright law applies to musical compositions. This Court has already adopted and applied to this case one holding of <u>Skidmore</u>: that the scope of copyright protection only extends to the Deposit Copy, here the sheet music of "Let's Get It On."

7

Skidmore also expressly laid out a numerosity requirement for selection and arrangement copyright claims holding that protection applies to "a combination of unprotectable elements ... only if those elements are numerous enough and their selection and arrangement original enough that their combination constitutes an original work of authorship." Id. at 1074.

The numerosity requirement has been alluded to, but not strictly followed, in the Second Circuit. Compare Peter F. Gaito Architecture, LLC, 602 F.3d at 66 (finding infringement when "numerous aesthetic decisions embodied in the plaintiff's work of art—the excerpting, modifying, and arranging of [unprotectible components] ...—are considered in relation to one another") with Knitwaves, Inc. v. Lollytogs Ltd. (Inc.), 71 F.3d 996, 1004 (2d Cir. 1995) ("What is protectible then is the author's original contributions, the original way in which the author has 'selected, coordinated, and arranged' the elements of his or her work."). There have been few opportunities to apply the principle of numerosity to musical compositions. In its Order denying Summary Judgment dismissing the claim, this Court declined to grapple with whether a numerosity requirement should be imposed and instead found that there is no bright-line rule requiring it. Dkt. No. 211.

Since then, courts in this Circuit have started to weigh the numerosity of the elements when deciding whether their

combination should be protected. In Nwosuocha v. Glover, 21 Civ. 04047, 2023 WL 2632158 (S.D.N.Y. Mar. 24, 2023), the Court implied a high threshold for numerosity when it found that a combination of eight unprotected musical elements was "categorically ineligible for copyright protection." Id. at *7. Having previously disdained the issue of numerosity, the Court finds that it improperly disregarded it in denying defendants' motion to dismiss without weighing whether and how to apply the requirement.

## 2. Defendants' Renewed Motion for Summary Judgment is Granted

SAS alleges that the combination of the chord progression and the harmonic rhythm used in "Thinking Out Loud" is substantially similar to that in "Let's Get It On," and thus infringes the work. SAS acknowledges, and the Court concurs, that the chord progression and harmonic rhythm, in isolation, are not individually protected. The question then is whether two common elements are numerous enough to make their combination eligible for copyright protection.

Unprotected musical elements might be so selected and arranged that they form a whole whose patterns and effects are protectable. See Tufenkian Imp./Exp. Ventures, Inc. v. Einstein Moomjy, Inc., 338 F.3d 127, 134 (2d Cir. 2003). The scope of that protection is limited to the particular way in which the unprotected elements form the coherent pattern or design and

9

does not extend to the underlying elements themselves. See id. at 136. Thus, a protectable mosaic may be formed from unprotected chips, but it needs a number of them: not one or two. Otherwise, the arrangement is devoid of any contribution from the author. It is nothing more than an impermissible attempt to copyright what is already in the public domain and capture what is freely available to all to use. Deciphering what constitutes a protectable, original selection and arrangement from a combination of unprotected properties has long vexed the courts.

The numerosity requirement springs from the nature of that postulate. Requiring numerous unprotected elements to be present before determining whether their selection and arrangement is protectable reinforces the constitutional requisite that a copyrighted work, or piece of a work, be original enough to warrant protection. See Peter F. Gaito Architecture, LLC, 602 F.3d at 66. That is "the *sine qua non* of copyright." Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 346 (1991). The selection and arrangement of unprotected musical elements "cannot be so mechanical or routine as to require no creativity whatsoever." Id. at 358. Requiring numerous elements prevents the misapplication of copyright law and ensures it is not being used to protect combinations that occur routinely

10

without any minimal creative contribution attributable to the author.

Numerous means "many; great in number." Numerous, Oxford English Dictionary (3d. ed. 2003). There is no bright-line rule dictating the threshold over which a specific number of unprotectable elements in a work must pass to become sufficiently numerous to protect the aesthetic decision to select and arrange them in an original way. Nonetheless, common sense dictates that in the context of a musical composition, "numerous" requires more than just a commonplace chord progression and harmonic rhythm to warrant protecting their combination.[3] See Nwosuocha v. Glover, 21 Civ. 04047, 2023 WL 2632158, at *7 (S.D.N.Y. Mar. 24, 2023) (holding that the eight musical elements in plaintiff's song "lack sufficient originality alone, or as combined, to merit compositional copyright protection or are categorically ineligible for copyright protection"). To protect an arrangement with few parts may be to read the numerosity requirement out of the law. That is especially true here where the chord progression and the

_____

[3] Outside of the musical context, the "combination of two unprotectable elements" has been found to be "not sufficiently numerous or original to constitute original work entitled to copyright protection." Beyond Blond Prods., LLC v. Heldman, 479 F. Supp. 3d 874, 883 (C.D. Cal. 2020), aff'd sub nom. Beyond Blond Prods., LLC v. ComedyMX, LLC, No. 21-55990, 2022 WL 1101756 (9th Cir. Apr. 13, 2022).

harmonic rhythm (how the chord progression is played) in "Let's Get It On" do not form a pattern, but instead essentially merge into one element.

This Court is not aware of any case upholding a selection and arrangement claim based on the combination of two commonplace, unprotectable musical elements. Courts often evaluate combinations of at least three common musical elements and still find their selection and arrangement to be unoriginal. See Gray v. Hudson, 28 F.4th 87, 102 (9th Cir. 2022) ("This combination is unoriginal because it is really nothing more than a two-note snippet of a descending minor scale, with some notes repeated."); Peters v. West, 776 F. Supp. 2d 742, 751 (N.D. Ill. 2011), aff'd, 692 F.3d 629 (7th Cir. 2012) (holding the combination of three unprotected elements is not protectable); Cottrill v. Spears, No. 02-3646, 2003 WL 21223846, at *9 (E.D. Pa. May 22, 2003), aff'd, 87 F. App'x 803 (3d Cir. 2004), as amended on reh'g (June 2, 2004) (holding four commonplace musical elements are not numerous enough to warrant protection). In Satava, a case not about music but about glass jellyfish sculptures, the court dismissed a selection and arrangement claim of infringement because the combination of six commonplace elements "lacks the quantum of originality needed to merit copyright protection." Satava v. Lowry, 323 F.3d 805, 811 (9th Cir. 2003).

12

At some level, every work is the selection and arrangement of unprotectable elements. Musical compositions chiefly adhere to this template. All songs, after all, are made up of the "limited number of notes and chords available to composers." Gaste v. Kaiserman, 863 F.2d 1061, 1068 (2d Cir. 1988). Within that limited number, there are even fewer ways to combine the elements in a manner that is pleasing to the ears. That means a songwriter only has finite options for playing a commonplace chord progression. The options are so few that many combinations have themselves become commonplace, especially in popular music. If the selection and arrangement of unprotectable elements, in their combination, is "so commonplace that it has come to be expected as a matter of course," then it lacks the "minimal creative spark required by the Copyright Act and the Constitution" to be original and thus protectable. Feist Publications, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 363 (1991).

It is an unassailable reality that the chord progression and harmonic rhythm in "Let's Get It On" are so commonplace, in isolation and in combination, that to protect their combination would give "Let's Get It On" an impermissible monopoly over a basic musical building block. "Let's Get It On's" chord progression was used at least twenty-nine times before appearing in "Let's Get It On" and was in another twenty-three songs

13

before "Thinking Out Loud" was released. See Dkt. No. 179 Ex. 2

("Defendants' Expert's Report") at Visual Exhibit H. It is so

ubiquitous that it has been taught for many years (the issue of

this publication in the exhibit was dated as 2000) as a popular

chord progression in introductory books on how to play guitar

and piano. See id. at ¶¶ 34-36 (citing Money Chords: A

Songwriter's Sourcebook of Popular Chord Progressions and Guitar

for Advanced Beginners). The harmonic rhythm was used in at

least eight other songs before "Let's Get It On" and in another

fifteen before the release of "Thinking Out Loud." Dkt. No. 179

Ex. 9 ("Defendants' Expert's Report") at 9-10. It is so common

that Mr. Sheeran himself used it, or a similar version, in at

least twenty additional songs he wrote before writing "Thinking

Out Loud." Dkt. No. 179 Ex. 2 at Visual Exhibit I.

The combination is commonplace. Amy Wadge, who co-wrote

"Thinking Out Loud," used a nearly identical combination in one

of her prior songs, "Better Than Me." Id. at ¶ 63 (the only

difference between "Thinking Out Loud" and this prior work by

Wadge is that the prior work also happens to anticipate the

third chord change). Defendants' experts also identified,

undisputed by SAS's expert,[4] at least four songs that were

---

[4] SAS's expert, Dr. Covach, did not dispute that the songs used
the same combination of elements. Rather, he argued that other,
potentially more popular, versions of the songs did not use the
combination. Dkt. No. 200 Ex. 9 ¶¶ 10-13.

14

released prior to "Let's Get It On" that used virtually the same combination. Id. at ¶¶ 43-46, 56-60; 107 (discussing examples of prior art, including the songs "Georgy Girl," "Since I Lost My Baby," "Downtown," and "Get Off Of My Cloud"); Dkt. No. 179 Ex. 20 ("Defendants' Expert's Rebuttal Report") ¶¶ 26-38. The combination has also been used in songs that were released after "Let's Get It On" but before "Thinking Out Loud." Dkt. No. 179 Ex. 2 ¶ 4 (discussing "I've Got Love On My Mind"); Id. Ex. 9 at 38 (discussing "Do It To Me"). While the appearance of the combination in other songs has no bearing on whether it is original in "Let's Get It On," it does illustrate how multiple songwriters have combined the two commonplace elements in the same manner for years.

The selection and arrangement of these two musical elements in "Let's Get It On" is now commonplace and thus their combination is unprotectable. If their combination were protected and not freely available to songwriters, the goal of copyright law "[t]o promote the Progress of Science and useful Arts" would be thwarted. U.S. Const. art. I § 8. The Copyright Act envisioned that there will be unprotectable elements-based works "in which the selection, coordination, and arrangement are not sufficiently original to trigger copyright protection." Feist Publications, Inc., 499 U.S. at 358.

15

As a matter of law, the combination of the chord progression and harmonic rhythm in "Let's Get It On" is too commonplace to merit copyright protection.

### Conclusion

To prevent manifest injustice, defendants' Motion for Reconsideration is granted. Dkt. No. 212. There is no genuine issue of material fact as to whether defendants infringed the protected elements of "Let's Get It On." The answer is that they did not. Accordingly, their Motion for Summary Judgment is granted. The Complaint is dismissed with prejudice.

Plaintiff's renewed cross-motion for Summary Judgment is denied.

The Clerk of the Court is directed to close the case.

So Ordered.

Dated:  New York, New York
        May 16, 2023

                                        Louis L. Stanton
                                    _____
                                    LOUIS L. STANTON
                                        U.S.D.J.

16